**No. 98-614C**
**(Senior Judge Merow)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**SOUTHERN NUCLEAR OPERATING COMPANY,**
**ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER REGARDING SUBSEQUENT DAMAGES ACTIONS AND PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES

---

**M. Stanford Blanton**
**BALCH & BINGHAM LLP**
**1710 Sixth Avenue North**
**Birmingham, AL 35203**
**Telephone: (205) 226-3417**
**Facsimile: (205) 226-8798**

**Of Counsel:**

**Ed R. Haden**
**K. C. Hairston**
**BALCH & BINGHAM LLP**
**1710 Sixth Avenue North**
**Birmingham, AL 35203**
**Telephone: (205) 251-8100**
**Facsimile: (205) 226-8798**

**Ronald A. Schechter**
**Jeffrey L. Handwerker**
**ARNOLD & PORTER**
**555 Twelfth Street, N.W.**
**Washington, D.C. 20004-1202**
**Telephone: (202) 942-5000**
**Facsimile: (205) 942-5999**

**October 18, 2004**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

SUMMARY OF THE ARGUMENT .......... 2

ARGUMENT .......... 4

I. Southern's Motion To Reserve The Right To Seek Post-2020 Damages Should Be Granted Because It Would Streamline the Damages Trial. .......... 4

II. Contract Law Allows the Recovery of Reasonable Pre-Breach Damages Incurred to Mitigate Losses. .......... 7

A. Decades of Contract Damages Law Allow Southern to Recover the Cost of Reasonable Pre-Breach Mitigation. .......... 7

B. The Government's Arguments Fail on Both Legal and Policy Grounds. .......... 11

1. Because Southern Filed its Complaint After the Government's Breach, the Government's Partial Anticipatory Breach Argument is Inapposite. .......... 11

2. None of the Cases Cited by the Government Disallow Pre-Breach Damages. .......... 13

3. The Government's Argued-For Rule Would Produce Absurd Results. .......... 16

III. Contract Law Allows the Recovery of Actual Damages Incurred Subsequent to the Filing of the Complaint. .......... 17

IV. Under Standard Contract Law, Southern is Entitled to Recover Future Damages if it Presents Evidence Proving Such Damages with Reasonable Certainty. .......... 19

CONCLUSION .......... 23

CERTIFICATE OF SERVICE .......... 25

# TABLE OF AUTHORITIES

**Cases**

*Budde v. Harley-Davidson, Inc.*, 2004 U.S. App. LEXIS 20792 (Fed. Cir. 2004) .......................23

*Caines v. Smith*, 153 Eng. Rep. 816 (Ex. 1847) (Alderson, B.) ..................................................22

*Calhoun v. United States*, 354 F.2d 337 (Ct. Cl. 1965) ...............................................................18

*Chain Belt Co. v. United States*, 115 F. Supp. 701 (Ct. Cl. 1953).........................................passim

*City of Fairfax, Va. v. Washington Metro. Area Transit Auth.*, 582 F.2d 1321 (4th Cir. 1978) ...........................................................................................................11, 13

*Coast Federal Bank, FSB v. United States*, 48 Fed. Cl. 402 (2000), *modified on other grounds*, 49 Fed. Cl. 11 (2001) ...........................................................................................8

*Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652 (2003) ..........................................12

*Energy Capital Corp. v. United States*, 302 F.3d 1314 (Fed. Cir. 2002) .................................8, 19

*Franconia Assocs. v. United States*, 536 U.S. 129 (2002)..........................................................14

*Guntert v. City of Stockton*, 126 Cal. Rptr. 690 (Cal. 3d Dist. App. 1976) .................................21

*Home Sav. of America, F.S.B. v. United States*, 57 Fed. Cl. 694 (2003) ...................................7, 8

*Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed. Cir. 2002) .............7

*Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004) .........................................9

*Indiana Michigan Power Co. v. United States,* 88 F.3d 1272 (D.C. Cir. 1996)...........................18

*Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002).............................................................13, 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................18

*Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000)........10, 12, 13

*McAllister v. Secretary of Health & Human Servs.*, 70 F.3d 1240 (Fed. Cir. 1995).................3, 17

*Middleton v. United States*, 175 Ct. Cl. 786 (1966) .......................................................................14

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) ..................................................18

*Northern Helex Co. v. United States*, 634 F. 2d 557 (Ct. Cl. 1980).............................................19

*Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000).............................14

*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) ......................................................22

*Roehm v. Horst*, 178 U.S. 1 (1900)................................................................................................14

*S.N.A. Nut Co. v. Haagen-Daas Co.*, 247 B.R. 7 (Bankr. N.D. Ill. 2002) ....................................10

*San Carlos Irrigation & Drainage Dist. v. United States*, 23 Cl. Ct. 276 (1991), *aff'd*, 111 F.3d 1557 (Fed. Cir. 1997) .........................................................7, 9, 14, 18

*Southern Nuclear Operating Co. v. United States*, No. 98-614C (April 7, 2004)........................13

*Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665 (2004) .....................................6, 15

*Trainor Co. v. Aetna Casualty & Surety Co.*, 290 U.S. 47 (1933) ........................................passim

*United States v. Dekonty Corp.*, 922 F.2d 826 (Fed. Cir. 1991)...................................................14

*Yankee Atomic Electric Co. v. United States*, No. 98-126C, 2004 WL 1535688 (Ct. Fed. Cl. June 28, 2004) ..............................................................................passim

**Regulations**

59 Fed. Reg. ¶¶ 27,007, 27,007-08 (1994) ......................................................................10

**Other Authorities**

17A Am. Jur. 2d, *Contracts* § 344 (1991) .......................................................................16

24 *Williston on Contracts* 4th Ed., § 66.44..........................................................................15

