**CORRECTED COPY**

No. 98-614C
(Senior Judge Merow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN NUCLEAR OPERATING COMPANY,
ALABAMA POWER COMPANY,
GEORGIA POWER COMPANY,

Plaintiffs,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOHN C. EKMAN
HEIDE L. HERRMANN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

November 30, 2004

Attorneys for Defendant

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. SOUTHERN NUCLEAR'S PRE-BREACH DAMAGES CLAIMS ARE LEGALLY UNSUPPORTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. SOUTHERN NUCLEAR CAN RECOVER ONLY FOR PARTIAL BREACHES THAT HAVE OCCURRED AS OF THE FILING OF ITS COMPLAINT . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

## FEDERAL CASES

Bluebonnet Savings Bank, FSB v. United States,
266 F.3d 1348 (Fed. Cir. 2001) . . . . . . . . . . 17

Calhoun v. United States,
354 F.2d 337 (Ct. Cl. 1965) . . . . . . . . . . 17

Chain Belt Co. v. United States,
127 Ct. Cl. 38, 115 F. Supp. 701 (1953) . . . . . . . . . . 6, 7, 8

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002) . . . . . . . . . . 17

Fawick Corp. v. United States,
149 Ct. Cl. 623 (1960) . . . . . . . . . . 4, 5

First National State Bank of New Jersey v. Commonwealth Federal Savings and Loan Association, 610 F.2d 164 (3d Cir. 1980) . . . . . . . . . . 15, 16

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . 2

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . 6

McAllister v. Secretary of Health and Human Services,
70 F.3d 1240 (Fed. Cir. 1995) . . . . . . . . . . 17

Middleton v. United States,
175 Ct. Cl. 786 (1966) . . . . . . . . . . 5, 6

Myerle v. United States,
33 Ct. Cl. 1 (1897) . . . . . . . . . . 4

Northern States Power Co. v. United States Department of Energy,
128 F.3d 754 (D.C. Cir. 1997),
cert. denied, 525 U.S. 1015 (1998) . . . . . . . . . . 15

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) . . . . . . . . . . 4

Osage Oil & Refining Co. v. Chandler,
287 F. 848 (2d Cir. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Spartan Aircraft Co. v. United States,
120 Ct. Cl. 327, 100 F. Supp. 171 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tennessee Valley Authority v. United States,
60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Trainor Co. v. Aetna Casualty & Surety Co.,
290 U.S. 47 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Yankee Atomic Electric Co. v. United States,
No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) . . . . . . . . . . . . . . . . . . 8, 10, 12

**STATE CASES**

Guntert v. City of Stockton,
55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976) . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17

Coughlin v. Blair,
41 Cal. 2d 587, 262 P.2d 305 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**MISCELLANEOUS**

9 A. Corbin, Corbin on Contracts § 956 (interim ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

9 J. Murray, Corbin on Contracts § 956 (interim ed. 2003 Fall Cumulative Supp. 2003) . . . . . . 10

Restatement (Second) of Contracts § 236 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

Restatement (Second) of Contracts § 253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Restatement (Second) of Contracts § 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Restatement (Second) of Contracts § 373 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY; ALABAMA POWER COMPANY; and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C |
| | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES

Defendant, the United States, respectfully files this reply to the response filed by plaintiffs, Southern Nuclear Operating Company, Alabama Power Company and Georgia Power Company (collectively, "Southern Nuclear"), to defendant's cross-motion for summary judgment regarding pre-breach and future damages. Because Southern Nuclear can identify no basis for the Court to award either pre-breach or future damages, defendant requests that the Court enter an order limiting the scope of damages to be litigated at trial in this matter to those incurred by Southern Nuclear between January 31, 1998 and the date of the filing of Southern Nuclear's complaint.[1]

[1] In its response, Southern Nuclear notes that it filed its complaint 179 days after January 31, 1998, and argues that it is unfair that it be limited to damages incurred during this period. Southern Nuclear filed an amended complaint on October 4, 2002. Trial in this matter could be properly limited to the damages incurred by Southern Nuclear through the filing of this amended complaint or yet another amended complaint that would capture costs incurred through 2004. The only constraint would be that the Government be allowed sufficient time to conduct discovery concerning any amounts included in the damages to be litigated.

