# APPENDIX

# INDEX TO THE APPENDIX


| Document | Page |
|---|---|
| Letter from M. Sullivan, Department of Justice, to M. Stanford Blanton, Balch & Bingham, dated November 24, 2004 | 1 |
| Letter from M. Stanford Blanton to M. Sullivan, dated December 2, 2004 | 6 |
| Letter from M. Stanford Blanton, dated November 12, 2004 | 9 |

U.S. Department of Justice

Civil Division

PDK:DMC:HDL:MESullivan
154-98-614

Telephone:
(202) 307-6288

*Washington, D.C. 20530*

November 24, 2004

VIA FACSIMILE AND U.S. MAIL

M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Re: *Southern Nuclear Operating Co. v. United States*, Fed. Cl. No. 98-614C

Dear Mr. Blanton:

The purpose of this letter is to address several outstanding discovery matters. I look forward to discussing these matters with you at your earliest convenience. As I indicated in my voicemail message earlier today, I will be in the office on Friday, November 26, 2004, as well as Monday, November 29, 2004.

Southern Nuclear's Pending RCFC 30(b)(6) Notice

By letter dated November 12, 2004, you served upon behalf of Southern Nuclear a RCFC 30(b)(6) notice for the deposition of a DOE representative or representatives on five very broad topics. Four of these topics seek information regarding DOE's plans for waste acceptance beginning in 2010, including DOE's efforts to meet the 2010 date and the transportation planning activities that DOE will undertake. The fifth seeks speculative testimony from a DOE representative about matters that were never formalized for performance by DOE in 1998.

The Government does not understand Southern Nuclear's need for these depositions, given Southern Nuclear's current position that it does not intend to litigate the issue of whether DOE will meet the 2010 date or seek any damages at trial arising from DOE's failure to meet this date. In fact,

COPY

pursuant to Southern Nuclear's currently pending motion, Southern Nuclear seeks to defer trial proceedings for any damages arising from DOE's failure to perform in 2010. See Southern Nuclear's Motion For An Order Regarding Subsequent Damages Actions. Moreover, Southern Nuclear seeks to take depositions about topics, such as DOE's plans for transportation, that are still being developed. DOE has not entered into any contracts with cask or container vendors (Topic 1c.). As DOE witnesses recently testified at trial in Yankee Atomic Electric Co. v. United States, No. 98-126C, DOE has not determined how or whether it will accept canistered fuel from utilities (Topic 1d.). The Government simply cannot see the relevance of "the Government's plan for accommodating Yucca Mountain's capacity limitations" to Southern Nuclear's current damages claims (Topic 1f.). While DOE is aware of the current statutory capacity limit upon the repository, this limit will be a matter for Congress to address.

Topic 5 on Southern Nuclear's RCFC 30(b)(6) notice presents different concern. Topic 5 seeks to depose an individual on "the physical characteristics of equipment, including canisters, casks and overpacks, that would-have-been used, had the Government begun performance in 1998. This topic is improper because it asks for a fact witness to speculate upon what DOE would have done in 1998. The only relevant inquiry is what DOE was required to do and this issue may be answered by reference to the contract.

Please call me at your earliest convenience to discuss these deposition topics further. Without further explanation as to how these deposition topics are proper and relevant, the Government is prepared to seek a protective order from the Court to preclude the depositions.

Decision Documents

As you may recall, when we spoke on October 28, 2004, we raised a concern that we had not found among the documents Southern Nuclear had produced any "decision documents." Since our call, we have continued to review the documents produced by Southern Nuclear, but still have not found any documents that reflecting the decisions and authorizations to rerack the wet pools and/or construct the dry storage facilities, the costs of which efforts Southern Nuclear now seeks as damages. For

example, we have not received meeting minutes from any board of directors or documents from management authorizing re-racking and/or construction efforts. Based upon our experience in other SNF cases, we know that decisions to incur significant expenditures generally require management or board of directors approval (and, sometimes, both) and we have been provided with documents reflecting those board or management approvals. Here, we have been unable to locate similar documents. Therefore, please provide us with all decision documents requested in discovery or identify by bates number where such documents are found among the documents Southern Nuclear has produced to date. Obviously, we would like to avoid having to re-depose senior managers based upon the delayed production of this category of documents.

