**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**ELECTRONIC CASE FILING**
**(Filed December 20, 2004)**

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING COMPANY; ALABAMA POWER COMPANY; and GEORGIA POWER COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | ) | Civil Action No. 98-614C<br>Senior Judge Merow<br><br>Plaintiffs' Opposition to Defendant's Motion for a Protective Order to Preclude RCFC 30(b)(6) Deposition |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER TO PRECLUDE RCFC 30(b)(6) DEPOSITION**

**Introduction**

Plaintiffs Southern Nuclear Operating Company ("SNC"), Alabama Power Company ("APC"), and Georgia Power Company ("GPC") (collectively, "Southern") respectfully oppose the government's motion for a protective order and to quash the Rule 30(b)(6) deposition notice that Southern has served on the government.

Southern's Rule 30(b)(6) deposition notice seeks testimony from a government representative on five topics that go to the heart of Southern's damages claims in this action. Specifically, Southern requests that a Department of Energy ("DOE") representative be made available who could testify regarding:

> (1) the government's plans for accepting delivery of spent nuclear fuel stored in dry casks on Southern's reactor sites;

> (2) the government's plans for accepting SNF stored in dry casks on away from reactor independent fuel storage installations ("ISFSIs");
>
> (3) the government's plans for the commencement of operations at the Yucca Mountain repository, including but not limited to schedule milestones, actual and projected performance against such milestones, prior and current budget requests, and funding requirements;
>
> (4) the basis for the spent nuclear fuel acceptance rate utilized in the government's July 2004 Annual Priority Ranking and Annual Capacity Report; and
>
> (5) the physical characteristics of equipment, including canisters, casks and overpacks, that would have been used had the government begun performance in 1998.

The government contends that it should not have to offer a witness to testify about any of these subjects. While not contesting the relevance of the information sought, the government asserts that the information sought is either unnecessary to these proceedings (on the assumption that either Southern's pending motion concerning future damages is granted, or that the government's motion for partial summary, which makes the same arguments that this Court already rejected in the Yankee case, is granted), unduly burdensome (on the untested assertion that the information elicited on these subjects in other cases nearly one year ago is still current), or speculative (on the remarkable assertion that DOE has no current plans as to how it would perform when the Yucca Mountain repository commences operations).

The government's arguments against making a designee (or designees) available are meritless. First, Southern's motion regarding future damages requested an order from the Court pursuant to Section 26 of the Restatement of Judgments that would preserve Southern's ability to: (a) pursue damages claims based on a failure by the government to commence waste acceptance in 2010, or later, in a subsequent action; and (b) pursue future damages that Southern will incur subsequent to 2020 that stem from the government's failure to commence waste

acceptance between 1998 and 2010 (that is, the partial breach at issue in this case) until a subsequent action. Although Southern agrees with the government that the scope of the trial could be limited if the Court were to rule favorably on Southern's pending motion to preserve its future damages claims, the Court has not yet ruled on that motion. See Def's Mot. at 2, n.2. Accordingly, Southern must proceed as if it will be required to prove all of the damages that stem from the government's partial breach of contract in this action. In the event that the Court were to rule favorably on Southern's pending motion, then Southern agrees that it could forego certain of the requested discovery relating to additional partial breaches of contract by the government beyond its failure to perform until 2010.[1]

Second, the government's burden arguments are without merit. While it is true that Messrs. Kouts and Zabransky testified nearly one year ago in prior SNF-related cases, it is far from true that Southern is required to rely on that testimony in this case. Significant events have occurred since the prior testimony was elicited that renders the testimony obsolete. For example, Mr. Kouts testified previously that DOE would submit a license application to the NRC relating to Yucca Mountain in December 2004. Testimony of Christopher Kouts, Indiana Michigan (March 10, 2004) at page 1937. DOE has since missed that deadline.[2] Similarly, DOE officials' testimony that the repository would commence operation in 2010 has since been contradicted by DOE correspondence to utilities indicating that the commencement date for repository operations will be "revised." See Letter from D. Zabransky, DOE, to R. Cocherell, Southern Co. (December

[1] Southern reserves its rights to pursue additional partial breaches of contract in this action if it becomes clear between now and the date of trial that the government will not commence waste acceptance until some point subsequent to 2010.

