IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO ENLARGE DEADLINE
TO COMPLETE DISCOVERY AND SUBMIT EXPERT REPORTS

TABLE OF CONTENTS

Page

STATEMENT OF FACTS . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . 12

TABLE OF AUTHORITIES

Page

MISCELLANEOUS

4B C. Wright & A. Miller, Federal Practice & Procedure § 1162 (3d ed. 2002) . . . . . . . . . . . . . . . 7

INDEX TO APPENDIX


Page

1. Order, dated November 8, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A.001-A.003

2. Order, dated April 7, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A.004-A.005

3. Order, dated June 21, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A.006-A.008

4. Letter from John C. Ekman to M. Stanford Blanton, dated December 23, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A.009

5. Letter from M. Stanford Blanton to Marian E. Sullivan and John C. Ekman, dated December 29, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . A.010-A.011

6. Selected excerpts from Southern Nuclear's January 31, 2005 expert damages model, supporting schedules and documents . . . . . . . . . . . . A.012-A.045

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO ENLARGE DEADLINE
TO COMPLETE DISCOVERY AND SUBMIT EXPERT REPORTS

Pursuant to Rule 6(b) of the Rules of the Court of Federal Claims, the Government respectfully requests that the Court enlarge by 120 days the current deadlines, initially identified in its order dated June 21, 2004, to complete fact and expert discovery and the continuing audit and to submit the Government's responsive expert reports. The enlargement sought by the Government for these tasks would be to and including June 29, 2005.[1]

This motion is necessary because of the unexpected and significant changes to prior damages disclosures that Southern Nuclear Operating Company ("Southern Nuclear") made in the damages claim that it presented to the Government for the first time on January 31, 2005, in its underlying methodology, and in its supporting schedules and documents. While Southern Nuclear is entitled to present its damages claim in a manner that it deems appropriate, the decision fundamentally and extensively to alter – in violation of this Court's orders – the damages

[1] The fact discovery deadline previously was modified by agreement of the parties to March 1, 2005. Since the expert discovery deadline does not expire until April 1, 2005, the Government is not seeking an additional 120 days added to that deadline for the Government to complete expert discovery. Instead, we propose that fact and expert discovery for the Government terminate on June 29, 2005, the date upon which it is proposing that responsive expert reports be due.

estimates and supporting schedules and documents provided to the Government in August 2004 makes impossible the completion of fact discovery and the audit process and the preparation of responsive expert reports by March 1, 2005.[2] As a result, a 120-day enlargement is warranted here.

The Government consulted with counsel for Southern Nuclear concerning its request to enlarge the deadline for the submission of expert reports.[3] However, counsel for Southern Nuclear refused to agree to any enlargement in the current deadlines.

STATEMENT OF FACTS

On August 31, 2005, the Government was served with 20 binders containing Southern Nuclear's damages schedules and supporting documentation. Those binders formed the basis for the Government's discovery into Southern Nuclear's claims and for the auditors' review and analysis of those claims. Those binders also formed the basis for the numerous audit requests served upon Southern Nuclear, some of which remain outstanding.

The 20 binders provided to the Government in August 2004 contained 13 pages of supporting schedules prepared by, among others, the Kenrich Group ("Kenrich"), Southern

---

[2] The current deadline for the Government's responsive expert reports is February 29, 2005. However, since that date is not upon the calendar in 2005, we have interpreted the deadline to be March 1, 2005.

[3] One day after receiving the report and damages model, and while in Birmingham, Alabama for a deposition and the audit, the Government initially requested 60 additional days to respond and complete discovery. However, that request was made before we had an opportunity to review and analyze the revised expert submissions. Based upon our subsequent review, it is clear that the initial request was inadequate, and the Government's enlargement request has increased, as set forth in this motion.

Nuclear's expert damages witnesses in this case.[4] Thereafter, in November 2004, Southern Nuclear supplemented its prior damages disclosures with additional schedules. The schedules provided to the Government in August and November 2004 detailed damages totaling nearly $114 million for all three nuclear facilities operated by the plaintiffs. Specifically, the schedules identified the following alleged damages: (i) Plant Hatch – $58,723,747 in past damages; (ii) Plant Farley – $11,607,384 in past damages and $32,440,654 in future damages through 2012; (iii) Plant Vogtle – $2,851,852 in past damages; and (iv) past costs associated with Private Fuel Storage totaling $8,166,000. The audit concerning these alleged damages is continuing, and audit requests remain outstanding.[5]

Thereafter, on January 31, 2005, Southern Nuclear served its expert damages report and damages model upon the Government. However, the expert report was not simply a narrative analysis of the original 13 pages of schedules and supporting cost information. Instead, Southern Nuclear provided a narrative expert report, supported by 17 new binders containing new expert-prepared schedules and significant, additional supporting information. The 17 binders begin with a 90-page damages model that contains 90 damages schedules that previously were not produced by Southern Nuclear. Within the 17 new binders, the Government has identified more than 250 new expert-prepared schedules, including schedules that detail Southern Nuclear's alleged

