**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SOUTHERN NUCLEAR OPERATING CO., INC., ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 98-614C (Senior Judge Merow)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' AMENDED RESPONSE TO DEFENDANT'S MOTION TO EXTEND PRE-TRIAL SCHEDULE**

Plaintiffs Alabama Power Company, Georgia Power Company, and Southern Nuclear Operating Company, Inc. (collectively, "Southern" or "Plaintiffs") respectfully oppose the Government's motion to continue fact discovery and postpone the submission by the Government of its expert reports under Rule 26 of the Rules of the Court of Federal Claims ("RCFC"). The Government's expert reports are due today, March 1, 2005. Accordingly, Southern respectfully requests that this Court consider the present motion on an expedited basis.

By the time the currently scheduled trial date, August 29, 2005, arrives, Southern will have waited over seven years to have its damages claims heard. Southern has fully complied with the Court's June 21, 2004 pre-trial schedule order and the Government, until now, has not challenged Southern's compliance. The Government has continually sought to delay trial and has been dilatory in pursuing fact discovery in this case. The Government's motion is the latest in a series of attempts to ignore and rewrite the order of discovery set out in the Court's scheduling order after receiving the benefit of Southern's compliance with that schedule. Additional extensions to the schedule in this protracted litigation will only harm Southern and reward the Government for its intentional delay.

## ARGUMENT

This case is almost seven years old. In July 1998, Southern filed suit against the Government to recover damages resulting from the Government's breach of its obligation to begin accepting spent nuclear fuel ("SNF") from Southern's nuclear reactor sites. On June 21, 2004, this Court set a pre-trial schedule culminating in a trial beginning on August 29, 2005. Pre-Trial Schedule Order (June 21, 2004).

The Court's Order of June 21, 2004 established an orderly process for the completion of fact and expert discovery in this matter as follows:

1. September 1, 2004
   Fact Discovery shall commence.

2. December 31, 2004
   Fact discovery shall be completed.

3. January 31, 2005
   Plaintiffs' expert reports submitted.

4. February 29 [March 1], 2005
   Defendant's expert reports submitted.

5. April 1, 2005
   Completion of expert discovery.

6. Remaining schedule in accord with the parties' proposed pre-trial schedule, with trial to commence August 29, 2005.

June 21, 2004, Order, at 2-3. Southern has fully complied with this pre-trial schedule and the Government has not, until this motion, challenged Southern's compliance.

Contrary to the Government's contention, Southern made its initial disclosures in compliance with the Court's orders. Prior to the pre-trial schedule's deadline of September 1, 2004 for fact discovery to begin, Southern provided the Government with cost schedules and

supporting data for past damages through 2003 and that portion of future damages that was budgeted in Southern's records. This August 31, 2004 submittal was not, nor did the Court's order require it to be, a complete damages analysis. Instead, it was a detailed itemization of Southern's past damages—costs incurred that would ultimately be included in Southern's damages claim along with supporting accounting records, including construction contracts, purchase orders, and cancelled checks, as well as future costs to the extent that they were reflected in budgets or other documentation in Southern's business records. In its cover letter accompanying its disclosures, Southern informed the Government that it would present its future damages claims in its expert reports. See Letter from Stan Blanton to Marian Sullivan of August 31, 2004, at 1-2. App. A. The purpose of the August 31 submittal was to allow the Government to understand, verify, and, if necessary, challenge Southern's cost records (even to perform an audit if it desired), so as to obviate the need for any so-called "books and records" evidence at trial. In addition, the early production of "past costs" was intended to provide the Government with the means to initiate a more targeted and efficient fact discovery.

Southern also promptly responded to an initial round of over 800 audit requests, which were received from the Government in late October 2004, and has continued to respond to the Government's audit requests as late as the first week of February 2005. In addition, Southern responded to requests for production from the Government on October 20, 2004, supplementing the responses and voluminous document production provided to the Government during the joint coordinated discovery proceedings that occurred during 2002.

