# In the United States Court of Federal Claims

No. 98-614C
(Filed August 19, 2005)

********************************
SOUTHERN NUCLEAR OPERATING *
COMPANY, ALABAMA POWER *
COMPANY, and GEORGIA POWER *
COMPANY, *
Plaintiffs, *
*
v. *
*
THE UNITED STATES, *
Defendant. *
********************************

## ORDER

This matter is before the court on defendant's Motion to Compel Third Party Production of Documents Pursuant to Subpoena *Duces Tecum* and nonparty Holtec International's Cross-Motion for Protective Order and to Quash/Modify the Subpoena.

This is one of the several pending SNF cases in which plaintiffs are seeking damages for breach of contract due to the government's failure to commence performance of acceptance, transportation and disposal of SNF pursuant to the Standard Contract between the parties. Plaintiffs' alleged damages include the cost of building dry storage facilities for SNF the government would have accepted, transported and disposed of in the non-breach world – an Independent Spent Fuel Storage Installation ("ISFSI"). One of the possible defenses is that the plaintiffs' mitigation expenses were not reasonable. Indeed, the government states that it is entitled to discovery to explore whether these dry storage facilities were necessary and incremental to DOE's breach. Particularly, the government points out, there are two

pools at plaintiffs' Vogtle plant – one was reracked[1/] and the other was not to the same capacity. Defendant seeks discovery to ascertain if similar racking of the two pools would have resulted in reduced expense.

Apparently towards that end, on April 1, 2005, the government served a subpoena *duces tecum* on nonparty Holtec International ("Holtec") with a RCFC 30(b)(6) deposition notice for a designated corporate representative to testify concerning the documents subpoened. In subsequent discussions between counsel, the government admirably agreed to narrow the terms of the subpoena and postponed the Rule 30(b)(6) deposition pending further discussions and the accommodation of several scheduling conflicts. In narrowing the subpoena, the government wrote Holtec on May 3, 2005 that the subpoena *duces tecum* was limited to only the Hatch, Vogtle and Farley plants, specifically the capacity of the wet pools at those three plants. Also, Holtec need not produce invoices or correspondence, except to the extent such correspondence contained substantive analysis of pool capacity. Def. Mot., App. pp. 13-14. Verbal discourse between counsel included Holtec's concern about confidentiality. Acknowledging that concern, the government agreed in the May 3, 2005 letter to "work with Holtec to redact information that Holtec may be particularly concerned about revealing, provided it is not related to the issue of pool capacity at Hatch, Vogtle, or Farley." *Id.* at 14.

Pointing out that there was a protective order in place in this case which should alleviate concerns about disclosure, the government also noted that Holtec's confidentiality objections were not well-taken as the 14-day time for filing objections had expired. RCFC 45(c)(2)(B). The government's offer to send an attorney to Holtec's facilities to cull through documents was declined. Finally, the government balked at Holtec's demand for compensation at $386.10 per hour for time spent searching for responsive documents. That amount is Holtec's engineering hourly rate for "legal consulting." Holtec's Opp. & Cross-Mot. App., at HA 72. The government does not contend it has been denied full discovery regarding pool capacity from plaintiffs, nor does the government assert plaintiffs have been less than forthcoming in this regard.

---

[1/] The government defined reracking as "the process by which spent fuel storage racks are installed in or added to the spent fuel pool at a nuclear power generation facility as a means of increasing spent nuclear fuel storage capacity. The term 'reracking' should be interpreted to include any partial or total reracking efforts and any additions of racks to a spent fuel pool." Gov't Mot., App. p. 6.

Holtec served its objections on May 6, 2005, 35 days after service of the subpoena *duces tecum*. Too late, the government states. However, despite the outstanding issue of compensation, Holtec produced a witness for the Rule 30(b)(6) examination. The government asserts Eric Lewis, the designee, was not familiar with the issue of pool capacity studies at the three plants, and was unable to identify Holtec documents concerning such that the government apparently received from plaintiffs in discovery. Specifically, Mr. Lewis was shown a 1992 letter from Southern Nuclear Operating Company requesting that Holtec prepare a budgetary estimate for a possible rerack of the Hatch plant pool. Mr. Lewis had not found that letter in his "cursory review" search (15-20 minutes a "couple of times") for documents in preparation for his deposition, nor was he aware if such a budget estimate was ever prepared. Also, Mr. Lewis was not aware of a 1994 evaluation presentation Holtec did for plaintiffs that included two possible reracking approaches. When questioned about the Vogtle plant, Mr. Lewis testified he believed a marketing plan had been performed to determine the physical capacity of the pool at that plant, but he had not seen the analysis. Holtec files concerning the Hatch plant are stored electronically; files on the other two plants are not.

