IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR PRE-TRIAL CONFERENCE

Defendant, the United States, respectfully files this response to the motion for pre-trial conference that the plaintiffs, Alabama Power Company, Georgia Power Company, and Southern Nuclear Operating Company (collectively, the "plaintiffs"), filed on August 25, 2005.

In short, we do not object to the scheduling of an additional pre-trial conference to address the issues identified in the plaintiffs' motion. In fact, as discussed below, there are several other administrative issues that could be resolved in such a conference. However, we must strenuously oppose the plaintiffs' late request for a change of venue for their case-in-chief from Washington, D.C., to Birmingham, Alabama.

DISCUSSION

I. THE GOVERNMENT OPPOSES PLAINTIFFS' UNTIMELY REQUEST TO PRESENT THEIR CASE-IN-CHIEF IN BIRMINGHAM

In connection with their request for a pretrial conference, the plaintiffs request that this Court and the Government travel to Birmingham for the presentation of the plaintiffs' case-in-chief. Normally, with sufficient notice that would permit us to budget for the costs associated with a trial outside of Washington, D.C., we do not object to a reasonable request to conduct an

out-of-town trial. However, the timing of the plaintiffs' request here places us in a horrific position. As the Court is aware, there are 60 pending cases in which plaintiffs, most of which are the owners of nuclear reactors, are seeking damages for alleged breaches of the Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste. Further, a significant portion of the Commercial Litigation Branch's overall appropriation for litigation support has been designated to support the Government's defenses to these spent nuclear fuel ("SNF") cases. However, with the number of SNF cases that are currently active, either through discovery or extensive pre-trial activities, that budget is severely strained. This Court has already scheduled seven SNF trials to take place between now and next September, with additional trials already scheduled to occur in late 2006 and early 2007, and additional trials apparently are set to be scheduled in the near future. Because of the number of active cases in intensive discovery, the number of active cases scheduled for trial, and the significant costs for necessary litigation support associated with both discovery and trial activities, we have been forced to make sometimes difficult decisions regarding the priority, necessity, and timing of litigation support activities, with some useful support activities having to be deferred or abandoned because of the needs of other SNF cases.

Here, we have made these sometimes difficult decisions regarding which litigation support activities to fund by reference to the anticipated future events and upcoming case activities in each of the SNF cases, compared with the amount of funding that remains for litigation support activities. With regard to this case, this Court scheduled the trial in this matter by order dated April 5, 2005, to be held in Courtroom No. 5 of the National Courts Building in Washington, D.C., following a request for one of the electronic courtrooms at the Court. Prior to

the plaintiffs' August 25, 2005 motion, which pre-dates trial by less than 60 days, the plaintiffs have not requested or even intimated that they would request that the trial be conducted in Birmingham. In connection with the discovery proceedings that resulted in that April 5, 2005 order, the plaintiffs made no mention of their desire to try any portion of this case in Birmingham. Moreover, until the filing of the August 25, 2005 motion, the Government was unaware that such a request would be made.[1]

The Government has made numerous funding decisions regarding the manner in which to allocate its scarce litigation support resources based upon the Court's order that trial would be conducted in Courtroom No. 5 at the National Courts Building. Based upon the amount of total funding that we have been provided for litigation support, we obligated other monies to activities that, had we known would have to incur additional expenses to try this case in Birmingham, we would have foregone. The timing of plaintiffs' request compounds the budgeting issues created by the presentation of plaintiffs' case-in-chief in Birmingham.

In support of their motion, the plaintiffs argue that an Alabama trial "may be more efficient, less time-consuming and less costly." Motion at 3. However, to conduct trial in

---

[1] Plaintiffs' motion represents that the plaintiffs "attempted to contact Counsel for the Government . . . in order to raise the issue regarding the place of trial, but has not been able to reach him." Motion at 3. On August 25, 2005, counsel of record for the Government, John Ekman, was traveling back to Washington from San Francisco, California, following a nine-day business trip. Attorneys for the plaintiffs were well aware of Mr. Ekman's travel schedule and communicated several times with Mr. Ekman over the course of his trip. Indeed, plaintiffs' counsel has Mr. Ekman's cell phone number. In any event, Mr. Ekman checked his voice mail before boarding his return flight and upon arriving in Washington at 6:30 p.m. As of that time, Mr. Ekman received no message from plaintiffs' counsel concerning the instant motion. Instead, Mr. Ekman received his first message concerning plaintiffs' motion the morning of August 26, 2005. At best, plaintiffs' message was left after the close of business in Washington on August 25, immediately prior to filing the instant motion. Any implication that plaintiffs made multiple attempts to contact Mr. Ekman and were unable to reach him simply is incorrect.

Alabama, the Government must incur significant costs and undertake time-consuming actions that otherwise would be unnecessary. In addition to as many as four attorneys that would travel to Birmingham for plaintiffs' case-in-chief, the Government also must bring a paralegal and four document and technical contractors to perform document and technology management and trial support. Under the Court's current schedule, all nine of these individuals would likely have to travel to Birmingham by Wednesday, October 11, 2005, to undertake the time-consuming task of preparing the courtroom for trial and setting up off-site facilities for the Government attorneys. These nine individuals will be required to stay in Birmingham through the end of the plaintiffs' case which, assuming it calls all of the company personnel listed upon its witness list and its expert witnesses (and ignoring potential Government employees listed upon plaintiffs' witness list), could last at least through October 26, 2005, and perhaps later. Thereafter, and based upon our prior experience in other SNF trials, it will take our support personnel approximately two days to deconstruct the courtroom equipment and any off-site facility in order to ship materials, documents, and equipment back to Washington. As a result, trial would need to break between two and three business days after the completion of the Birmingham portion of the trial to allow for the shipping of materials back to Washington and for the set-up of Courtroom No. 5 for the remainder of the trial. This effort comes at significant expense to the Government and wasted time for the parties.