9 CORBIN ON CONTRACTS § 955 ...........................................................................................6

9 CORBIN ON CONTRACTS § 956 ..................................................................................3, 17, 19

BURTON'S LEGAL THESAURUS (3rd ed. 1998) ......................................................................8

*Office of Civilian Radioactive Waste Management Plan Amendment* (June 1987); *Report to Congress on Reassessment of the Civilian Radioactive Waste Management Program* (Nov. 1989)...........................................................................................................10

RESTATEMENT (SECOND) OF CONTRACTS § 236 ...................................................................9

RESTATEMENT (SECOND) OF CONTRACTS § 253 ..................................................................11

RESTATEMENT (SECOND) OF CONTRACTS § 350 .............................................................passim

*Restatement (Second) of Judgments § 24* .............................................................................5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SOUTHERN NUCLEAR OPERATING CO., INC., ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 98-614C** **(Senior Judge Merow)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER REGARDING SUBSEQUENT DAMAGES ACTIONS AND PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES**

## INTRODUCTION

Plaintiffs, Southern Nuclear Operating Company ("SNC"), Alabama Power Company ("APC"), and Georgia Power Company ("GPC") (collectively, "Southern") respectfully submit this Reply to Defendant's Response to Plaintiffs' Motion for an Order Regarding Subsequent Damages Actions and this Response to Defendant's Cross-Motion For Partial Summary Judgment Regarding Pre-Breach And Future Damages.

In its Motion, Southern stated that it intended to seek damages arising from the Government's partial beach of the Standard Contracts from January 31, 1998, to December 31, 2009, to the extent such damages are incurred through December 31, 2020. Southern's Mot. at 1-2. Accordingly, Southern asked this Court to reserve Southern's right: (a) to claim damages stemming from the Government's partial breach of contract through December 31, 2009, that are incurred after December 31, 2020, in a subsequent damages action; and (b) to bring additional

breach of contract actions in the event the Government's delay in performance extends beyond December 31, 2009, and to seek all damages arising from such subsequent partial breaches in subsequent actions. In its Response and Cross-Motion, the Government mischaracterizes the relief sought by Southern, and argues that Southern's recovery of damages should be limited to costs incurred during the 179 days between January 31, 1998, when the Department of Energy ("DOE") failed to commence acceptance of spent nuclear fuel ("SNF"), and July 29, 1998, when Southern filed its Complaint. Gov.'s Resp. at 37.

## SUMMARY OF THE ARGUMENT

In order to streamline the trial on damages in a manner that is just and reasonable to both parties, the Court should grant Southern's motion to reserve Southern's right to file subsequent actions for post-2020 damages and for post-2009 partial breaches. This Court has already addressed and rejected the Government's arguments in *Yankee Atomic Electric Co. v. United States*, No. 98-126C, 2004 WL 1535688 (Ct. Fed. Cl. June 28, 2004). The Court should similarly dispose of the Government's arguments here.

The Government's argument in its Cross-Motion to eliminate pre-breach damages and to defer post-complaint damages to a later action is consistent with the Government's recurring theme in this litigation that utilities such as Southern should have no remedy for the Government's failure to perform its contractual obligation. The Government's position so obviously conflicts with the central premise of contract damages law -- that damages should "place such party in as good position as if the contract had been kept," *Trainor Co. v. Aetna Casualty & Surety Co.*, 290 U.S. 47, 54 (1933) -- that it should be summarily rejected. The Government's argument fails for three reasons. First, under standard contract law Southern may recover reasonable costs incurred prior to January 31, 1998, to mitigate the damages that were

reasonably certain to arise from the Government's long-announced breach on January 31, 1998. *See Chain Belt Co. v. United States*, 115 F. Supp. 701 (Ct. Cl. 1953). Absent shutting down nuclear plants across the country when their spent fuel pools filled up -- putting at risk 20% of the nation's supply of electricity -- and then suing for the monumental damages that would have ensued, incurring the modest cost of temporary storage of SNF not only was reasonable, it was the only rational alternative as a consequence of the Government's forthcoming breach of contract. *See Yankee Atomic*, 2004 WL 1535688, at *6 ("Consider the ramifications of [the government's] position. Should the [utilities] have waited until December 31, 1998 and then decided what to do with their nuclear waste? The court thinks not, and accordingly, will not preclude evidence and argument in this regard.")

Second, under modern rules of procedure and in multi-year litigation, plaintiffs are not limited to the recovery of damages incurred up to the filing of their complaints. *See McAllister v. Secretary of Health and Human Servs.*, 70 F.3d 1240, 1243 (Fed. Cir. 1995). When the breach has occurred, the parties are in court, and the damages can be ascertained with reasonable certainty, there is no reason to delay trying the damages until a later-filed action.

Third, where an existing partial breach is reasonably certain to continue for a definite period and the costs can be reasonably estimated, textbook contract law -- 9 *Corbin on Contracts* § 956 (Supp. 2004) -- provides that future damages for such partial breach can be recovered.

## ARGUMENT

### I. Southern's Motion To Reserve The Right To Seek Post-2020 Damages Should Be Granted Because It Would Streamline the Damages Trial.

The Government apparently misapprehends the purpose of Southern's Motion for an Order Regarding Subsequent Damages Actions. In that Motion, Southern merely seeks to avoid for present purposes the factual dispute over whether the Government will perform beginning in 2010, as it now claims it will, or at some later date, which the current state of the DOE program would seem to suggest. Southern seeks to prove in this case all damages through December 31, 2020, arising from the delay in performance that the Government has acknowledged will occur, *i.e.*, the delay in performance through December 31, 2009. The incremental costs of on-site storage activities proximately caused by the Government's delay until 2010, began prior to 1998, have continued through to the present, and are expected to continue for several years into the future. (A. 19.) The extent of costs that are incurred as a result of additional delay subsequent to December 31, 2009 will be a function of when the Government actually performs under the contract.