ARGUMENT

I. SOUTHERN NUCLEAR'S PRE-BREACH DAMAGES CLAIMS ARE LEGALLY UNSUPPORTED

The Government previously established in its cross-motion for summary judgment that, because there is no cause of action for anticipatory repudiation in a partial breach case, damages allegedly incurred by Southern Nuclear prior to the partial breach of the Standard Contract by the Department of Energy ("DOE") are not recoverable as a matter of law. See Def. Mtn. 11-16. In its response, Southern Nuclear does not, and cannot, contest the Government's argument that it may not recover restitution damages for a partial breach of contract. As the United States Court of Appeals for the Federal Circuit has recently reiterated, "the remedy of restitution is available only if the breaching party's conduct amounts to a total breach of its contractual duties." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1305 (Fed. Cir. 2004) (emphasis in original); see id. at 1309 ("relief in restitution is 'available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach'" (quoting Restatement (Second) of Contracts § 373)). As the Federal Circuit held, "[t]he goal of restitution, to return the parties to their precise state before the contract, is incompatible with the situation of partial breach . . . ." Id. at 1309 n.10 (emphasis added). Southern Nuclear disclaims that it is basing its pre-breach claims upon an anticipatory repudiation and, instead, is relying only upon its right to recover mitigation costs. See PBr 7-11 ("Southern does not claim total breach, anticipatory or otherwise."). However, as established in the same comments to the Restatement (Second) of Contracts that Southern Nuclear cites in its brief, "[u]nder the doctrine of mitigation the injury party is expected to mitigate damages 'within a reasonable time *after* he learns of the *breach*.'"

Restatement (Second) of Contracts § 350 cmt. f (1981) (emphasis added); see Def. Mtn. 16-21 (citing and discussing cases). Absent an anticipatory repudiation sometime prior to January 31, 1998, there is no "breach" about which Southern Nuclear could learn. Southern Nuclear seeks to simply avoid the fact that no anticipatory "partial" repudiation legal doctrine exists by asserting that it can predict a future breach and begin mitigating its damages before any breach ever occurs.

In support of its argument concerning its right to seek mitigation damages, Southern Nuclear relies upon two sections of the Restatement (Second) of Contracts, both of which are unavailing. First, Southern Nuclear quotes comment b to section 350 of the Restatement (Second) of Contracts, which states that, "once a party has reason to know that performance by the other party will not be forthcoming . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." Restatement (Second) of Contracts § 350 cmt. b (1981), quoted at PBr. 8. Southern Nuclear has taken this sentence from the Restatement out of context, omitting the quotation's reference to four illustrations of the concept that comment b is intended to identify. In each of the four illustrations, one contracting party has already breached the contract by anticipatory repudiation or by an affirmative breach of the contract terms when the non-breaching party begins mitigation or fails to mitigate. See Restatement (Second) of Contracts § 350 cmt. b, illus. 1, 2, 3, & 4 (1981). Southern Nuclear's quotation of this out-of-context sentence does not support its argument.

Southern Nuclear also selectively quotes from the first sentence of comment b to section 253, which states in its entirety, "Under Subsection (1) a breach by repudiation alone can only

give rise to a claim for total breach, although a breach by non-performance, even if coupled with a repudiation, can generally give rise to either a claim for partial breach or to one for total breach." Restatement (Second) of Contracts § 253 cmt. b (emphasis added). Southern Nuclear still expects DOE to perform under the contract. The pre-breach damages it seeks are based upon repudiation alone. Therefore, its pre-breach damages are not allowed on a partial breach claim. See also Restatement (Second) of Contracts § 253 cmt. b, illus. 4 (explaining that a party does not have damages for breach of contract until performance is due). A party cannot seek damages for a total breach based upon anticipatory repudiation and, at the same time, seek continued performance of the contract. Instead, it must make an election: declare the contract in total breach at the time of the anticipatory repudiation or, instead, await the due date for contract performance. Restatement (Second) of Contracts § 236 cmt. b (1981) ("If the injured party elects to or is required to await the balance of the other party's performance under the contract, his claim is said instead to be one for damages for partial breach.").