Audit Requests

As you know, by letter dated October 29, 2004, I served upon you our audit requests seeking additional documentation of Southern Nuclear's claims. When we spoke during the week of November 1, 2004, you indicated that Southern Nuclear was working to gather the documentation that the Government's auditors had requested. Please provide a date by which we may expect to receive this material.

Deposition Scheduling

The Government anticipates that it will require approximately 20 depositions of Southern Nuclear personnel to address the schedule and damages issues to be litigated. We would like to depose Mr. Bruce E. Hunt, Mr. J.P. Reynolds and Ms. Susan Hoxie-Key during the week of December 13, 2004, in Birmingham, Alabama. Please advise me as to whether these individuals will be available. As we finalize our list of deponents, we will notify you for the purpose of scheduling depositions.

We expect that the depositions of Mr. Hunt and Mr. Ronald Cocherell will both require two days because of the areas of responsibility and the lengthy tenures of both of these gentlemen at Southern Nuclear. Please let me know whether Southern Nuclear will consent to this extension or whether the Government should seek leave of the Court. We currently expect that we will be

able to conduct the remaining depositions within the time limits set for in RCFC 30(d)(2).

Problems With Recent Production

We have identified three technical problems with Southern Nuclear's production of documents on November 8, 2004. First, although one of the CDs was labeled with a bates range SNCRFP 000001-008851, we found images on the disk with the bates ranges SNCRFP 002755-008851 and SNCRFP 015139-017892. We found no images that bear the bates numbers SNCRFP 000001-002754. Two, although another CD was labeled with the bates range SNCRFP 015139-015185, the images on this CD were not endorsed with bates numbers and are different from the images provided on the first CD. Three, the document bates numbered SNCRFP 017193-017386 (located in the 002Fldr in 001935.tif) did not convert correctly, so we are unable to print or process these images. Please advise me at your earliest convenience as to how Southern Nuclear proposes to address these problems.

December 31, 2004 Close Of Fact Discovery

The Government still has not yet received a response to our request that the fact discovery deadline be moved from December 31, 2004, to April 1, 2005, the date upon which expert discovery closes. As we have previously discussed, the December 31, 2004, deadline is not practicable given the amount of information we need to review, the number of depositions needed given claims by three separate facilities, the amount of information that still has not been produced, the status of the audit process, and the schedules of the attorneys involved in this case.

More specifically, in preparing for depositions, we have engaged in a time-consuming review of tens of thousands of documents produced by Southern Nuclear. Through that process, we have identified nearly 20 potential deponents from three separate facilities. As you know, we still are missing documents that are responsive to our discovery and audit requests - including documents from the three facilities reflecting the decisions to rerack and/or construct dry storage. These documents are critical to any effective and efficient deposition process. Finally, three out of four of the attorneys involved in this case are key members of the team that defended, at trial this summer,

the claims brought by the Yankee utilities before Senior Judge Merow. As you likely are aware, since trial, we have been engaged in the preparation of an extensive post-trial brief and findings of fact.

Our proposal will not affect the trial date set for August 30, 2005. Instead, it merely coincides the close of fact and expert discovery. Given the significant claims brought by Southern Nuclear, this change in schedule to an internal deadline seems reasonable. Please advise me as to Southern Nuclear's position on this matter so that we may bring this matter before Senior Judge Merow upon a timely basis, if necessary.

Please contact me at (202) 307-0365, so that we may discuss these matters further.

Sincerely,

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch

BSB

BALCH & BINGHAM LLP

Alabama • Georgia • Mississippi • Washington, DC

M. Stanford Blanton
(205) 226-3417

Attorneys and Counselors
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, AL 35203-2015
(205) 251-8100
(205) 226-8798 Fax
www.balch.com

(205) 488-5879 (direct fax)
sblanton@balch.com

December 2, 2004

BY FACSIMILE (202) 514-8640
AND BY U.S. MAIL

Marian E. Sullivan
Trial Attorney
U. S. Department of Justice
Civil Division
Commerical Litigation
1100 L Street N.W.
Washington, DC 20530

Re: Southern Nuclear Operating Co. v. United States
Fed. Cl. No. 98-614C

Dear Marian:

I am in receipt of your letter dated November 24, 2004, in which you address several discovery related matters. Because of the number of issues raised, I felt that it would be more productive to respond in writing.