[2] See Joe Klusmire, DOE to Miss Yucca Deadline, The Inyo Register, December 13, 2004, available at http://www.ocrwm.doe.gov/newsroom/ocrwmnews.shtml

1, 2004) (Ex. 1). Other events have occurred subsequent to this testimony that render the testimony suspect. See, e.g., Nuclear Energy Inst., Inc. v. E.P.A., 373 F.3d 1251 (D.C. Cir. 2004) (holding that certain EPA regulations relating to Yucca Mountain violated the Energy Policy Act). Southern is entitled to try this case with current and accurate factual information, and the government's attempts to shield new developments from Southern (and the Court) cannot be countenanced.

Finally, there is nothing "speculative" about the information that Southern has sought concerning how the government will eventually perform. Indeed, the government's argument appears to rest on the ipse dixit that any event that will occur in the future must be speculative. That, of course, is not so. As stated in Southern's Rule 30(b)(6) deposition notice, Southern requests a government representative to testify about the government's plans for accepting SNF when performance begins. If the government has no such plans, its witnesses can testify accordingly. If the government does have plans in place (or knows what those plans will be), then its Rule 30(b)(6) designees can testify as fact witnesses with personal knowledge regarding those plans. This argument, like the others asserted by the government, lacks foundation and should be rejected.[3]

## Argument

### A. Plaintiff is Entitled to Conduct Fact Discovery Relating to the Full Scope of its Damages Until the Appropriate Scope of Damages for Trial has been Determined

[3] The government's burden in preventing a deposition pursuant to Rule 26(c) is a high one, and has not been met here. See, e.g., Alexander v. F.B.I., 186 F.R.D. 71, 75 (D.D.C. 1998) ("[T]he moving party [seeking a protective order to preclude a deposition] has a heavy burden of showing 'extraordinary circumstances' … that would justify such an order." (internal citation omitted)); see also Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition."); Frideres v. Schiltz, 150 F.R.D. 153, 156 (S.D. Iowa 1993) ("Protective orders prohibiting depositions are rarely granted.").

As the government acknowledges, its arguments regarding the appropriate scope of discovery for Southern's damages claims are dependent upon the resolution of issues currently pending before this Court. Def's Mot. at 2, n.2. Southern, however, cannot presume how this Court will rule regarding the appropriate scope of damages for trial. As trial is scheduled for August 2005, Southern must seek to discover information necessary to try its case independent of the motions that are pending.

The government contends that the first two subjects for examination as outlined in Southern's 30(b)(6) notice – i.e., the government's plans for accepting the delivery of SNF storage in dry casks on Southern's reactor sites and other spent fuel storage installations – are relevant only to potential future damages claims, based on the government's preferred outcome on the damages scope issues currently outstanding.[4] The government makes a similar argument, this time citing to Southern's preferred outcome on these issues, with respect to topics 3 and 4 – i.e., the government's "plans for the commencement of operations at the Yucca Mountain repository," and the "basis for the spent nuclear fuel acceptance rate utilized in the DOE's 2004 Annual Priority and Annual Capacity Report." See Plaintiffs' Rule 30(b)(6) Notice of Deposition.

Until this Court decides the scope of damages claims for trial, however, Southern is entitled to take discovery relating to all issues concerning the government's partial breach of contract. The fact that Southern's position on the pending motions, if accepted, would lead, inter alia, to an order preserving Southern's ability to seek certain future damages in a subsequent action, or that the government's preferred outcome on the pending motions would be a ruling

---

[4] This Court in the Yankee cases rejected the same arguments that the government has asserted in its motion for partial summary judgment in this case. See Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl., June 28, 2004).

that Southern cannot split its claims (or, even more restrictively, that Southern should not be permitted to recover any future damages in this partial breach of contract action), is no basis for limiting the scope of permissible discovery at this time.