---

4 The 20 binders also included more than 8,000 pages of supporting documents.

5 While there remain numerous outstanding audit requests from the Government's auditors concerning the previously disclosed damages claim, Southern Nuclear's counsel and employees have been cooperative throughout the audit process. The length of the audit, and the fact that information remains outstanding, largely is attributable to the significant amount of information needed to audit an extensive claim.

damages (see A.012-A.016)[6], schedules that set forth manpower analyses (see A.017-A.021), schedules that support the underlying labor rates, cost of capital and escalation factors (see A.022-A.027), and schedules that detail each utility's fuel management issues. See A.028-A.030.[7] While some of the new schedules only contain a few lines of information (see A.031-A.032), others contain numerous lines of data which need to be analyzed by counsel and by the Government's auditors and experts. See, e.g., A.012-A.013, A.017-A.020, A.030. Additionally, marginalia and calculations, written by Southern Nuclear's damages experts upon most of these newly-produced schedules, complicates the required analysis. See A.016, A.028, A.030, A.040, A.043. Of the original 13 pages of schedules produced to the Government in August 2004, the Government has identified only eight pages that are relied upon in the latest damages claim.

Moreover, the schedules are part of complicated threads of information that ultimately comprise and support Southern Nuclear's damages claim. Although the model's complexity is difficult to summarize, an examination of Plant Hatch's alleged past damages demonstrates the complex methodology underlying the Kenrich damages analysis and highlights the significant effort needed to analyze the new damages claim. Based upon the roadmap provided in handwriting within the damages model and supporting schedules and documents (see, e.g. A.012-A.025, A.045), working through the thread concerning Plant Hatch's past damages starts with the review of at least 27 of the 90 schedules contained in the "Damages Model" binder

---

6 "A.__" refers to the appendix attached to this motion.

7 In this motion, and for ease of reference, the Government references only a sample for each category of information provided by Kenrich and Southern Nuclear in connection with the latest submissions. Within the thousands of pages provided by Southern Nuclear on January 31, 2005, examples of each new category of information abound.

(schedules beginning with "A"). See, e.g., A.012. Thereafter, the model sends the reader out of the "Damages Model" binder and into the other 16 newly-provided binders. Indeed, to tie out all of Plant Hatch's alleged past damages, the Government must refer to at least ten binders and several hundred pages of interrelating schedules and supporting documents, including numerous documents containing handwritten calculations and marginalia.

In addition to hundreds of new schedules, the 17 binders include more than 4,000 pages of supporting material. Of those pages, the Government estimates that as many as 3,000 were not previously provided by Southern Nuclear. These additional documents include hundreds of pages of accounting data never produced by Southern Nuclear (see, e.g., A.033-A.039), as well as hundreds of pages of previously undisclosed marginalia and calculations handwritten by Southern Nuclear's damages experts. See, e.g., A.040-A.04. Of the 17 new binders served by Southern Nuclear, 11 include new or substantially revised information, including the following binders: (i) Damages Model; (ii) Fuel Management Costs; (iii) Cost of Capital; (iv) Cask Loading/Fuel Handling Cost Estimates (including costs associated with the most recent cask loading campaign ending November 2004); (v) Escalation; (vi) ISFSI Future Cost Estimates; (vii) ISFSI O&M and Fuel Characterization Cost Estimates; (viii) Past Actuals; (ix) MPC Cost Analysis (applying 2004 costs instead of the 2003 costs upon which the prior damages estimate was based); (x) Labor Rates; and (xi) Would-Have-Been Costs. While the remaining six binders contain documents that largely had been disclosed or that are publicly available, those binders now are formatted to be consistent with the January 31, 2005, damages model, not with the August 2004 claim.

In addition to the exponentially more complicated presentation, the Kenrich report and model adds at least $66 million in new past and future damages to Southern Nuclear's claim, increasing Southern Nuclear's claim from $114 million to over $180 million in nominal dollars. The damages claim even includes damages categories that did not exist in the earlier disclosure. Based upon our initial review of the revised damages claim, and in addition to certain components disclosed in August 2004, Southern Nuclear's damages claim now includes the following newly-disclosed damages: (i) Plant Hatch – $34.7 million in new damages, including nearly $1.6 million in new past costs and $33.1 million in future costs that were entirely omitted from the original claim; (ii) Plant Farley – $7.0 million in new past damages and a reduction in future damages totaling $7.7 million; (iii) Plant Vogtle – a reduction in past damages totaling $33,852 and the addition of previously omitted future damages totaling $34.5 million; and (iv) an additional $300,000 in past costs associated with PFS.[8] Southern Nuclear's new damages claim represents a 60 percent increase over the previously disclosed damages claim. While the August 2004 claim included future damages only for Plant Farley through 2012, the updated damages claim includes damages for all three utilities through 2020. On December 23, 2004, subsequent to this Court's December 20, 2004 order, the Government requested information from Southern Nuclear identifying its alleged post-2010 damages, none of which had been previously provided.[9] Southern Nuclear refused to provide this information prior to the submission of its expert report. A.009-A.011.