Notwithstanding the Court's June 21, 2004 Order, the Government failed to take a single deposition of a Southern fact witness (even on acceptance rate issues) until December 2004. By letter of December 21, 2004, the Government indicated that it wished to take the depositions of

fourteen fact witnesses that were either employees or former employees of Southern. Southern had previously consented to the Government's request to continue fact witness depositions through the end of February 2005 and, in response to the Government's letter, consented to as many as twelve fact witness depositions. Because the subjects on which many of these witnesses will testify do not concern Southern's damages calculation and supporting materials, many of these depositions could have taken place much earlier. For example, witnesses that have knowledge of the acceptance rate issues, about which Southern produced documents in 2001, could have been deposed beginning in September of 2004. Moreover, on several occasions Southern has accommodated the Government's requests either to reschedule or defer depositions of those witnesses who will testify regarding the accuracy of the past damages data based on Southern's books and records. In short, Southern cooperated in every respect with the completion of fact discovery by the Government, but the Government has failed to pursue fact discovery in accordance with this Court's scheduling order.[1]

Further, Southern's consent to the extension of the discovery schedule, as the Government's motion of December 23, 2004, and Southern's counsel's letter of December 29, 2004, to the Government concerning the extension reflect, was clearly conditioned on the Government's assertions that it would not seek further extensions of time, an extension of the time for its expert reports, or an extension of the trial date. App. C. At the time of these assertions, the Government was well aware that Southern's future damages would be addressed in its expert witness reports.

---

[1] In contrast, the Government has resisted producing any witness for deposition. Even after the Court denied, in part, the Government's motion for protective order as to Southern's deposition notice under RCFC 30(b)(6), the Government has refused to produce those witnesses during the current fact discovery schedule. <u>See</u> Letter from Stan Blanton to John Ekman of February 15, 2005 and Letter from Harold Lester to Stan Blanton of February 25, 2005. App. B.

Southern produced its expert reports on January 31, 2005, again in accordance with the Court's scheduling order. These expert reports summarized and updated the past cost data previously provided and contained projections of the future damages to be incurred because of the Government's breach. The orderly disclosure of detailed cost summaries and damages analyses with coordinated supporting materials does not justify a four-month delay in the Government's production of its responsive expert report. In short, Southern's damages model and overall damages analysis follow the same methodology that the Government previously reviewed and analyzed in great detail in the Indiana Michigan case. We understand that it took the Government only three months—from on or about November 25, 2003, to March 1, 2004—to prepare for trial from the date it received Indiana Michigan's updated damages claim. Here the Government has seven months—from January 31, 2005, to August 29, 2005—to prepare, more than twice the amount of time in Indiana Michigan.

The Complaint in this case was filed in July 1998—over seven years before the currently scheduled trial date of August 29, 2005. As the Government admits, the schedule that it requests in its motion would make it impossible to complete the pre-trial activity required by the Court's June 21, 2004 Order without infringing the trial date. This case has been subject to several stays during which various legal issues concerning this Court's jurisdiction, the resolution of the acceptance rate issues in the lead spent fuel cases, and other issues have been resolved. Southern has already incurred over $150 million in costs as a result of the Government's breach of contract established by this Court's Summary Judgment Order of April 7, 2004. Further delay in the trial of this action, especially when it occurs as a result of the Government's failure to pursue discovery in accordance with this Court's order, would be extremely unfair and should not be allowed.

Finally, it bears remembering that in its May 7, 2004, proposed pre-trial schedule (Docket No. 240), the Government asked the Court to establish a schedule that would have required Southern to submit its expert reports, which would summarize past and future damages, prior to the completion of fact discovery by the Government. Southern disagreed with the Government's approach and proposed an alternative schedule under which fact discovery would be completed before the exchange of expert reports. See Plaintiffs' Proposed Pretrial Schedule, at 3-4 (May 7, 2004) (Docket No. 237). The Court's June 21, 2004 Order rejected the Government's proposal and adopted Southern's request that fact discovery precede the disclosure of expert reports. The Government's current motion to extend the pre-trial schedule is nothing but a backdoor attempt to reorder discovery and resurrect the schedule that the Court previously rejected.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Enlarge Deadline to Complete Discovery and Submit Expert Reports should be denied. Because the Government's expert reports are due tomorrow, March 1, 2005, Southern requests that the Court consider the present motion on an expedited basis. Because the Government's expert reports are due today, March 1, 2005, Southern requests that the Court consider the present motion on an expedited basis.

Respectfully submitted,

Dated: March 1, 2005

s/ M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 226-3417
Facsimile: (205) 226-8798

COUNSEL OF RECORD FOR PLAINTIFFS

**Of Counsel:**

Ed R. Haden
K. C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Telephone: (202) 942-5777
Facsimile: (202) 942-5999

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2005, a copy of the foregoing "PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO EXTEND PRE-TRIAL SCHEDULE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ M. Stanford Blanton