The government cites to this court's order in *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (February 20, 2004) allowing reasonable discovery from Holtec as to "any contracts actually entered into by Holtec for projects or material of some similarity to those undertaken or received by plaintiff." Requested discovery here is more limited the government points out, to projects actually performed at Hatch, Vogtle and Farley, the three plants at issue in this case.

The government states that it "has attempted to obtain the necessary documents and information from plaintiff [sic], through document requests and depositions. However, it is quite possible that Holtec possesses materials to which plaintiff [sic] has [sic] never had access." Def. Mot., p. 10. That Holtec may indeed have documents that were never communicated to plaintiffs raises a question whether the discovery sought is overly broad.

As for timeliness (or the lack thereof), Holtec points out that counsel were negotiating the narrowing of the original subpoena which was "[s]ubject to RCFC 34 or to mutual agreement." Gov't Mot., App. p. 1. Thus the scope of the subpoena was somewhat elastic and counsel were narrowing its scope. Absent that limitation, Holtec asserts, Holtec would be put in the "untenable position of attempting to respond to an overly broad subpoena which the Defendant had substantially narrowed and

essentially had withdrawn." Holtec's Opp. & Cross Mot., p. 7, citing Holtec's May 6, 2005 letter to the government, Att. 15 to Gov't Mot.

Holtec also points out that its objections to the subpoena were filed within 14 days of receipt of the May 3, 2005 letter from government counsel that narrowed the scope of the subpoena, and the government waived its right to object to Holtec's tardiness by not complaining earlier. Secondly, Holtec says, regardless of whether the objections are considered or not, Holtec does not have any documents responsive to the amended subpoena despite a reasonable search and inquiry. In contrast to the selected portions of Mr. Lewis' deposition cited by the government, Holtec proffers:

> Mr. Lewis interviewed Holtec employees to determine what occurred at each of the projects, and also reviewed documents and Holtec's electronic files, and determined that Holtec simply did not perform the technical, engineering analyses which are the subject of the Defendant's May 3, 2005 letter which amended the scope of the Subpoena.

Holtec Opp. at 3. A summary of Mr. Lewis' deposition testimony as to those efforts was provided. *Id.*, pp. 8-11. His efforts do not comprise the cursory glance characterized by the government nor the exertion that may be needed to provide a complete discovery response. Holtec also points out that the government is essentially asking for involuntary expert testimony through use of the third-party subpoena and corporate designation rules, and Holtec is also presumably concerned about its relationship with the government, particularly in providing equipment, services, systems incident to DOE's statutory and contractual obligation for transportation and disposal of SNF. Timeliness of objections relating to disclosure of an unretained expert's opinion may not be an issue. RCFC 45(c)(3)(B)(ii). In its cross-motion Holtec asks for $1,900.50 representing two hours of search time by Mr. Lewis and three hours of deposition time (at a re-calculated hourly rate of $380.10).

To produce recoverable results, plaintiffs' mitigation efforts must have been "fair and reasonable under the circumstances." *First Heights Bank v. United States*, _ F.3d _, 2005 WL 1962989 (Fed. Cir. Aug. 17, 2005), citing *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1353 (Fed. Cir. 2005). *See generally* 24 Richard A. Lord, *Williston on Contracts* § 64:27 at 191-200 (4th ed. 2004) (injured party is required to take reasonable steps to mitigate its losses from a breach). In *Tennessee*

*Valley Authority v. United States*, 60 Fed. Cl. 665 (2004), another SNF case, the court held that the utility was

> justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance. "Once a party has reason to know that performance by the other party will not be forthcoming, he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." *Restatement (Second) Contract*s § 350 cmt. b. *See also Robinson v. United States*, 305 F.3d 1330, 1334 (Fed. Cir. 2002) ("Reasonable efforts in the form of affirmative steps are required to mitigate damages.") (citing *Restatement (Second) Contracts* § 350).

60 Fed. Cl. at 674 (ellipsis omitted).

Damages are not recoverable for matters that should have been foreseen and avoided by reasonable effort without undue risk, expense, or humiliation. *See Restatement (Second) of Contracts* § 350, cmt. b (1981) ("'As a general rule, a party cannot recover damages for loss that he could have avoided by *reasonable efforts.*'") (cited in *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002)(emphasis in original)).

In *Chain Belt Co. v. United States*, 127 Ct. Cl. 38, 115 F. Supp. 701 (1953), prior to, but in anticipation of the government's impending partial breach, the nonbreaching party arranged for substitute performance, a response the court endorsed as not only appropriate, but obligatory, judging mitigation expenditures by the "reasonableness" standard.