Moreover, the Government's burden is unique. In this case, attorneys in the local office of Arnold & Porter are identified as "of counsel," and Balch & Bingham itself has a Washington office. As a result, plaintiffs should have ready access to the support services, materials, and equipment that are needed for any trial. In contrast, the Government will be required to obtain

after-hours office space, most likely at a hotel and at additional cost to the Government, and will need to ship to Birmingham all equipment, including computers, printers, and copiers, to support our trial activities. Moreover, we will be required to ship all of our identified exhibits and the unexpectedly large number of exhibits identified by the plaintiffs to Birmingham and then back to Washington – a round-trip that previously was unnecessary. In contrast, the plaintiffs will be required to ship most, if not all, of their exhibits to Washington, whether or not any portion of the trial takes place in Birmingham. Even mundane items such as bookcases and tables must be obtained by the Government, likely at additional cost. Once again, these are costs that neither party would need to incur for a Washington-based trial, given the presence of local counsel in this case. Additionally, plaintiffs have provided no explanation for the inexplicable contention that their case-in-chief would be "less time consuming" if it took place in Birmingham. The Government does not see how the evidence that the plaintiffs will seek to elicit – and the time needed for the presentation of that evidence – will vary based upon location.

Further, the presentation of expert testimony in Birmingham is inefficient, and the Government strongly opposes the production of any Government witnesses outside of Washington. Two of plaintiffs' expert witnesses live and work in Washington. The plaintiffs' third expert works in Chicago, Illinois – a routine, direct flight to Washington. Likewise, many of the Department of Energy witnesses listed upon plaintiffs' witness list live and work in Washington. Scheduling the testimony of any of these witnesses in Birmingham contradicts the position that such a venue will save costs.

Finally, plaintiffs' witness list identifies only seven company witnesses that reside in Birmingham. At most – and generously assuming that each witness will be called and will stay

three nights in Washington – the plaintiffs will be required to pay for the travel of the seven employees and hotel costs for no more than 21 nights. In contrast, and ignoring the travel of Government attorneys, a trial in Birmingham requires the Government to pay for travel for five additional support personnel who will be required to stay in Birmingham from October 11, 2005 through the close of plaintiffs' case-in-chief (a period likely not less than 15 nights), as well as through the time period needed completely to pack the Government's documents and equipment for shipment back to Washington (a period of at least an additional two nights). These costs are exclusive of the other costs discussed above and, upon their own, represent a significant expense that far exceeds the cost of bringing to Washington the seven company witnesses identified upon plaintiffs' witness list.[2]

The cost and logistic implications of plaintiffs' request are significant and burdensome, and the effect of a change of venue will have far greater financial implications upon the Government than upon the plaintiffs if they are forced to bring all seven company witnesses to Washington. With proper notice, we could have budgeted for this significant expense. The plaintiffs' election to wait until now to make this request further compounds the difficulties that we would face in moving a significant operation from Washington to Birmingham. We respectfully request that the Court deny the plaintiffs' late motion and maintain the trial here in Washington at the National Courts Building, as previously ordered.

---

[2] While unknown at this time, we note that there may be additional logistical issues presented by trial in Birmingham and the need for significant hotel accommodations during the plaintiffs' case-in-chief based upon the displacement of residents of Louisiana, Mississippi, and Alabama as a result of Hurricane Katrina.

## II. REMAINING ISSUES ARE APPROPRIATELY DISCUSSED AT THE PRE-TRIAL CONFERENCE

At any pre-trial conference, the Government will be prepared to discuss the use of transcripts from the Yankee litigation and the Government's "response" to the audit of plaintiffs' damages claim. Additionally, and among other administrative issues that might arise, we would like to discuss the timing of the exchange of demonstratives, the timing for disclosure of the order of witnesses, and the timing of any deposition designations. With respect to the timing of the exchange of demonstratives and the order of witnesses, we propose that demonstratives be provided to the opposing party 48 hours prior to their use at trial and that the order of witnesses be provided seven days in advance of testimony. These deadlines have been used in other SNF trials and have provided parties with sufficient time and notice to properly prepare any response or cross-examination. Finally, we will request that plaintiffs' deposition designations, if any, be provided at least 10 days prior to the start of trial and that the Government's responsive designations be provided after trial concludes. To prepare our defense, the Government must have knowledge of all the evidence that plaintiffs will present in connection with their case-in-chief, including all deposition designations. Moreover, we have found it difficult if not impossible to respond to the often lengthy designations identified by plaintiffs in the SNF cases while simultaneously preparing our defense.

CONCLUSION

Based upon the foregoing, the Government does not oppose the scheduling of a pre-trial conference. However, in light of the untimely request to move the location of this trial, we must oppose the scheduling of any portion of the plaintiffs' case-in-chief in Birmingham, Alabama.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ John C. Ekman
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-0897
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEPHEN FINN
HEIDE L. HERRMANN
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

September 6, 2005

CERTIFICATE OF FILING

I hereby certify that on this 6th day of September 2005, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PRE-TRIAL CONFERENCE," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John C. Ekman