Accordingly, Southern has moved this Court to reserve Southern's right to bring subsequent actions for: (a) future damages that Southern will incur as a result of any additional partial breaches of contract that would result from the Government's failure to commence SNF acceptance in 2010 or thereafter; and (b) future damages that Southern incurs subsequent to December 31, 2020, as a result of the partial breach of contract caused by the Government's failure to commence SNF acceptance prior to 2010. Southern's Mot. at 8. Although the Government's mischaracterizations of Southern's Motion create some doubt as to its position regarding Southern's entitlement to bring additional actions for post-2009 breaches, the Government apparently assumes that Southern seeks to preserve a right only to bring additional

actions after 2020. The Government then argues that the Court should not distinguish between pre-January 1, 2021, damages and post-December 31, 2020, damages arising from the same partial breach, and should require Southern to file a series of partial breach actions. Gov.'s Resp. at 33.

The Government's argument misses the point of Southern's Motion. Southern simply seeks to limit the instant trial to damages that principally relate to additions of on-site storage capacity, some of which already have been incurred and the remainder of which are reasonably certain to continue through 2020. These damages are the direct result of the Government's a specific, acknowledged partial breach of contract for failing to dispose of SNF between January 31, 1998, and December 31, 2009. Further, Southern seeks to preserve its rights as to additional breaches and/or additional damages to a time when those breaches and/or damages are more proximate in time. Southern has proposed a cutoff date of December 31, 2020, for the damages to be incurred as a result of the pre-2010 breach because the bulk of the costs incurred as a proximate result of the pre-2010 breach are reasonably certain to have been incurred by that time.

Southern's Motion does not, as the Government alleges, request impermissible "claim splitting." While Section 24 of the *Restatement (Second) of Judgments* contains the general rule prohibiting the splitting of claims for a series of transactions, section 26 provides this Court with the authority to reserve to Southern the right to bring a subsequent action for post-2020 damages relating to the January 31, 1998, to December 31, 2009, partial breach:

> § 26. Exceptions to the General Rule Concerning Splitting
>
> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> …

> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action . . . .

The doctrine of claim splitting seeks to avoid additional actions that "would be unnecessary and vexatious and unjust." 9 CORBIN ON CONTRACTS § 955. Applying the above exception in this case would not result in vexatious litigation to the Government. Instead, it will result in claims being brought at a time closer to when the damages being sought are actually incurred. In multi-year litigation regarding a multi-decade contract, reserving post-2020 damages is not unjust. Indeed, Southern's approach is much more just and reasonable and would result in far fewer actions than the Government's suggested limitation on damages to those incurred between the date of breach and the date of filing of the Complaint, which in this case would result in one lawsuit for 179 days of damages, followed by successive lawsuits every six years for damages incurred after the 179 days.

In *Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665, 679 (2004), this Court exercised its discretion to hold that "TVA shall retain the right to bring subsequent actions on claims for damages incurred after the period encompassed by [the] trial." Similarly, this Court should allow Southern to retain the right to bring subsequent actions for damages it sustains after the period encompassed by this trial -- the period ending December 31, 2020.

The Government apparently does not oppose Southern's Motion to reserve its right to bring subsequent actions for partial breaches that occur after 2009. Gov.'s Resp. at 32-33. Indeed, the Government's brief appears to argue that Southern is not entitled to bring an action for partial breach until it has actually occurred, notwithstanding the certainty of its occurrence in the future. *See id.* at 33.

With respect to tolling the statute of limitations for post-2020 damages, the Court's express statement that the statute of limitations is tolled would remove any question that the

parties could try this case solely on pre-2021 damages and later try post-2020 damages closer to the time at which they are incurred. By allowing the parties and the Court to focus on pre-2021 damages, the Court would streamline the current damages trial.

## II. Contract Law Allows the Recovery of Reasonable Pre-Breach Damages Incurred to Mitigate Losses.

### A. Decades of Contract Damages Law Allow Southern to Recover the Cost of Reasonable Pre-Breach Mitigation.

The Government argues that Southern cannot recover damages incurred prior to January 31, 1998, because Southern has elected to sue for partial breach for which, the Government contends, pre-breach damages are *per se* non-recoverable. Gov.'s Resp. at 16-22. This argument fails because the general rule of damages provides, and this Court has held, that an injured party may recover reasonable costs incurred to mitigate damages from a forthcoming, or future, breach of contract, including a future partial breach of contract. *Chain Belt*, 115 F. Supp. 701.

"In fixing compensation for damage resulting from breach of a contract the general rule is that the injured party should be placed in the same position as if there had been no breach. The object of the law is to place such party in as good position as if the contract had been kept." *Trainor Co.*, 290 U.S. at 54 (internal quotations omitted). *See Home Sav. of America, F.S.B. v. United States,* 57 Fed. Cl. 694, 723 n.47 (2003) (same); *Yankee Atomic*, 2004 WL 1535688, at *7 (citing *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2002) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997))).

Expectation damages are recoverable where: (1) the damages were reasonably foreseeable to the breaching party at the time of contracting; (2) the breach is a substantial causal

factor in the damages; and (3) the damages are shown with reasonable certainty. *Energy Capital Corp.*, 302 F.3d at 1320; *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001); *Home Sav. of America*, 57 Fed. Cl. at 726; *Coast Federal Bank, FSB v. United States*, 48 Fed. Cl. 402, 408 (2000), *modified on other grounds*, 49 Fed. Cl. 11 (2001). In the case of the third requirement (showing damages with reasonable certainty), this Court has held that if the plaintiff can demonstrate a reasonable probability of damages, "'uncertainty as to the amount will not preclude recovery,' and the court's duty is to 'make a fair and reasonable approximation of damages.'" *Bluebonnet*, 266 F.3d at 1356-57.