Southern Nuclear has the burden of establishing that the breach in question directly and proximately "caused" the damages that Southern Nuclear seeks to recover. See Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 743 n.3 (1980) (damages are recoverable if "they are directly and proximately caused by the contract breach"); Fawick Corp. v. United States, 149 Ct. Cl. 623, 637 (1960) ("the cause must produce the effect inevitably and naturally, not possibly nor even probably") (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)); Spartan Aircraft Co. v. United States, 120 Ct. Cl. 327, 100 F. Supp. 171, 173 (1951) (burden on plaintiff to prove that breach "caused" damage). That is, "[t]he party complaining must show, not only that he has suffered the loss, but also that it would not have been incurred, but for the wrongful act of his

adversary." Fawick, 149 Ct. Cl. at 637 (1960) (quoting Osage Oil & Refining Co. v. Chandler, 287 F. 848, 852 (2d Cir. 1923)). Here, costs incurred prior to an actual breach are not incurred solely as a consequence of , or naturally and inevitably from, the breach. At best, such "mitigation" costs might be incurred in anticipation of the possibility that the other party might breach the contract. Southern Nuclear's observation that it filed its complaint after the Government's January 31, 1998 breach of the contract does not eliminate the requirements to establish this causal link. See PBr 11.

As we discussed in our motion, this Court's predecessor, the Court of Claims, has expressly rejected the argument that a plaintiff may obtain mitigation costs that actually precede the actual breach of contract. See Middleton v. United States, 175 Ct. Cl. 786, 792 (1966); Def. Mtn. 23. Southern Nuclear's only attempt to distinguish the precedential Middleton decision from the facts of this case is to assert that "the court's reference to contract law in this military back pay case may not be construed more broadly to reject for all contract cases the Restatement's rule allowing mitigation of 'forthcoming' – future – breaches." PBr 14. Yet, Southern Nuclear fails to mention that the Court of Claims expressly and definitively relied upon contract doctrines in deciding the Middleton case, finding that, under the law of contracts, a party cannot obtain damages for mitigation that precede the actual breach of contract at issue prior to the breach:

> [I]t should also be noted that a defendant's right to rely upon this 'duty to mitigate' does not depend upon express statutory authorization, rather, **its functioning is as integrally related to the law of contracts as the notion of consideration itself**. However, neither of the parties here may insist upon an expansion of this concept so as to encompass items which relate to a period *antedating* defendant's breach. Both the defendant's right to a

> setoff and the plaintiff's duty to mitigate are defined in terms of the same fixed time period; like opposites of the same coin, they are inextricably bound together. Thus, plaintiff could no more seek to reduce defendant's setoff by alleging expenses incurred prior to his discharge, than defendant could enlarge his setoff by seeking the inclusion of income which plaintiff earned prior to his erroneous dismissal. . . . It follows, therefore, that all expenses which arose prior to plaintiff's discharge that he seeks to include, may not be considered within the framework of the setoff question.

Id. at 792 (italics in original; underlining and boldface type added). To the extent that Southern Nuclear claims that costs incurred prior to DOE's partial breach are recoverable under principles of mitigation, Southern Nuclear's arguments are in direct conflict with the precedential decision in Middleton. Southern Nuclear's efforts to assert that the Middleton Court did not decide contract principles in issuing that decision are meritless and cannot resurrect their claims for pre-breach damages.

Southern Nuclear's primary response to the Government's argument is by reference to the Court of Claims' decision in Chain Belt Co. v. United States, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953), but this decision does not establish Southern Nuclear's right to recover pre-breach damages. First, contrary to Southern Nuclear's assertion, PBr 9 n.1, the Chain Belt case involved a total, not a partial, breach of contract. See Chain Belt, 127 Ct. Cl. at 45, 115 F. Supp. at 706-07 (pursuant to agreement to sell property, machinery required to be removed by a date certain, December 10, 1946); see also Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 649 (2004) (finding that Chain Belt involved a total breach). Although Southern Nuclear asserts that the facts in Chain Belt could not involve a total breach because the Government eventually performed its obligations under the contract and moved the equipment, see PBr 9 n.1, the damages at issue were those resulting from a total breach claim. "A claim for damages for total

breach is one for damages based on all of the injured party's remaining rights to performance." Restatement (Second) of Contracts § 236(1), at 214 (1981) (emphasis added). The plaintiff in Chain Belt sought the costs of moving the equipment itself when the Government failed to perform.