As to our deposition notice under RCFC rule 30(b)(6), it may be accurate that, if the Court grants our Motion Regarding Future Damages, it may moot several of these topics for the purpose of this litigation, principally those related to the Government's plans for the acceptance of spent nuclear fuel stored in dry casks at the time of acceptance. Inasmuch as the Government has objected to our motion, and has argued that Southern may not recover as damages in future litigation future costs associated with breaches for which damages are awarded in the present litigation (i.e. the Government's "claim splitting" argument on pages 31-33 of the response to our motion and motion for partial summary judgment regarding damages), it is necessary for us to conduct discovery now into any costs that may be imposed on Southern in connection with DOE's acceptance of the spent nuclear fuel stored in dry casks. If the Court were to rule favorably on our motion prior to the taking of the 30(b)(6) depositions it may be that some of these subjects would not be necessary. Subject to that, we must conduct discovery assuming we will be required to prove these matters at trial.

Other matters listed in the 30(b)(6) notice, such as type of canister and/or cask the Government would have utilized had it performed per the contract, as well as the factual basis for the acceptance rate identified in the DOE's 2004 Annual Capacity Report, are clearly legitimate issues for trial in this cause and the Government has no basis for objecting to this discovery. Please let us know when a witness will be available.

As to the Depositions you have requested, it was disappointing to see that the Government has delayed until the end of November to notify us that it desires to take 20 fact depositions. Southern does not consent to the Government's taking twice the minimum number of depositions allowable under Rule 29 of the RCFC. I also note that the Government has had substantial discovery from Southern from the joint coordinated discovery proceedings which would have allowed it to commence any depositions on the acceptance rate issues far in advance of 17 days prior to the scheduled end of fact discovery.

We are prepared to make Mr. Hunt available on December 13 as requested. Mr. Reynolds no longer works for Southern Company and we will need to inquire as to his availability. Ms. Hoxie-Key is in training during the week of the December 13, 2004. She can be available on December 20 or 21.

Southern is diligently working on the Government's audit requests, which we received almost two months after providing the Government with Southern's initial damages disclosures. The responses to these voluminous requests should be available soon and we will begin providing you with responses as soon as they are available.

As to the so-called "decision documents," we have confirmed that documents that relate to the decision to add storage capacity at the subject plants were included in our initial responses to the Government's discovery requests. I have attached the first pages of six such documents, indicating their Bates numbers, to this letter, with the understanding that you have agreed that the Government will show Southern similar courtesy in the event we are unable to locate documents in the Government's production to us. In addition, we are conducting supplemental searches of Southern's documents to determine whether there are additional documents of this nature that have not been produced. If we discover any such documents, they will be promptly forwarded to you . I understand that we have forwarded new CDs to you to resolve the issue you raised regarding the missing bates numbers.

As to your requested extension of fact discovery, we would be amenable to discussing an extension provided there are adequate protections against any additional requests for extensions by the Government, there is firm agreement that any extension will not affect the trial date, and we can reach agreement on a process that protects the ability of our experts to have the benefit of fact discovery in the preparation of their reports.

BALCH & BINGHAM LLP



Don't hesitate to call if you have any questions concerning the foregoing.