Moreover, the government's contention that topic 4 – relating to the basis for the SNF acceptance rate in the July 2004 APR/ACR – goes only to DOE's plans for waste acceptance beginning in 2010 is misplaced. See Def's Mot. at 5. APRs and ACRs are contractually-required documents. The basis for the information contained in the 2004 APR/ACR is pertinent not only to how the government intended (at least as of July 2004) to discharge its contractual obligations in 2010, but also to whether the acceptance rates in that APR/ACR would have been reasonable had the government started performance in 1998. Southern is entitled to inquire about this topic in a deposition of a government representative.

As this Court concluded in Yankee, damages may be tried for a partial breach that extends into the future if the scope of the partial breach is known. See Yankee Atomic Elec. Co. v. United States, No. 98-126C, 2004 WL 1535688, at *1, n.2. The date upon which performance will commence (which also constitutes the termination date for the government's industry-wide breach) is thus highly relevant to Southern's damages claims if this Court were to decline to allow Southern to preserve its ability to recover future damages in another action. Depending on this Court's resolution of the pending motions regarding the scope of damages for trial, Southern may need to present evidence regarding all damages resulting from the government's partial breach of contract, not just those resulting through December 31, 2020, in this action.

**B. Southern Is Not Required to Forego Fact Discovery Merely Because Other Utility Plaintiffs Have Conducted Fact Discovery**

The government also maintains that Southern should be precluded from taking a Rule 30(b)(6) deposition in this case because other utility plaintiffs have already taken discovery in

their cases or examined government personnel at trial on the subjects addressed in Southern's deposition notice. Def's Mot. at 5-6. However, the fact remains that Southern is entitled to try this case on a record that is current, accurate and tailored to the issues specifically raised by this case. See, e.g., Lohrenz v. Donnelly, 187 F.R.D. 1, 3 (D.D.C. 1999) (emphasizing party's "legitimate and important interest in trial preparation" when faced with a Rule 26(c) motion). The government offers no authority, and we have found none, that supports its theory that Southern must rely on testimony elicited in related litigation. The government also offers no assurance that the records developed in other cases are current, accurate, and complete.

To the contrary, the examples cited by the government demonstrate that precisely the opposite is true. For instance, the government cites the January 30, 2004 testimony of Mr. Christopher Kouts regarding "DOE's plans for submitting a license application to the NRC" as a putative basis to deprive Southern of a Rule 30(b)(6) deposition on topic 3 of Southern's notice. Def's Mot. at 6. Mr. Kouts testified then – nearly one year ago – that DOE's plan (at least at that time) was to submit a license application for Yucca Mountain to the Nuclear Regulatory Commission ("NRC") by December 4, 2004. Deposition of Christopher Kouts, Comm. Edison Co. v. United States, 98-621C, (Fed. Cl. Jan. 30, 2004) at 93; see also testimony of Christopher Kouts, Indiana Michigan (March 10, 2004) at 1937. December 4 has come and gone and DOE has not submitted a license application to the NRC, nor is it clear when DOE will do so. See DOE to Miss Yucca Deadline, Note 2, supra. Southern seeks deposition testimony from the DOE as to what its current plans are, not on what it might have been planning one year ago.

The government also refers Southern (and the Court) to prior testimony given by David Zabransky in the Yankee cases. Def's Mot. at 6. Prior to his testimony in the Yankee trial, Mr. Zabransky had indicated in a July 28, 2004 letter to the industry that DOE had resumed the DCS

process, and planned to begin operating the Yucca Mountain facility in 2010. (Ex. 2.) Subsequent to that testimony, however, Southern received a letter from Mr. Zabransky indicating that DOE had once again changed its plans, and was in fact suspending the DCS process (yet again) and revising the date for the operation of Yucca Mountain.

> "After the Department has determined a revised date for the initial operation of the Yucca Mountain repository, it will resume the DCS process." Letter from D. Zabransky, DOE, to R. Cocherell, Southern Co. (December 1, 2004) (Ex. 1).

Mr. Zabransky's prior testimony, like that of Mr. Kouts, is, at best, obsolete. Southern is entitled to question Messrs. Zabransky and Kouts (or whomever the DOE designates as its representative) on these topics so that the Court can have as complete an understanding as possible regarding DOE's current plans for commencing the waste acceptance process. Southern respectfully seeks deposition testimony on this issue pursuant to its Rule 30(b)(6) notice.