---

[8] These figures are estimates based upon our initial review of the revised damages claim.

[9] Southern Nuclear had identified damages at Plant Farley through 2012, though those damages now have been revised. Future damages for plants Hatch and Vogtle were not previously disclosed.

Finally, and in addition to the more than $66 million in new damages, the expert damages report and model now identify "Would Have Been Costs" that act as offsets to Southern Nuclear's claim. These previously undisclosed offsets total an additional $33.9 million in present value. A.045. These "would have been costs" never were previously identified to the Government and have not been audited or analyzed to determine whether the offsets are appropriate, supported, and complete.

ARGUMENT

Pursuant to RCFC 6(b), this Court has wide discretion in granting requests for enlargement of time for "cause shown" when substantial interests of justice will be served by doing so. See 4B C. Wright & A. Miller, Federal Practice & Procedure § 1162 (3d ed. 2002). "Cause shown" requires that the requesting party demonstrate some justification for the issuance of the enlargement. 4B C. Wright & A. Miller, supra, § 1162. Applications for enlargements of time normally will be granted in the absence of bad faith on the part of the requesting party or prejudice to the adverse party. Id. The enlargement requested by the Government should be granted here.

In connection with the pre-trial scheduling in this case, this Court ordered that "plaintiffs shall disclose to defendant all specific damage sums claimed and all record support for the claimed sums in the form of schedules . . . setting forth the information required by the November 8, 2002 Order." Order, dated April 7, 2004 (emphasis added), A.004-A.005. Previously, this Court ordered Southern Nuclear to provide the Government: "(a) [a]ny and all items and figures from books of account or other records, which are to be introduced in evidence in this matter, and any calculations or estimates derived therefrom, shall be set forth on separate

schedules or summaries." Order, dated November 8, 2002 (emphasis added), A.001-A.003. The Court further ordered that, "(b) [a]ny schedule or summary provided . . . shall be accompanied by a statement describing the source(s) for the items or figures listed . . ., the location(s) of the source(s), the time, during the damages discovery period, when the sources(s) may be examined or audited by the opposing party, the name and address of the person(s) who prepared each schedule or summary." Id. On June 21, 2004, this Court established a procedure for disclosure of supporting documentation that was predicated upon the prior disclosure of Southern Nuclear's claimed damages. Specifically, this Court held:

> Considering that plaintiffs will proceed first at trial, it is concluded that plaintiffs shall so proceed in pretrial and initiate the audit process by providing defendant's counsel at the beginning of fact discovery, with a schedule(s) of items and figures from plaintiffs' records which are to be utilized to support its claimed damages. This may be supplemented to an extent consistent with fully accomplishing the verification process during the pretrial period.

Order, dated June 21, 2004, A.006-A.008.

As evident from the expert damages report, the damages model, the newly-created supporting schedules, and the additional supporting documents provided to the Government on January 31, 2005, Southern Nuclear failed to provide "all specific damage sums claimed and all record support for the claimed sums" and "any and all" of the information needed to examine Southern Nuclear's claim. Instead, Southern Nuclear provided roughly 60 percent of its "specific damage sums claimed" and failed to produce all of the record support for the sums claimed in both the original and revised damages claims. Southern Nuclear also failed to identify each person who prepared the schedules or summaries, waiting until the production of its expert model on January 31, 2005, to produce that information. As a result, the Government now is

faced with completing the audit of Southern Nuclear's original claim, while also beginning an audit of Southern Nuclear's updated claims and offsets that nearly total the amount of the original claim. The Government and its experts also must analyze and understand the newly-produced damages model, supporting schedules, and calculations in order to complete fact discovery, depose Southern Nuclear's expert witnesses, and prepare its own responsive expert reports. To require the Government to complete all of this work by March 1, 2005, is highly prejudicial and – given the scope of Southern Nuclear's revisions to its claim – impossible.

There are several steps that must be completed for the Government to respond to Southern Nuclear's expert report. First, the Government's auditors must determine which cost components that they have audited remain in Southern Nuclear's claim and which do not. Thereafter, the auditors need sufficient time to complete the current audit – in which pending audit requests to Southern Nuclear remain outstanding – while also completing an audit of the additional damages components disclosed on January 31, 2005. Since the future cost estimates are often subjective, the audit of these new costs for plants Hatch and Vogtle (collectively totaling more than $67 million) may be complicated and time-consuming. Moreover, Southern Nuclear's newly-identified offsets must be examined to ensure that all offsets have been identified and that any offsets provided correctly reflect the credits that should accrue to the Government.