> [P]laintiff was under an obligation to avoid by a reasonable effort any damages which it should have foreseen and, having done so, it may recover as damages the expense incurred in such reasonable effort to avoid harm . . . . It makes no difference whether the breach has already occurred, or where . . . it is merely impending under circumstances such that it was not reasonable for plaintiff to expect defendant to prevent the harm.

127 Ct. Cl. 57-58; 115 F. Supp. 714.

Furthermore, mitigation does not require clairvoyance. Reasonable expenses are recoverable regardless of whether the economics were realized. *See* 3 Dan B.

Dobbs, *Law of Remedies* § 12.6(1)(6), at 127 (2d ed. 1993) ("[T]he plaintiff's damages are adjusted upwards to reflect all the reasonable costs he incurs in attempting to avoid losses, whether or not he was successful in doing so."); *Restatement (Second) Contracts* § 347, cmt. c (costs incurred in reasonable efforts to avoid loss are recoverable "whether successful or not"); *Cienega Gardens v. United States*, 38 Fed. Cl. 64, 79 (1997) ("[w]hether or not an attempt to mitigate damages is successful, the non-breaching party may recover for injury incurred during such mitigation as long as the attempt was reasonable"), *rev'd on other grounds*, 194 F.3d 1231 (Fed. Cir. 1998).

Pursuant to RCFC 26(c), one seeking to shield itself from discovery bears the burden of demonstrating "good cause" for a protective order. "'Good cause' requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Sparton Corp. v. United States*, 44 Fed. Cl. 557, 561 (1993). *See also Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1209-10 (Fed. Cir. 1987) (explaining that discovery limits including protection from undue burden apply to non-parties). Specifically, the court may quash or modify a subpoena which "subjects a person to undue burden." RCFC 45(c)(3)(A)(iv). Holtec has made an undue burden showing.

> Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties. Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.

*United States v. Columbia Broad. System, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) (footnote omitted). *See also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[The nonparties] have no dog in [the] fight. Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

The government is entitled to discovery directed to whether plaintiffs' mitigation expenses were reasonable. However, the government gives no basis for discovery of matters not communicated to plaintiffs. Absent such communication it

is unlikely that the documents would have relevance on the issue of reasonable cost recovery by plaintiffs. Expert testimony by Holtec for defendant, which could involve matters not communicated to plaintiffs, would require financial arrangements not here addressed. Documents sought in the government's May 3, 2005 letter are those related to the **capacity** of the spent nuclear fuel pool, not simply engineering analyses Holtec states it does not have. Spatial analyses which Mr. Lewis testified could be done by other than an engineer presumably directly "relates" to the capacity of the pools, understanding that physical space in the pool is not the end of the inquiry – other technical analysis is required.

Accordingly, the court grants in part and denies in part these pending motions. Discovery is limited to documents as defined in the government's subpoena as modified on May 3, 2005, that relate to the capacity of the pools at the Hatch, Vogtle and/or Farley nuclear plants, and were communicated to plaintiffs, or, to Holtec's knowledge, plaintiffs' agents, representatives or contractors. Presumably, administrative or clerical personnel could locate, and if necessary copy relevant documentation. The requirement for an engineer is not evident. As Holtec is not a party, it should be paid for such individual's time at the rate that individual would or could be charging to a client, assuming such time is customarily billed to a client. The court notes a charge of $75.00 an hour for support staff on Holtec's legal consulting fee schedule, but questions whether Holtec's document search effort is equivalent to "consulting," or whether a lesser hourly rate would reflect Holtec's actual cost including overhead. The government and Holtec must consult and agree to a reasonable rate for clerical or administrative staff work and for Mr. Lewis' time at an appropriate "administrative" search rate and as a corporate official for testimony. If agreement cannot be reached, the government and/or Holtec shall file motions with supporting affidavits as to the rates discussed, the reason(s) for disagreement and the rationale for the rate(s) asserted. Upon completion of the foregoing additional search, the government may file a motion for another RCFC 30(b)(6) deposition of Holtec, if required.

**Accordingly,** IT IS HEREBY ORDERED that

(1) The government's Motion to Compel Third Party Production of Documents Pursuant to Subpoena *Duces Tecum* is **granted in part and denied in part** as set forth hereinabove;

(2) Holtec's Cross-Motion for Protective Order and to Quash/Modify the Subpoena is **granted in part and denied in part** as set forth hereinabove;

(3) The defendant shall promptly furnish Holtec with copies or a descriptive list, of all Holtec documents it has obtained concerning the Hatch, Vogtle, and Farley plants to aid in the document search and to obviate the need for Holtec to produce them to the extent Holtec's file copies comprise the exact same documents;

(4) Upon the assumption that documents in the Nuclear Regulatory Commission files are available to defendant, Holtec need not produce its copy of such documents, *e.g.*, license proposals.

s/ James F. Merow
James F. Merow
Senior Judge