Moreover, "**[o]nce a party has reason to know that performance by the other party will not be *forthcoming*, he is ordinarily expected to . . . take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise**." RESTATEMENT (SECOND) OF CONTRACTS § 350, cmt. b (emphases added). Performance that will not be "forthcoming" is performance due in the future. *See* BURTON'S LEGAL THESAURUS 243 (3rd ed. 1998) (synonyms for "forthcoming" include "future" and "foreseeable"). Steps to "avoid loss" from performance that will not occur in the future are steps taken pre-breach.

When it is clear that a party will breach a contract by delaying performance due in the future, this Court has held that the non-breaching party may recover damages for reasonable actions to mitigate taken before the impending breach occurs. In *Chain Belt Co.*, 115 F. Supp. at 706, the government sold a building to a private company and contracted to remove the government's equipment from the building by December 10, 1946. "By November 1946, it was apparent that under no circumstances could [the government] move out all its machinery by December 10, as provided in the contract." *Id.* at 713. Accordingly, the private company began

moving the government's machinery out prior to the December 10, 1946, contractual deadline, and incurred $2,191.52 of moving costs both before and after that deadline. *Id.* The Court concluded:

> We think that plaintiff is entitled to recover the amount proved to have been spent as expenses incurred in a reasonable effort to avoid the harm which both parties had reason to foresee would be the probable result of defendant's breach of the contract. As pointed out in § 335 of the *Restatement of the Law, Contracts*, plaintiff **was under an obligation to avoid by a reasonable effort any damages which it should have foreseen and, having done so, it may recover as damages the expense incurred in such reasonable effort to avoid harm which the defendant had reason to foresee would be the probable result of its breach when the contract was made.** ***It makes no difference whether the breach has already occurred, or where (as was the case of the work done prior to December 10) it is merely impending under circumstances such that it was not reasonable for plaintiff to expect defendant to prevent the harm.*** Both parties herein knew that defendant could not get the machinery out by December 10, because of the nature of the task and because defendant had not even started the removal work in November 1946. Defendant knew that time was an essential element of its license agreement and must have foreseen that plaintiff would be injured by its failure to have its machinery out of the plant by December 10. Under these circumstances, we hold that plaintiff is entitled to recover the $2,191.52 . . .

*Id.* at 714 (emphasis added).[1]

Under the general principles applicable to breach of contract damages and the specific holding of the Court in *Chain Belt Co.*, Southern is entitled to pre-breach damages because the failure of the DOE to begin picking up SNF was reasonably foreseeable to Southern prior to the

[1] While the court in *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 649-50 (2004), stated that *Chain Belt* was a total breach case, that is not so. In *Chain Belt*, 115 F. Supp. at 713, the government did not repudiate its entire remaining contractual obligation to remove its machinery from Chain Belt Company's building. It simply delayed its performance of that obligation past December 10, 1946. *Id.* at 707 ("By the close of business on February 15, 1947, the last of the Government-owned machinery was out of the plant."). *Compare* RESTATEMENT (SECOND) OF CONTRACTS § 236(1), at 214 ("A claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance."), *with San Carlos Irrigation & Drainage Dist. v. United States*, 23 Cl. Ct. 276, 279 (1991) (stating a claim for partial breach is one for damage based upon "only part of the injured party's remaining rights to performance"), *aff'd*, 111 F.3d 1557 (Fed. Cir. 1997).

January 31, 1998, deadline in the Standard Contracts. In 1987 and 1989, the DOE made statements suggesting that it might not meet the 1998 deadline. *See Office of Civilian Radioactive Waste Management Plan Amendment* (June 1987) (App. at 3.); *Report to Congress on Reassessment of the Civilian Radioactive Waste Management Program* (Nov. 1989) (App. at 5.) In its 1991 Annual Capacity Report, DOE estimated that it would not commence SNF pick up before "at least 2007." (App. at 7.) In 1994, DOE announced that it could not begin disposal of SNF by January 31, 1998, as required under the Standard Contract because the storage repository it planned to build would not be ready until at least 2010. *See Notice of Inquiry*, 59 Fed. Reg. ¶¶ 27,007, 27,007-08 (1994). In 1995, DOE took the position that it had neither a statutory nor a contractual obligation to accept nuclear waste from utilities in the absence of a repository or an interim storage facility. *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1338 (Fed. Cir. 2000). Thus, by 1994, Southern "ha[d] reason to know that performance by the other party w[ould] not be forthcoming, [and was] ordinarily expected to . . . take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." RESTATEMENT (SECOND) OF CONTRACTS § 350, cmt. b. Southern's reasonable pre-January 31, 1998, mitigation expenditures for substitute SNF storage facilities (*e.g.*, concrete casks) are thus recoverable. *See Chain Belt Co.*, 115 F. Supp. at 714; *see also S.N.A. Nut Co. v. The Haagen-Daas Co.*, 247 B.R. 7, 17-18 (Bankr. N.D. Ill. 2002) (allowing buyer of nuts to cover for impending partial breach of nut supply contract when nut supplier indicated that nuts would be temporarily unavailable).

### B. The Government's Arguments Fail on Both Legal and Policy Grounds.

#### 1. Because Southern Filed its Complaint After the Government's Breach, the Government's Partial Anticipatory Breach Argument is Inapposite.