Second, the Chain Belt decision does not support an award of pre-breach mitigation damages, given that it awarded mitigation costs only after an anticipatory repudiation of the contract at issue. While the Court of Claims never used the term "repudiation" in its order, it found, as a matter of fact, that, when the plaintiff began the removal of the Government's machinery in November 1946, the Government was physically unable to remove the equipment by December 10, 1946, a process that would take the "better part of . . . 90 days" to complete. Chain Belt, 127 Ct. Cl. at 43, 115 F. Supp. at 705; see id. at 56, 115 F. Supp. at 713 ("By November 1946, it was apparent that under no circumstances could defendant move out all its machinery by December 10, as provided in the contract."). The Court also determined that, "[w]hile there was not specific permission granted by defendant to plaintiff to do this work, defendant knew that it was being done and did not object." Id. at 57, 115 F. Supp. at 713. As a result, the contract was necessarily repudiated when the plaintiff commenced mitigation efforts.

In any event, even if the Chain Belt decision could stand for the proposition that a plaintiff could potentially recover pre-breach mitigation costs, the pre-breach costs in that case were so closely tied in time to the actual breach, and so minor in nature, that they are not comparable to Southern Nuclear's claimed costs. Specifically, any costs that the plaintiff in Chain Belt sought to recover were incurred no more than a month prior to the December 10, 1946 breach, when the breach was inevitable and impossible for the Government to avoid. Id. at

56-57, 115 F. Supp. at 713-14. Further, those costs were only an extremely small percentage of the total mitigation costs incurred by plaintiff in connection with the removal of the machinery, as "the bulk of [the $2,191.52 in work] was done subsequent to [December 10, 1946]." Id. at 57, 115 F. Supp. at 713. In awarding the mitigation damages in total, the Court noted that the pre-breach damages were nominal and that the record did not show precisely what work was performed prior to December 10, 1946, and what work was performed after that date. Id. In this case, Southern Nuclear seeks to recover millions of dollars in damages incurred years before the actual partial breach.[2] Even if Southern Nuclear has properly interpreted the Chain Belt decision, it does not support recovery of pre-breach damages incurred before it was impossible for the Government to avoid the future breach.

Southern Nuclear also relies upon this Court's recent decision in Yankee Atomic Electric Co. v. United States, 2004 WL 1535688 at *6-*7 (June 28, 2004), on the Government's motion *in limine* regarding the presentation of evidence of pre-breach damages. As explained in the Government's opening brief, the Court cited to its decision in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (2004), as support for the concept that pre-breach damages potentially could be recoverable. See Yankee Atomic, 2004 WL 1535688, at *6. However, in response to the Government's motion for reconsideration in TVA, in which the Government demonstrated that pre-breach damages were not recoverable in a partial breach case, and should

[2] According to the Southern Nuclear's initial disclosures, Southern Nuclear incurred approximately $3.2 million in alleged damages prior to January 1998, has incurred approximately $82 million between 1998 and 2004 and expects to incur approximately $26 million between 2005 and 2010. As noted in our opening brief, Southern Nuclear has not yet quantified its potential future damages beyond 2010. Instead, according to counsel for Southern Nuclear, the quantification of the damages that Southern Nuclear expects to incur between 2010 and 2020 will be the subject of an expert report.

not be permitted as a matter of law, the TVA Court indicated that its decision should not be interpreted as permitting TVA to recover damages prior to the date that the TVA court defined as the first partial breach. Defendant's Motion For Reconsideration of the Court's June 2, 2004 Order, filed August 10, 2004, and Order in Tennessee Valley Authority v. United States, No. 01-249C (Fed. Cl. Aug. 12, 2004). The Court in Yankee Atomic also cited to comment b of section 350 of the Restatement (Second) of Contracts. As explained above, and with all due respect, that comment does not provide that a party may receive pre-breach damages on a partial breach of contract claim.