Sincerely,

M. Stanford Blanton

MSB:dc
Attachments

 11/12/04 So Nuc 3.1

B&B

BALCH & BINGHAM LLP

Alabama • Georgia • Mississippi • Washington, DC

Attorneys and Counselors
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, AL 35203-2015
(205) 251-8100
(205) 226-8798 Fax
www.balch.com

M. Stanford Blanton
(205) 226-3417

(205) 488-5879 (direct fax)
sblanton@balch.com

November 12, 2004

**BY FEDERAL EXPRESS**
**AND BY FACSIMILE**

Ms. Marian E. Sullivan, Esq.
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

**Re:** ***Southern Nuclear Operating Co., Inc. v. United States***
**Court of Federal Claims Case No. 98-614C**

Dear Marian:

Enclosed please find Southern's Notice of Rule 30(b)(6) depositions for the Government's designated representative(s). The depositions are now scheduled to begin on December 2, 2004, at the law offices of Arnold & Porter in Washington D.C. Please let us know if an alternate date is necessary.

If we can be of any further assistance, please do not hesitate to call.

Sincerely,

M. Stanford Blanton

MSB:dc
Enclosures

cc: Mr. Ronald A. Schechter
Mr. Jeffrey L. Handwerker

9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING CO. INC., ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RULE 30(B)(6) NOTICE OF DEPOSITION**

Please take notice that, pursuant to Rule 30(b)(6) of the Rules of the Court of Federal Claims, plaintiffs, Southern Nuclear Operating Co. Inc., Alabama Power Company, and Georgia Power Company (collectively "Southern"), will take the deposition of the Department of Energy ("DOE" or "Government"), or a person or persons designated by the Government upon oral examination before an officer authorized by law to administer oaths, commencing December 2, 2004, at Arnold & Porter, 555 Twelfth Street, N.W., Washington, D.C. 20004-1202, commencing at 9:00 a.m. until 6:00 p.m., or at a time and place agreed upon between counsel for the parties, and continuing from day to day until completed.

Pursuant to Rule 30(b)(6), the Government shall designate the most knowledgeable person or persons to testify upon its behalf as to the following subject matter.

1. The Government's plans for accepting delivery of spent nuclear fuel stored in dry casks on Southern's reactor sites, including but not limited to:

   a. The Government's plans, if any, regarding potential interim storage option(s) prior to the availability of Yucca Mountain (*e.g.*, alternative sites

10

near Yucca Mountain, elsewhere, the Government taking title to spent fuel at onsite (at reactor), ISFSIs, etc.).

b. The physical characteristics of the equipment and facilities, including but not limited to and to the extent applicable, canisters, casks, and overpacks, the Government plans to use to accept spent nuclear fuel from Southern's reactor sites and transport the spent fuel to the Yucca Mountain repository.

c. The existence of any contracts with cask and/or container vendors, as well as any other vendors, related to the acceptance and disposal of commercial spent nuclear fuel; and

d. The Government's plans relative to the acceptance of spent nuclear fuel in canisters and/or casks purchased by Southern Nuclear for storage purposes.

e. The Government's projections of spent nuclear fuel discharges for Southern (factoring in the Government's assumptions, if any regarding capacity factors, burn-up rates, etc.).

f. The Government's plan for accommodating Yucca Mountain's capacity limitations.

2. The Government's plans for accepting delivery of spent nuclear fuel stored in dry casks on away from reactor independent spent fuel storage installations.

3. The Government's plan for the commencement of operations at the Yucca Mountain repository, including but not limited to schedule milestones, actual and projected performance against such milestones, prior and current budget requests, and funding requirements.

4. The basis for the spent nuclear fuel acceptance rate utilized in the DOE's 2004 Annual Priority Ranking and Annual Capacity Report.



11

5. The physical characteristics of equipment, including canisters, casks and overpacks, that would-have-been used, had the Government begun performance in 1998.

Dated: November 12, 2004

M. Stanford Blanton

Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 226-3417
Facsimile: (205) 226-8798

**COUNSEL OF RECORD FOR PLAINTIFFS**

**Of Counsel**:

Ed R. Haden
K. C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
ARNOLD & PORTER
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Telephone: (202) 942-5777
Facsimile: (202) 942-5999

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury, that on this 12 day of November, 2004, I caused to be served by United States mail and facsimile a copy of the foregoing Plaintiffs' Rule 30(b)(6) Notice of Deposition addressed as follows:

Marian E. Sullivan, Esq.
Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

M. Stanford Blanton