Southern certainly does not intend to put the government's witnesses to undue burden and intends to rely on prior testimony wherever possible. However, Southern is entitled to develop its own record in this case, particularly where the underlying facts have changed. For these reasons, the government's burden arguments should be rejected.

**C. Defendants May Not Exclude Entire Topics from Fact Discovery Merely Because They Pertain to Plans For Future Events**

The government's final argument for depriving Southern of a Rule 30(b)(6) deposition in this case is that the government's representative may be called upon to "speculate regarding … plans for events that either did not occur or that may never occur." Def's Mot. at 7. Paradoxically, the government urges at the same time that prior testimony on these topics should preclude further inquiry. Id. at 8.

There is nothing inherently speculative about the topic areas of which the government complains. Topic two of the proposed 30(b)(6) deposition, which the government contends is

speculative, reads in its entirety as follows: "The Government's plans for accepting delivery of spent nuclear fuel stored in dry casks on away from reactor independent spent fuel storage installations." Contrary to the government's claim, it is certainly possible for the government to have existing plans as to how it will perform in the future, even if certain aspects of such performance are currently uncertain. As a factual matter, either the government has such plans or it does not: there is nothing speculative about the question or its answer.

Similarly, there is nothing speculative about topic five of Southern's notice, which relates to: "The physical characteristics of equipment, including canisters, casks, and overpacks, that would-have-been used, had the Government begun performance in 1998." Plaintiffs' Rule 30(b)(6) Notice of Deposition. Either the government planned to use certain equipment, and has information pertaining to the physical characteristics of the equipment it planned to use, or it does not. The simple fact that performance will begin in the future does not automatically render such testimony speculative.

Moreover, the government does not cite to a single relevant authority on the subject of "speculative" testimony (or other forms of evidence) elicited during discovery. Even if the testimony sought were "speculative," in that DOE has not yet developed plans for how it will perform, that fact alone would not be a basis for precluding discovery, which operates under a more liberal standard than the standard for admissibility at trial. Not surprisingly, therefore, the cases that the government cites each pertain to the standard of evidence admissible at summary judgment or at trial, standards not applicable here. See Def's Mot. at 7-8, citing United States v. Burlington Res. Oil & Gas Co., No. Civ. A.H-98-611, 2000 WL 1058972 (S.D. Tex. May 13, 2000) (summary judgment standard); Washington v. Dep't of Transp., 8 F.2d 296 (5th Cir. 1993)

(standard at trial); Kloepfer v. Honda Motor Co., 898 F.2d 1452 (10th Cir. 1990) (same); Messenger v. Bucryus-Erie Co., 507 F.Supp. 41 (W.D. Pa. 1980) (same).

Apparently concerned that its "speculativeness" argument does not justify the denial of deposition discovery on the topics noticed by Southern, the government also argues that these topics have been addressed by other government witnesses in prior proceedings. But, given the Government's changes in position on fundamental issues regarding progress toward licensing and the commencement of repository operation since that testimony was given, as described above, Southern would be remiss to rely at trial on information provided by the government in testimony dating from 2002, as the government appears to suggest on page 9 of its Motion. Furthermore, Southern has a right to have on the record in this case what matters the government considers speculative. The fact of the government's consideration of certain topics as "speculative" is itself evidence directly relevant to Southern's damages claims in this action.

## Conclusion

For the reasons set forth above, Southern respectfully requests that this Court deny the Defendant's Motion For a Protective Order To Preclude RCFC 30(b)(6) Deposition and Motion for Expedited Consideration.

DATED: December 20, 2004

Respectfully submitted,

___/s M. Stanford Blanton________

M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue South
Birmingham, AL 35203
(205) 251-8100

<u>OF COUNSEL</u>:

Ed R. Haden
K.C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue South
Birmingham, AL 35203
(205) 251-8100

Ronald A. Schechter
Jeffrey L. Handwerker
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

**CERTIFICATE OF FILING**

I hereby certify that on this 20th day of December 2004, a copy of the foregoing, "PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER TO PRECLUDE RCFC 30(b)(6) DEPOSITION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s M. Stanford Blanton
M. Stanford Blanton