Second, the Government and its experts must have sufficient time to analyze and understand the Kenrich damages model, the supporting schedules, calculations, marginalia, and supporting documents. Here, the Kenrich expert report is nothing more than a high-level summary of Southern Nuclear's alleged damages. Instead, the damages model, the more than 250

new schedules, and the marginalia upon those schedules and supporting documents embody the details of the damages claim. As a result, it is those schedules and documents that must be analyzed.

Third, the Government must be given additional time to depose fact witnesses and expert witnesses. At least three fact witnesses appear throughout the damages model as support for various estimates and schedules now included in Southern Nuclear's claim. See A.014-A.015, A.023.[10] These witnesses cannot be deposed until the Government has had the opportunity to examine the claim and understand the role that each witness performed in connection with the revised damages claim.[11] Finally, the Government must have sufficient time to prepare its own responsive expert reports.

Having analyzed the revised damages claim, the Government believes that a 120-day enlargement through June 29, 2005, in which to complete its expert reports and fact and expert discovery is appropriate. Thereafter, Southern Nuclear will be able to analyze the Government's expert reports and depose the Government's expert witnesses without simultaneously defending its own expert depositions. Unfortunately, the 120-day enlargement likely will require the trial date to be moved. The Government has consistently supported the maintenance of the August

---

[10] These witnesses are Tom McCallum, DeWade Pittman, and Jim Wade. These three witnesses were identified in Southern Nuclear's initial disclosures as knowledgeable concerning its damages claim. However, prior to January 31, 2005, the scope of their work upon the damages claim and Kenrich's reliance upon these three witnesses for numerous damages schedules was undisclosed.

[11] The Government is proceeding with the deposition of Ron Cocherell on February 24 and 25, 2005, even though he is cited as support for certain components of the damages claim. This is because Mr. Cocherell's name appears infrequently in the damages model and supporting schedules. In addition to the deposition of Mr. Cocherell, the Government is continuing with its depositions of other Southern Nuclear personnel.

29, 2005, trial date. However, in the face of such fundamental and material revisions to Southern Nuclear's damages claim, no alternative exists that would maintain the current trial date while providing sufficient time for the Government to respond to the revised damages claim.

The Government anticipates that Southern Nuclear will strenuously object to any schedule that delays the commencement of trial. These objections likely will be accompanied by assertions that any further delay prejudices Southern Nuclear. However, in examining these assertions, it is important to note that any delay in the trial date results from Southern Nuclear's failure to abide by this Court's orders by providing a timely and complete damages claim. Instead of proceeding to trial upon the $114 million claim it identified in August 2004, Southern Nuclear elected to increase that claim by 60 percent, while adding significant, additional past and future costs and significant, additional complexity in the presentation of those costs. In fact, prior to January 31, 2005, Southern Nuclear refused to provide any support or even calculations of its alleged damages from 2010 to 2020. A.009-A.011. That was Southern Nuclear's decision, not the Government's decision. Likewise, instead of relying upon the schedules initially provided to the Government, Southern Nuclear elected to serve more than 250 new schedules with new supporting documents and new expert-prepared marginalia and calculations. While Southern Nuclear certainly is entitled to pursue the claim it now presents, the Government should not be prejudiced by Southern Nuclear's decision to withhold production of its substantially revised claim until January 31, 2005. If Southern Nuclear wanted the trial to proceed on August 29, 2005, the new damages estimates should have been produced in August 2004, consistent with this Court's orders, or at any reasonable time prior to the date upon which its expert reports were

due. But they were not, and the Government now should be granted an additional 120 days to analyze, audit, and respond to these new claims.

The prejudice to the Government caused by Southern Nuclear's decision significantly to alter its damages claim is serious and substantial. The Government must be given sufficient time to review, audit, and analyze the substantial amount of new information and to conduct the factual and expert discovery needed to present and prepare the Government's responsive reports. This cannot be done in a month. The requested enlargement through June 29, 2005 is a reasonable request in light of the task now facing the Government.

## CONCLUSION

Based upon the foregoing, the Government respectfully requests that this Court enlarge the deadline for the Government to complete fact and expert discovery, to audit Southern Nuclear's revised damages claim, and to submit its responsive expert reports to June 29, 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEPHEN FINN
HEIDE L. HERRMANN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

February 11, 2005

CERTIFICATE OF FILING

I hereby certify that on this 11th day of February 2005, a copy of the foregoing "DEFENDANT'S MOTION TO ENLARGE DEADLINE TO COMPLETE DISCOVERY AND SUBMIT EXPERT REPORTS," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John C. Ekman