The Government argues that Southern's claim for pre-January 31, 1998, damages constitutes a claim for partial breach, instead of total breach, and thus only damages from the date of the Complaint forward can be recovered. Gov.'s Resp. at 21-22. The Government's argument attempts to transform the rule that the non-breaching party may not rely on a breach that is only a partial breach to assert an anticipatory repudiation of the entire contract, into a repeal of the rule articulated in *Chain Belt* that the non-breaching party "may recover as damages the expense incurred in [a] reasonable effort to avoid harm which the defendant had reason to foresee would be the probable result of its breach when the contract was made." *Compare Chain Belt*, 115 F. Supp. at 714, *with City of Fairfax, Va. v. Washington Metro. Area Transit Auth.*, 582 F.2d 1321, 1331 (4th Cir. 1978). Southern does not claim total breach, anticipatory or otherwise. Southern did not file its Complaint in anticipation of some ambiguous future breach. Instead, Southern filed its Complaint on July 29, 1998, ***after*** the Government's January 31, 1998, partial breach of the Standard Contract. A claim for an existing partial breach is clearly available under standard contract law. *See* RESTATEMENT (SECOND) OF CONTRACTS § 253, cmt. b. ("[A] breach by non-performance, even if coupled with a repudiation, can generally give rise to either a claim for partial breach or to one for total breach."). Southern claims a partial breach of the Standard Contracts from January 31, 1998, to December 31, 2009, and seeks past and future damages for that breach in order "to place [Southern] in as good position as if the contract had been kept." *Trainor Co.*, 290 U.S. at 54.

In an attempt to avoid this black letter damages law, the Government contends that its contractual obligations were set, not by the Nuclear Waste Policy Act[2] and the Standard Contract that required DOE to commence acceptance of SNF no later than January 31, 1998, but by its own Delivery Commitment Schedules (DCSs) that were tied to the Government's Annual Capacity Reports (ACRs) that provide for performance at some date later than the filing of Southern's Complaint. Yet, this Court already has rejected the Government's DCS argument in its Order of April 7, 2004. That Order cited the Court's June 2003, order in *Yankee Atomic*, which in turn, adopted Judge Hewitt's reasoning in *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 666 (2003), that:

> The 1991 ACR itself states that "[a]s specified in the Standard Contract, the ACR is for planning purposes only and thus is **not contractually binding** on either DOE or [plaintiff.]" ... Defendant eventually conceded at oral argument that the ACRs were for planning purposes .... DOE's position that it would reject plaintiff's DCS submission if it "exceed[ed] the allocation in the [1991] ACR," ..., is inconsistent with plaintiff's justified expectation that the ACRs were negotiable and to be used for "planning purposes." ... The parties could not have expected that planning documents would create binding contractual obligations.
>
> In these circumstances, plaintiff's submission and defendant's acceptance of the proposed DCSs did not create a contractually binding obligation for either party. Even if the process defined in Article V of the Standard Contract could, if followed and completed in good faith, create a contractual obligation, the third step in the process was not completed because plaintiff did not submit and defendant did not approve a FDS [Final Delivery Schedule] for any year.

(Emphasis added) (citations to record omitted). There is no reason for this Court to revisit this issue again.

In addition, both the Federal Circuit in *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000), and the Court in its April 7, 2004, Order in this case have held that the Government breached its contractual obligation on January 31, 1998, not at some later

[2] Publ. L. No. 97-425, 96 Stat. 2201-2263 (codified at 42 U.S.C. §§ 10101-10126) (Jan. 7, 1983).

undefined date set forth in a DCS. In *Maine Yankee*, 225 F.3d at 1343, the Federal Circuit affirmed this Court's grant of partial summary judgment to a utility on its claim that the Government breached its Standard Contract to commence SNF acceptance no later than January 31, 1998. Similarly, in this case, this Court has held: "There is no dispute concerning the fact that the United States, operating through DOE, failed to meet the contractual requirement to begin disposition of the nuclear waste covered by the Standard Contracts by no later than January 31, 1998. Thus, the government partially breached the Standard Contracts executed by APC and GPC . . . ." *Southern Nuclear Operating Co. v. United States*, No. 98-614C, at 5 (April 7, 2004). The Government's argument that Southern sued for some anticipatory breach occurring after January 31, 1998, as opposed to the existing partial breach, fails in fact and law.

**2. None of the Cases Cited by the Government Disallow Pre-Breach Damages.**

In any event, the Government fails to cite any case that holds that reasonable pre-breach costs of mitigating a foreseeable breach are not recoverable in a partial breach case, even though they would be recoverable in a total breach case. Instead, the Government cites *City of Fairfax, Va.*, 582 F.2d at 1331, which simply applied the basic rule that a contract party does not obtain an immediate right to sue before the time performance is due based on the other party's repudiation of only an immaterial part of the performance it owes. *Id.* at 1331. In *Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002), the court held that the non-breaching party could not argue, on the one hand, that his stock option contract was only anticipatorily repudiated such that he could elect to forego suing for total breach and, on the other hand, state that the contract was

in fact breached such that he could have sued. In that case there were no pre-breach damages. *Id.* at 262.[3]

In *Middleton v. United States*, 175 Ct. Cl. 786, 788-89 (1966), the court did not address a general contract case, but a military back pay case in which the issue was whether a sailor could recover expenses he paid in separate proceedings to reverse a criminal conviction by civilian authorities for a sexual misconduct offense. After the sailor obtained an acquittal by civilian authorities, the Navy discharged him as unfit for duty for the entire remaining term of his enlistment, as with a total breach. *Id.* at 789. *See San Carlos Irrigation & Drainage Dist. v. United States*, 23 Cl. Ct. 276, 279 (1991), *aff'd*, 111 F.3d 1557 (Fed. Cir. 1997). When the ex-sailor brought a subsequent proceeding to have his discharge upgraded to general and to recover back pay for the early discharge, the court denied his recovery of legal expenses incurred to defend the criminal charges before civilian authorities. *Middleton*, 175 Ct. Cl. at 789-90. Because the sailor's legal expenses were not incurred to mitigate by avoiding discharge by the Navy, *id.* at 789, they were not recoverable in any event. Thus, the court's reference to contract law in this military back pay case may not be construed more broadly to reject for all contract cases the *Restatement*'s rule allowing mitigation of "forthcoming" -- future -- breaches. *See Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000) ("It is a truism that bears repeating that broad language in an opinion must be read in light of the issue before the court.").