Southern Nuclear also argues that a ruling by the Court that pre-breach damages are unavailable for partial breach claims would produce an "absurd result." PBr 16. However, to find differently, the Court would eliminate totally the distinction between partial and total breach claims, and it would essentially eliminate the requirement that the non-breaching party make an election in response to an anticipatory repudiation to declare the contract in total breach or to await the contract performance due date. Under Southern Nuclear's theory, Southern Nuclear would be allowed to seek continued performance while, at the same time, pursuing remedies that flow from a total breach claim. This result would preclude the need for a contractor ever to make an election following an anticipatory repudiation.

In addition to relying upon Chain Belt and the Restatement of Contracts, Southern Nuclear repeatedly quotes from Trainor Co. v. Aetna Casualty & Surety Co., 290 U.S. 47 (1933), for the proposition that "the general rule is that the injured party should be placed in the same position as if there had been no breach." PBr 7, 11 and 16. However, citation to this general principle of contract law does not establish that Southern Nuclear is entitled to pre-breach

damages as a matter of law. Nor does it establish that, absent the actual breach, and absent an election to treat an anticipatory repudiation as a total breach, Southern Nuclear would not have acted in the same manner in which it did. Southern Nuclear's claims for pre-breach damages should be denied as a matter of law.

## II. SOUTHERN NUCLEAR CAN RECOVER ONLY FOR PARTIAL BREACHES THAT HAVE OCCURRED AS OF THE FILING OF ITS COMPLAINT

Although Southern Nuclear engages in great efforts attempting to distinguish the cases that we cited in our motion for partial summary judgment from the situation at hand, Southern Nuclear has not cited a single case in which a court actually has awarded future or prospective damages through an indefinite period – not yet incurred or obligated – to a plaintiff in response to a partial breach claim. The only support that Southern Nuclear cites in response to our demonstration that damages for future partial breaches are not available to a claimant in a partial breach case is the Court's decision in Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004) (unpublished), and a sentence from a supplement to the Corbin on Contracts treatise. PBr 17-18 (quoting 9 J. Murray, Corbin on Contracts § 956, at 550-51 (interim ed. 2003 Fall Cumulative Supp. 2003)). However, neither of these sources support Southern Nuclear's assertion that, in a partial breach context, it is entitled to pursue damages in its current case for future partial breaches through some indefinite period of time in the future.

First, Southern Nuclear's reliance upon the Court's decision in Yankee Atomic as somehow allowing a plaintiff to recover future damages through some indefinite period of time is misplaced. In Yankee Atomic, the Court allowed evidence at trial of damages that could be

incurred through 2010. However, the Court's decision was predicated upon four separate assumptions, none of which are true in this case. First, the Court based its decision, in part, upon its understanding that the Government had admitted that performance would commence "at the earliest" in 2010 and there was "no possibility that future Government performance will ameliorate or eliminate expenditures caused by" the Government's failure to perform. 2004 WL 1535688, at *2. Second, the Court predicated its decision on the fact that the plaintiffs in that case were not seeking to recover damages that may be incurred if DOE did not commence performance until after 2010. Id. Third, the Court based its decision upon the fact that the plaintiffs were potentially seeking damages under a restitution theory, which would result in a total rather than partial breach and, therefore, potentially allowed for the recovery of future damages. Id. Finally, the Court noted that the limitation of damages to the date of the complaint or the date of trial potentially would not adequately compensate the plaintiffs and restore them to the position they would have been in but for the breach. Id. at 3.

In this case, none of these assumptions or limitations are present. First, the Government agrees that, consistent with the statute of limitations, Southern Nuclear may bring future actions for future breaches, regardless of whether DOE performs by 2010. Second, Southern Nuclear has unequivocally stated that it is seeking damages past 2010. PBr 1 ("intend[s] to seek damages arising from the Government's partial breach of the Standard Contracts from January 31, 1998 to December 31, 2009, to the extent such damages are incurred through December 31, 2020."). However, Southern Nuclear also seeks an order allowing it to return to the Court to seek additional damages "in the event the Government's delay in performance extends beyond December 31, 2009." PBr 2. Even if the Court were to accept the Court's reasoning in Yankee

Atomic, that reasoning has no application where, as here, Southern Nuclear is seeking damages through some undefined time in the future. Further, there is absolutely no reference in Southern Nuclear's complaint to seeking restitution as an alternative basis for recovery. Absent a restitution claim and, consequently, a total breach claim, Southern Nuclear has no right to seek future damages for future breaches through some indefinite period of time.