This Court, in *Yankee Atomic*, recently confirmed that the general rule allowing recovery of pre-breach damages for foreseeable future breaches still controls:

---

[3] *Franconia Assocs. v. United States*, 536 U.S. 129 (2002), *Roehm v. Horst*, 178 U.S. 1 (1900), and *United States v. Dekonty Corp.*, 922 F.2d 826 (Fed. Cir. 1991), cited by the Government, recognize that a plaintiff may sue for anticipatory repudiation of a contract, but do not address the availability of "pre-breach" damages.

Recently, in *Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665, 674 (2004),[4] another one of the series of pending SNF cases, the court held that the utility was "justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance."

> **"Once a party has reason to know that performance by the other party will not be forthcoming, he is [ordinarily] expected to . . . take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise."** *Restatement (Second) Contract* § 350 cmt. b.

[*TVA*, 60 Fed. Cl. at 674-75]

. . . .

. . . Damages for partial breach include the costs incurred by the seller in mitigation. "A buyer can obtain cover damages even if it has not cancelled the contract and has accepted a partial delivery . . . ." 24 *Williston on Contracts* 4th Ed., § 66.44, pp. 610-613. Damages are not recoverable for damages that should have been foreseen and avoided by reasonable effort without undue risk, expense, or humiliation. *See Restatement (Second) of Contracts* § 350, cmt. b (1981) ("'As a general rule, a party cannot recover damages for loss that he could have avoided by *reasonable efforts*.'") (cited in *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002).)

The court concludes that plaintiffs will not be precluded from presenting evidence of and on pre-breach damages.

*Yankee Atomic*, 2004 WL 1535688, at *6-*7 (bold emphasis added).

[4] The Government asserts that subsequent to the issuance of the above-quoted order, the Court in *TVA* responded to its motion to reconsider and "indicated that its decision should not be interpreted as permitting TVA to recover damages prior to the date that the TVA court defined as the first partial breach." Gov.'s Resp. at 24, n.7 (citing Gov.'s App. at 20 (Order in *Tennessee Valley Authority v. United States*, No. 01-249C (Fed. Cl. Aug. 12, 2004)). A review of the one-paragraph August 12, 2004, Order, however, shows that the Court simply stated that the government's motion to reconsider "proceeds on erroneous premises" and denied the government's motion for reconsideration. While the Court stated that it made "no finding" at the summary judgment stage that TVA could recover damages beginning in 1995 for the Government's 1997 breach of its duty of good faith, the Court explained that "causation is an element of proof regarding damages." Thus, pre-breach damages will be awarded if proven at trial and are not barred as a matter of law pursuant to the *TVA* order quoted in the text.

**3. The Government's Argued-For Rule Would Produce Absurd Results.**

Indeed, abandonment of section 350 of the *Restatement (Second) of Contracts* and *Chain Belt* and the adoption of the Government's suggested rule would produce untenable practical results. *See* 17A Am. Jur. 2d, *Contracts* § 344, p. 352 (1991) ("The language employed by parties to a contract should receive a fair, reasonable, and practical construction, since it is to be presumed that the parties contracted with fair, reasonable, and practical results."). Were Southern and other nuclear utilities barred from recovering any costs of mitigation incurred prior to January 31, 1998, they would have few options. Operation of the reactors would have caused many of the spent fuel pools to fill to capacity by now, leaving the utilities with virtually no other storage option except additional on-site capacity. Absent the additional capacity, the utilities would have been forced to shut down their reactors.[5] This Court has recognized the absurdity of the Government's position. *Yankee Atomic*, 2004 WL 1535688, at *6. The Standard Contract should not be interpreted to require utilities to do the opposite -- shut down reactors -- of what the NWPA and the parties reasonably and practically intended – and continue to operate nuclear reactors without constructing additional on-site storage facilities after January 31, 1998.

In order to place Southern "in the same position as if there had been no breach," *Trainor Co.*, 290 U.S. at 54, the Court should allow Southern to recover the cost of reasonable expenditures "to avoid loss" that were incurred "[o]nce [Southern] ha[d] reason to know that

[5] Had Southern or the other nuclear utilities followed such a dubious course, the Government would no doubt argue that the costs arising from shutting down of the reactors would not be recoverable because "[a]s a general rule, a party cannot recover damages for loss that he could have avoided by reasonable efforts." *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 350, comment b (1981)). The cost of such reasonable efforts was the cost of the pre-January 31, 1998, mitigation.

performance by the [Government] w[ould] not be forthcoming." RESTATEMENT (SECOND) OF CONTRACTS § 350, cmt. b.

**III. Contract Law Allows the Recovery of Actual Damages Incurred Subsequent to the Filing of the Complaint.**

The Government next argues that Southern can recover damages for the present breach only up to the date of the filing of the Complaint. Gov.'s Resp. at 26-27. For this proposition, the Government persists in quoting part of *Corbin on Contracts* § 956 that this Court expressly stated in *Yankee Atomic,* 2004 WL 1535688, at *1, had been specifically superseded. The Government nevertheless maintains, based on the superseded section of the *Corbin* treatise, that: "It has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ -- that he must treat the breach as only 'partial'." *Id.* This argument fails for two reasons. First, as this Court observed in the *Yankee* case, the above statement has been corrected by the author of the treatise:

> As stated in the 2003 Fall Cumulative Supplement, in commenting on a state court's reliance on Section 956 to deny prospective damages for a partial breach: "[a]ctually the result [in that case] is not sound. A breach can cause future damages and still be only 'partial'. It is not true that future damages are inconsistent with a partial breach."