Finally, as the Government explained in its opening brief, the Court's ruling in Yankee Atomic did not disagree with the legal reasoning regarding the scope of damages that could be considered for future breaches. Yankee Atomic, 2004 WL 1535688 at *2-3 ("Damages caused by any failure to commence pick-up after 2010 (as well as any related issued concerning the adequacy of that future performance) would be future damages for future breaches."). Instead, the Court reached a different result based upon the finding of a single partial breach that extended from 1998 to 2010. Id. As we established in our motion, DOE's failure to perform is more properly viewed as a continuing series of partial breaches, tied to the failure to act in accordance with approved delivery commitment schedules.[3] Southern Nuclear is simply incorrect that it is "undisputed" that DOE will not perform until 2010. See PBr 21. As the testimony at trial in Yankee Atomic demonstrates, action could be taken by Congress or the NRC that would require performance by DOE prior to 2010. Def. Mtn. 9-10. Moreover, Southern

---

[3] In response to the Government's discussion regarding the effect of delivery commitment schedules, Southern Nuclear incorrectly states that the Court, pursuant to its April 7, 2004 order, has "rejected the Government's DCS argument." PBr 12. In fact, the Court stated in that order, "[w]hat is required are schedules of the specific damages claimed by plaintiffs [Alabama Power Company and Georgia Power Company] so that any rate determination(s), if any, that may be required in order to resolve issues of liability for the damages items sought can be reached in the context of the actual circumstances involved." Order at 6-7. Accordingly, the actual extent of the Government's breach in any given year since 1998 will be developed in future proceedings.

Nuclear, itself, "does not concede in this litigation that the Government will commence performance in 2010" and acknowledges that future damages "will be a function of when the Government actually performs under the contract." PBr 4 and 22. Because the timing and extent of DOE's performance in the future is still unknown, it is improper to view DOE's failure to perform as a single partial breach that runs from 1998 to 2010. Instead, the extent of the Government's breach can only be measured with certainty as of the date of the filing of Southern Nuclear's complaint or the date of trial, at the latest. Therefore, Southern Nuclear's reliance on the Court's decision in Yankee Atomic as somehow allowing for the recovery of future damages through some indefinite period of time is misplaced.

Second, in the Corbin supplement, the author, Professor Murray, discusses a decision from the California Court of Appeal, Guntert v. City of Stockton, 55 Cal. App. 3d 131, 126 Cal. Rptr. 690 (1976), in which the California court reversed an award of future damages for a partial breach of contract.[4] In response to a partial breach of a lease contract, the trial court, in addition to ordering previously incurred damages and an injunction for specific performance, had ordered the defendant to pay a particular sum of money each month from the date of the trial court judgment through the identified end date of the lease, "unless the lease ended earlier." Id. at 150, 126 Cal. Rptr. at 701. The appellate court recognized, however, that, "[i]f the breach is partial only, the injured party may recover damages for non-performance only to the time of trial and may not recover damages for anticipated future nonperformance." Id. at 150-51, 126 Cal. Rptr. at 702 (quoting Coughlin v. Blair, 41 Cal. 2d 587, 598, 262 P.2d 305, 311 (1953)). The Guntert

[4] Southern Nuclear cites to this same discussion of the Guntert decision at page 19 of its brief.

court determined that an injunction requiring specific performance of the contract would absolutely preclude the contract holder from incurring any damages and that, therefore, an award of lost future profits and entry of an injunction would be inconsistent:

> Here plaintiffs elected to remain in possession, continue to pay rent and sue for a partial rather than total breach. The lease, whose prime objective was the letting of property, remained alive; the law's remedies were substituted for only a part of the injured party's election, the breach was partial and not total. That election was confirmed by the injunction issued at the tenant's behest. That injunction prevented the landlord from interfering with the tenant's quiet possession and use of the leased premises during the remainder of the tenancy.
>
> By granting an injunction which assured specific performance and, in addition, a judgment for future profits available only on the theory of a total breach of the lease, the trial court awarded something akin to double recovery. Plaintiffs occupy an inconsistent position – they argue (correctly) that their right to damages was not dependent upon eviction, yet they seek a measure of damages available to an evicted tenant, that is, one who no longer has a lease. The breach being only partial, the trial court erred by awarding prospective loss of profits.

Id. at 151, 126 Cal. Rptr. at 702. Nevertheless, the Guntert court found that "[t]he unavailability of prospective damages does not preclude future awards of past damages flowing from the partial breach" and that "[p]laintiffs may, within the period of limitations, file a new lawsuit seeking additional damages." Id. at 153, 126 Cal. Rptr. at 703.

Professor Murray discusses the Guntert case and describes it as holding that "it would be a double recovery to allow both an injunction to protect against future harm and also to allow damages for future harm." 9 J. Murray, supra, § 956, at 550. Based upon that description, he states that, "[a]ctually, the result here is not sound," that "[i]t is not true that damages to be suffered in the future are always prevented by an injunction," and that "[a]n injunction may

lessen or prevent a particular kind or item of damage without preventing another one." Id. at 550-51. Professor Murray then states that "[a] partial breach should be subject to both injunctive and future damage remedies in a proper case, because neither one may offer a complete cure alone." Id. at 551. Finally, in discussing the result in Guntert, he states that "a good example of this is First Nat'l State Bank of N.J. v. Commonwealth Fed. Sav. & Loan Ass'n, 610 F.2d 164 (3d Cir. 1979), where both specific performance and damages were awarded." Id.

Although Professor Murray's discussion of the Guntert case is somewhat confusing, it appears that he is contesting the Guntert court's finding that an injunction should preclude the existence of any future damages, rather than the means by and manner in which future damages are awarded. Because the United States Court of Appeals for the District of Columbia Circuit has expressly declined to order specific performance by the Department of Energy, see Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 759 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the issue of whether specific performance would eliminate Southern Nuclear's future damages is not before this Court.

The issue here is whether it is appropriate to preclude, at the present time, an award of damages that might be caused by future partial breaches, but to allow the plaintiff to return to court if and when future partial breaches cause it to incur damages. In the Corbin on Contracts treatise, Professor Corbin expressly and unambiguously states that, in a partial breach claim, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury only to the date of the writ – that he must treat the breach as only 'partial.'" 9 A. Corbin, Corbin on Contracts § 956, at 747 (interim ed. 1979) (emphasis added). Plainly, the long-standing rule is that a plaintiff claiming a partial breach may only recover damages "to the

date of the writ," id., and Professor Murray, in his supplement, certainly cannot intend to disagree with that long-standing principle. To the extent that he has intended to contradict that long-standing rule, he has cited absolutely no authority to support that new theory.[5]

In any event, Professor Murray, in his supplement to the Corbin treatise, did not discuss or acknowledge the Guntert court's second basis for declining to award future damages for a partial breach: that "[t]he award of prospective profits accruing [more than five years after the date of judgment] offends another tenet of damage law – the requirement of reasonable certainty . . . ." Guntert, 55 Cal. App. 3d at 152, 126 Cal. Rptr. at 703. The trial court in Guntert "indulged in a shaky prognostication – that [the plaintiff's] plant could not be reopened or profitably utilized within the remaining years of tenancy." Id. As the appellate court found, the plaintiff "alone had made the decision to close down the plant," and the trial court viewed this decision "as an expression of economic prudence dictated by prevailing uncertainties over outcome of the lawsuit." Id. "Although the trial court found that plant closure was a natural foreseeable consequence of the breach, it did not find that reopening the plant would be uneconomical or unfeasible." Id. at 153, 126 Cal. Rptr. at 703. As the appellate court found, this uncertainty in the fact of damage, or the manner in which damages would accrue in the future