*Yankee Atomic*, 2004 WL 1535608, p. 550-551 at *1.[6]

Second, the Federal Circuit has held that under "general principles of the law of damages . . . a recovery for past damages ordinarily includes not only those damages that the plaintiff incurred before the filing of the complaint, but also any damages that the plaintiff incurs up to the time of trial." *McAllister*, 70 F.3d at 1243. *See Calhoun v. United States*, 354 F.2d 337, 339

[6] The Spring 2004 supplement retains the above quote. 9 CORBIN ON CONTRACTS § 956, p. 563 (Supp. 2004).

(Ct. Cl. 1965) (stating that the court, "once having obtained jurisdiction of the persons and subject matter of a suit, retains such jurisdiction for all purposes including the awarding of all damages accruing up to the date of judgment"). Additionally, this Court has correctly declined to limit damages to costs incurred to the date the complaint was filed, stating:

> Given the nature of the breach here, as well as the suggested magnitude of measures taken to store the waste that defendant was required by contract and statute to accept, to limit any recovery in this action to expenditures either to the date of the filing of the Complaint or the date of trial may well not adequately compensate plaintiffs and restore them to the position they would have been in but for the breach.

*Yankee Atomic*, 2004 WL 1535688, at *3.

Moreover, none of the cases or treatises the Government cites expressly bars a party from recovering the past damages it has incurred after the filing of the Complaint. In particular, the Government's reliance on *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), and *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), is unavailing. *Lujan* and *Newman-Green* merely stand for the general proposition that a plaintiff cannot create federal jurisdiction based on post-filing conduct where that jurisdiction did not exist when the suit was filed. *See Lujan*, 504 U.S. at 571 n.4; *Newman-Green*, 490 U.S. at 830. Here, the Government breached the Standard Contracts before Southern filed this suit and the Government no longer contests jurisdiction.[7]

Similarly, in *San Carlos Irrigation*, 23 Cl. Ct. 276, the court did not limit the amount of damages that the plaintiff could recover to costs incurred up until the date the complaint was filed. Instead, the court simply stated that a new six-year statute of limitations runs for each

[7] On October 14, 2004, in *Florida Power & Light Co. v. Untied States*, No. 98-483C, Judge Sypolt issued an order *sua sponte* questioning the Court's subject matter jurisdiction in that SNF case, and also questioning a series of Court of Appeals' decisions starting with *Indiana Michigan Power Co. v. United States*, 88 F.3d 1272 (D.C. Cir. 1996), that direct utilities to this Court for resolution of their breach of contract claims.

partial breach. Because Southern filed its complaint less than six years after the Government's January 31, 1998, breach, the statute of limitations is not an issue in this case.

Furthermore, to limit Southern's recovery to the damages it incurred through the time the lawsuit in this case was filed would be inefficient and would result in a substantial waste of judicial resources. In the six years since this case was filed, Southern has incurred millions of dollars in developing and providing alternative SNF storage as a result of the Government's breach. Moreover, the Government is in the process of conducting extensive discovery regarding those damages (as well as Southern's future damages) in this case. There is no logical or legal reason, and the Government has not identified any, why the recovery of such damages, from the time the complaint is filed to the time of trial, should require the filing of an entirely separate action.

## IV. Under Standard Contract Law, Southern is Entitled to Recover Future Damages if it Presents Evidence Proving Such Damages with Reasonable Certainty.

The Government's argument that Southern cannot recover future damages in a partial breach case fails because standard contract law has long recognized that continuing and future damages caused by a breach are recoverable if foreseeable, caused by the breach, and established with reasonable certainty. *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1334 (Fed. Cir. 2002) (affirming award of future damages); *Northern Helex Co. v. United States*, 634 F. 2d 557, 564 (Ct. Cl. 1980) (holding that plaintiff entitled to recover anticipated future profits).

First, the same treatise cited by the Government, Gov.'s Resp. at 26-27, provides in the cumulative supplement, which the Government failed to cite, that "[a] breach can cause future damages and still be only 'partial'. It is not true that future damages are inconsistent with a partial breach." 9 CORBIN ON CONTRACTS § 956, p. 563 (Supp. 2004). The Government's

citation to section 26 of the *Restatement (Second) of Judgments*, which permits a plaintiff to maintain a subsequent action for a later partial breach, does not change this analysis. Gov.'s Resp. at 33. Section 26 does not preclude a plaintiff from claiming in the first action damages through the period the evidence shows the breach will continue. Indeed, that section tracks breaches, not damages, by stating that a plaintiff:

> is entitled to maintain an action for damages sustained from ***breaches*** up to the time of the institution of the action, and the judgment *does not preclude* a further action by him for a ***breach*** occurring after that date.

RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. g (emphases added).

This language addresses when an action for a breach can be brought, not what the appropriate measure of damages is. Neither the language nor the context of Section 26 of the *Restatement (Second) of Judgments* has anything whatsoever to do with limitations on damages measures in contracts cases.[8] Again whether a breach is partial, total, or based on repudiation does not impact the total amount of damages to which the non-breaching party may recover -- the amount necessary "to place such party in as good position as if the contract had been kept." *Trainor Co.*, 290 U.S. at 54.