[5] Although Professor Murray cites to the United States Court of Appeals for the Third Circuit's decision in First National State Bank to support his assertion that specific performance and damages are not incompatible, the First National case did not involve an award of any future damages. To the contrary, the court in First National affirmed the trial court's award of "damages incidental to the breach covering reimbursement for interest and for losses sustained in operating the mall:" that is, "to reimburse with interest the amount First National has lost," in the past, "in operating the mall." First Nat'l, 610 F.2d at 169 & 174 (emphasis added). Although the court affirmed the trial court's order that the defendant "pay interest at eight percent on the amount of the loan from the time the loan should have been made until such time as the money is turned over to First National," id. at 169, neither the trial nor appellate courts made an award of future damages of costs yet to be incurred.

based upon the plaintiff's future business decisions, also precluded an award of future damages:

> A claim for future damage may be maintained despite uncertainty of amount; it may not be maintained in the face of uncertainty as to its occurrence; a mere contingency will not support a claim for damages.

Id. (emphasis added). The appellate court in Guntert determined that "[t]hese two rules – one denying prospective damages for partial breach, the other denying contingent future damages – combine to invalidate that portion of the [trial court] judgment awarding monthly 'lost profits' commencing February 1974." Id.[6]

Southern Nuclear also asserts that it is "entitled to recover future damages if it presents evidence that proves such damages with reasonable certainty." PBr 19-22. Southern Nuclear misapprehends both the nature of the Government's argument and the nature of the "reasonable certainty" standard. The reasonable certainty standard articulated in Energy Capital Corp. v. United States, 302 F.3d 1314 (Fed. Cir. 2002), and other cases concerns the level of proof of damages required once the elements of liability and causation have been established. Energy Capital, 302 F.3d at 1328 (requirement that plaintiff "demonstrate its entitlement to lost profits by showing . . . 1) causation, 2) foreseeability, and 3) reasonable certainty"); see Bluebonnet Savings Bank, FSB v. United States, 266 F.3d 1348, 1355 (Fed. Cir. 2001) ("reasonable approximation" is sufficient only once "responsibility for damage is clear"); Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (clearly applying "approximation"

---

[6] Southern Nuclear also cites to McAllister v. Secretary of Health and Human Services, 70 F.3d 1240 (Fed. Cir. 1995), and Calhoun v. United States, 354 F.2d 337 (Ct. Cl. 1965), for the general proposition that the Court may award damages through the time of trial or through the date of judgment. PBr 17-18. However, neither of these cases arises from a partial breach claim or speaks to the damages that are available upon such a claim.

standard to amount of damage). The requirement to prove damages with "reasonable certainty" has nothing to do with the legal principle of whether Southern Nuclear will be allowed to present evidence at trial regarding future damages arising from a partial breach of contract. Instead, as shown above and in the Government's motion, Southern Nuclear's entitlement to future damages arising from future partial breaches is a matter for future actions before the Court.

Southern Nuclear has failed to identify how it would be prejudiced or not be made whole by being limited to seeking damages for breaches that have already occurred. The Government agrees that Southern Nuclear may, consistent with the statute of limitations, bring future actions for future breaches, and Southern Nuclear has filed its own motion asking that it be allowed to seek future damages arising from DOE's prospective non-performance in a later-filed action. In fact, Southern Nuclear's original motion seeking an order allowing it to preserve its future claims arising from future breaches recognizes the necessity of the Government's approach. Southern Nuclear has not provided a basis to distinguish between damages it may incur between 2004 and 2010 and the damages it may incur after 2010 if DOE does not perform at that time.

## CONCLUSION

For the foregoing reasons and the reasons set forth in our opening brief, the Government respectfully requests that the Court deny Southern Nuclear's motion in its entirety and grant the Government's cross-motion limiting the consideration of damages to those incurred between January 31, 1998, and the date that Southern Nuclear filed its complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

JOHN C. EKMAN
HEIDE L. HERRMANN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

November 30, 2004

CERTIFICATE OF FILING

I hereby certify that on this 30th day of November 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT REGARDING PRE-BREACH AND FUTURE DAMAGES – CORRECTED COPY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Marian E. Sullivan