Second, the policy against awarding future damages in some "partial" breach of contract cases -- to prevent the non-breaching party from receiving a windfall of damages today and unexpected performance in the future -- does not apply in this case. *See Yankee Atomic*, 2004 WL 1535688, *2 ("Future damages are generally not awarded due to the possibility of a windfall

[8] The Section's context is this: it is entitled "Exceptions To The General Rule Concerning Splitting"; it appears in the *Restatement of Judgments* organization under "Chapter 3. Former Adjudication: The Effects Of A Judicial Judgment; Topic 2. Personal Judgments; Title D. The Scope Of 'Claim'"; and the drafters explain that "[t]his Section presents a set of exceptional cases in which, after judgment that would otherwise extinguish the claim under the rules of merger or bar (see §§ 18, 19), the plaintiff is nevertheless free to maintain a second action on the same claim or part of it." RESTATEMENT (SECOND) OF JUDGMENTS § 26.

to the non-breaching party should the expenses not materialize if the breaching party does perform."); *see also Guntert v. City of Stockton*, 126 Cal. Rptr. 690, 703 (Cal. App. 3d Dist. 1976) ("A claim for future damage[s] may be maintained despite uncertainty of amount; it may not be maintained in the face of uncertainty as to its occurrence; a mere contingency will not support a claim for damages."). There is no such danger of such a double recovery for any damages claimed by Southern relating to the Government's non-performance through December 31, 2009, because it is ***undisputed*** that the DOE will not perform before that date. As this Court stated in the *Yankee* case:

> Here, given defendant's admission that performance will not commence at the earliest until 2010, there is no risk of windfall; there is no possibility that future government performance will ameliorate or eliminate expenditures caused by defendant's failure to take actions necessary to commence performance in 1998 and perform through 2010.

*Yankee Atomic*, 2004 WL 1535688, at *2.[9] *See* PFUF No. 5.

Nonetheless, the Government belatedly attempts to insert uncertainty into this issue by contending, "***uncertainty*** as to the future actions ***of Congress, DOE, or the Nuclear Regulatory Commission may take which could affect DOE's ability to commence operations*** **at Yucca Mountain by 2010 or** ***at another facility prior to that time*** preclude the Court from knowing that the time period 1998 to 2010 defines the specific extent of DOE's partial breaches." Gov.'s Resp. at 9-10 (emphases added). This post-hoc litigation tactic of speculating on the academic

[9] In *Yankee Atomic*, 2004 WL 1535688, at *1, plaintiffs seek damages through 2010 for the government's partial breach lasting until 2010. In this case, Southern seeks damages through 2020 for the Government's partial breach lasting until 2010. Southern seeks damages extending through 2020 because, under the particular circumstances of this case, including a DOE delay that lasts until at least the end of 2009 and the assumption that DOE will not perform at a faster rate beginning in 2010 than it has predicted it will in official planning documents, Southern will be forced to continue to add storage capacity for several years after 2010 as a proximate result of the partial breach through 2009.

possibility of pre-2010 performance by the Government does not make DOE's multiple announcements that performance will not take place prior to 2010 any less certain.[10] *See, e.g.*, *Acceptance Priority Ranking and Annual Capacity Report*, at 2 (DOE 2004) ("The projected nominal acceptance rate is based on the assumption of SNF acceptance beginning in 2010 at the Yucca Mountain Geologic Repository.") (App. at 9.) Moreover, the Government has admitted in a response to Southern's Interrogatories, that "[t]he Department of Energy ('DOE') plans to begin acceptance of spent nuclear fuel ('SNF') from commercial nuclear utilities in 2010," PPF No. 1. (App. at 16.) Although Southern does not concede in this litigation that the Government will commence performance in 2010, and believes there is considerable doubt that the Government will perform by that date (hence the request for an order affirming Southern's right to file a new action if the Government does not perform as it now asserts), it does not seek damages in this case for any breach beyond December 31, 2009. As a result, there will be no double recovery.

Third, whether Southern can prove to a reasonable certainty its future damages through 2020 arising from the Government's partial breach through December 31, 2009, is a question of fact unsuitable for resolution by summary judgment. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1584 (Fed. Cir. 1995) ("Their entitlement [to damages] is a question of fact and proof, applying the law and policy of damages."); *Budde v. Harley-Davidson, Inc.*, 2004 U.S. App.

[10] Similarly, the attempt by a defendant to assert that some intervening event might happen to inject performance in the face of the defendant's own repudiation of that performance has long been rejected by the courts. *See, e.g.*, *Caines v. Smith*, 153 Eng. Rep. 816, 817 (Ex. 1847) (Alderson, B.) (stating in case where defendant man promised to marry plaintiff woman at her request, but married a second woman before request had been made, court rejected defendant man's argument that there was a possibility that his current wife could die and he would perform his contract with the first woman: "Why should we presume that wife will die before the lapse of a reasonable time, or in the lifetime of her husband? We ought rather to presume the continuance of the present state of things; and while that continues, it is clear that the defendant is disabled from performing his contract").

LEXIS 20792, at *6 (Fed. Cir. 2004) (en banc) ("Summary judgment is only appropriate if there are no genuine issues of material fact . . . .").

Accordingly, the Government's Cross-Motion for Summary Judgment limiting the consideration of damages to those incurred between January 31, 1998, and the date that Southern filed its Complaint, July 29, 1998, should be denied.

## CONCLUSION

For the foregoing reasons, Southern respectfully requests that the Court grant Southern's Motion for an Order Regarding Subsequent Damages Actions and deny the Government's Cross-Motion to limit the consideration of damages to those incurred between January 31, 1998, and the date Southern filed its Complaint, July 29, 1998.

Respectfully submitted,

Dated: October 18, 2004

s/ M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 226-3417
Facsimile: (205) 226-8798

COUNSEL OF RECORD FOR PLAINTIFFS

Of Counsel:

Ed R. Haden
K. C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Telephone: (202) 942-5777
Facsimile: (202) 942-5999

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October 2004, a copy of the foregoing "PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR AN ORDER REGARDING SUBSEQUENT DAMAGES ACTIONS AND PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ M. Stanford Blanton