No. 98-614C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN NUCLEAR OPERATION, COMPANY,
ALABAMA POWER COMPANY, and
GEORGIA POWER COMPANY,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO NOVEMBER 1, 2006 ORDER

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

STEPHEN FINN
JOSHUA E. GARDNER
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530

December 5, 2006

# TABLE OF CONTENTS


BACKGROUND . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . 7

I. THE DOCTRINE OF WAIVER HAS NO APPLICATION HERE BECAUSE THE GOVERNMENT'S VOLUNTARY RELINQUISHMENT OF A KNOWN RIGHT CANNOT BE COMPELLED BY WRIT OF MANDAMUS . . . . . . . . . . 7

A. The Government Did Not Abandon Voluntarily The Right To Assert The "Unavoidable Delays" Defense Or To Challenge The Validity Of The Mandamus Order In *Northern States* . . . . . . . . . . 7

B. The "Unavoidable Delays" Defense Was Not An Available "Right" That The Government Could Waive . . . . . . . . . . 9

C. The Government Did Not Possess Actual Or Constructive Knowledge At The Time Of Trial That The "Unavoidable Delays" Clause Was An Available Defense . . . . . . . . . . 11

II. EVEN IF WAIVER WERE AN APPLICABLE CONCEPT IN THIS INSTANCE, THE GOVERNMENT'S COURSE OF CONDUCT IN THIS LITIGATION DOES NOT GIVE RISE TO A WAIVER . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 16

## TABLE OF AUTHORITIES

### CASES

A.M. v. Butler,
306 F.3d 787 (7th Cir. 2004) . . . . . 8, 9

Bechtel v. Liberty National Bank,
534 F.2d 1335 (9th Cir. 1976) . . . . . 13

B-E-C-K Constructors v. United States,
215 Ct. Cl. 793 (1978) . . . . . 1, 15

Bennett Construct. Co. v. United States,
178 Ct. Cl. 61 (1967) . . . . . 1, 15

Buder v. Fiske,
174 F.2d 260 (8th Cir. 1949) . . . . . 13, 16

Cherokee Nation v. United States,
355 F.2d 1319 (Fed. Cir. 2004) . . . . . 5

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004) . . . . . 5

Cinergy Corp. v. United States,
55 Fed. Cl. 489 (2003) . . . . . 14

City of Mobile v. Marx & Co.,
75 F.2d 569 (5th Cir. 1935) . . . . . 8

Consol. Coal Co. v. Office of Workers Compensation Programs,
54 F.3d 434 (7th Cir. 1995) . . . . . 14

Cordis Corp. v. Medtronic Ave., Inc.,
No. Civ. 97-550SLR, 2005 WL 283525 (D. Del. Jan. 27, 2005) . . . . . 11

Ex Parte Cutting,
94 U.S. 14 (1876) . . . . . 8

Exxon Chem. Patents, Inc. v. Lubrizol Corp.,
137 F.3d 1475 (Fed. Cir. 1998) . . . . . 11

Hamilton v. Watkins,

436 F.2d 1323 (5th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Illinois RSA No. 3, Inc. v. County of Peoria,
963 F. Supp. 732 (C.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

In re Shady Grove Tech Ctr. Assoc. Ltd. P'Ship,
227 B.R. 422 (Bankr. D. Md. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Spats Rest. & Saloon,
64 B.R. 442 (Bankr. D. Nev. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Lincoln Nat'l Life Ins. Co., v. United States,
217 Ct. Cl. 515, 582 F.2d 579 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Matter of Garfinkle,
672 F.2d 1340 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nebraska Public Power District v. United States,
No. 01-116C, 2006 WL 3093972 (Fed. Cl. Oct. 31, 2006) . . . . . . . . . . . . . . . . . 6, 7, 13

Northern States Power Co. v. Department of Energy,
128 F.3d 754 (D.C. Cir. 1997), cert. denied,
525 U.S. 1015 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12

Northern States Power Co. v. United States Dep't of Energy,
No. 97-1064, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581
(D.C. Cir. May 5, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Northern States Power Co. v. United States,
224 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Philips v. Cameron Tool Corp.,
950 F.2d 488 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Reliance Ins. Co. v. United States,
20 Cl. Ct. 715 (1990), aff'd,
931 F.2s 863 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rush v. United States,
33 Ct. Cl. 417 (1898) . . . . . . . . . . 8

Youngdale & Sons Contr. Co. v. United States,
22 Cl. Ct. 345 (1991) . . . . . . . . . . 7

United States v. City of West Palm Beach,
94 F.2d 320 (5th Cir. 1938) . . . . . . . . . . 8

United States v. Washington,
12 F.3d 1128 (D.C. Cir. 1994) . . . . . . . . . . 11

## STATUTES AND REGULATIONS

42 U.S.C. § 10139 . . . . . . . . . . 2, 5

42 U.S.C. § 10222(a)(5) . . . . . . . . . . 5

10 C.F.R. § 961.11, Art. IX(A) . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTHERN NUCLEAR OPERATING, COMPANY, ALABAMA POWER COMPANY, and GEORGIA POWER COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 98-614C (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO NOVEMBER 1, 2006 ORDER

Defendant, the United States, respectfully responds to the Court's November 1, 2006 order directing the parties to file supplemental briefing regarding "the issue of whether, at this stage of the proceedings, the issue of the validity of the D.C. Circuit's writ of mandamus [in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998)] may be raised for consideration by the Court" or, instead, whether such issues have been waived. As set forth in greater detail below, the Government did not, and could not, waive the right to assert these defenses as a matter of law in the above-captioned case, and the cases cited in the Court's order, B-E-C-K Constructors v. United States, 215 Ct. Cl. 793 (1978), and Bennett Constr. Co. v. United States, 178 Ct. Cl. 61 (1967), are not applicable here.

BACKGROUND

The dispute about which the Court has requested supplemental briefing relates to the "Unavoidable Delays" clause in the Standard Contract. The clause precludes liability for a delay in the scheduled delivery, acceptance, or transport of spent nuclear fuel ("SNF") arising out of

causes beyond the "reasonable control of . . . [the Department of Energy ('DOE')]," including "acts of Government in either its sovereign or contractual capacity:"

> Unavoidable Delays by Purchaser or DOE
>
> Neither the Government nor Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE – such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather – cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

10 C.F.R. § 961.11, Art. IX(A) (emphasis added).

As this Court is aware, this litigation has a significant history before the United States Court of Appeals for the District of Columbia Circuit pursuant to the "Judicial Review" provision of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10139 (1994). Part of that history involves the decision of the United States Court of Appeals for the District of Columbia Circuit in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). In that case, the D. C. Circuit held "that section 302(a)(5)(B) [of the NWPA] create[d] an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." Id. at 1274.

Subsequently, a number of other nuclear utilities and state agencies filed petitions for writs of mandamus in the D.C. Circuit that, among other things, sought to compel DOE to begin accepting SNF by January 31, 1998. While those petitions were pending, and in response to comments received by contract holders regarding the anticipated delay in building a permanent

geological repository or interim storage facility, DOE determined that, pursuant to Article IX of the Standard Contract, DOE was "not obligated to provide a financial remedy for the delay" because the delay was unavoidable and informed the nuclear utilities of that determination by letter. See Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 757 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998). The petitioners informed the D.C. Circuit of this determination by DOE, and, in its decision on the petitions, Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the court considered the letter and granted the petitions for mandamus in part by ordering DOE to

> proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of SNF by January 31, 1998. More specifically, we preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.
>
> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity."

Northern States, 128 F.3d at 760. Further, the D.C. Circuit concluded that the "Unavoidable Delays" clause of the Standard Contract, "insofar as it applied to DOE's failure to perform by 1998, is inconsistent with DOE's statutory obligation to assume an unconditional duty." Id. Consequently, the D.C. Circuit issued a writ of mandamus "precluding DOE from excusing its own delay [in the acceptance of contract holders' SNF] on the grounds that it has not yet prepared a permanent repository or interim storage facility." Id. at 761. In addition, the D.C.

Circuit stated that it "retain[ed] jurisdiction over this case pending compliance with the mandate issued herewith." Id.

DOE filed a petition for rehearing, contending that the D.C. Circuit lacked jurisdiction to determine the applicability of the "Unavoidable Delays" provision of the Standard Contract. DOE explained in the rehearing petition that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims. The D.C. Circuit denied DOE's motion for rehearing, concluding that it was not adjudicating a contract dispute but that, instead, it was merely enforcing a statutory duty:

> [t]he DOE . . . suggest[s] that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

Northern States Power Co. v. United States Dep't of Energy, No. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581 (D.C. Cir. May 5, 1998).

The Solicitor General has asserted on more than one occasion his belief that the D.C. Circuit lacked jurisdiction to decide contractual issues relating to the terms of the Standard Contract. Specifically, although the D.C. Circuit believed that it was merely enforcing the statutory requirement in Title III of the NWPA that DOE begin SNF acceptance by January 31, 1998, Section 302 of Title III of the NWPA does not mandate that DOE begin SNF acceptance on January 31, 1998. Instead, it provides that DOE include language in contracts which provides

that, in return for the payment of fees, DOE, "beginning not later than January 31, 1998, will dispose" of SNF. 42 U.S.C. § 10222(a)(5). Further, the statute did not express any limitations upon DOE's ability to implement provisions that would identify a remedy, or preclude a monetary remedy, if that statutory date was not met. In 1983, in accordance with the statute, DOE included a provision in the Standard Contract responsive to that statutory language. To the extent that interested parties believed that DOE had not complied with the statutory requirement, they had 180 days from the final action of the Secretary to challenge it. 42 U.S.C. § 10139(c). That time passed without challenge by any interested parties. Accordingly, the D.C. Circuit's action in 1987 exceeded its jurisdiction, as the Government had not waived its sovereign immunity to allow for the issuance of the writ.

Nevertheless, the writ of mandamus that the D.C. Circuit issued has not been lifted by that court. Based upon the D.C. Circuit's writ of mandamus and our continuing obligation to comply with that court's orders, we have been precluded from arguing that the "Unavoidable Delays" clause excuses DOE's delays arising from the absence of a facility at which DOE may dispose of the plaintiffs' SNF, subject to the risk of the imposition of contempt sanctions by the D.C. Circuit. However, the United States Court of Appeals for the Federal Circuit has held that, where a sister court has improperly asserted jurisdiction over a matter involving the Federal Government and where that assertion of jurisdiction directly implicates issues of sovereign immunity, the sister court's ruling is void. Christopher Village, L.P. v. United States, 360 F.3d 1319, 1329-30, 1333 (Fed. Cir. 2004).

Were it not for the D.C. Circuit's writ of mandamus, which the Government contends, with all due respect, exceeded the D.C. Circuit's jurisdiction, the Government would be entitled

to argue that the delays which DOE has experienced in performing its obligations under the Standard Contract arise out of causes beyond DOE's control and thus fall squarely within the events contemplated as unavoidable delays by Article IX.A. Beth Tomasoni, the former contracting officer for the Standard Contract, informed utilities by letter dated June 3, 1997, of her preliminary determination that DOE's delay in SNF acceptance was excusable under the unavoidable delays provision because of technical problems, regulatory delays, roadblocks to implementation of a monitored retrievable storage system, funding restrictions, litigation delays, and consultation requirements with, among other entities, state and local governments. See Plaintiffs' Exhibit No. 88. Christopher Kouts, a senior official in DOE's Office of Civilian Radioactive Waste Management, offered similar testimony in this case.[1]

Recently, this Court in Nebraska Public Power District v. United States, No. 01-116C, 2006 WL 3093972 (Fed. Cl. Oct. 31, 2006), held that the D.C. Circuit's writ of mandamus is void ab initio because the United States had not waived sovereign immunity with regard to the

---

[1] In Maine Yankee Atomic Power Co. v United States, 225 F.3d 1336, 1341 (Fed. Cir. 2000), the Federal Circuit examined whether the Government could rely upon Article IX.B of the Standard Contract, the avoidable delays clause, to avoid liability for failing to begin acceptance of SNF in 1998. The Federal Circuit concluded that the avoidable delays clause only applied to delays that occurred after performance began, and thus could not excuse DOE from liability for delay in the commencement of SNF acceptance. Id. The same day, the Federal Circuit issued its decision in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), in which we had advanced precisely the same avoidable delay position as in Maine Yankee. In rejecting the Government's argument, the Federal Circuit expressly referred to its holding in Maine Yankee concerning the avoidable delays clause, but inadvertently used the words "unavoidable delays clause" rather than the avoidable delays clause when referencing the issue that Maine Yankee had decided. Id. at 1367 (emphasis added). Consequently, neither the decision in Maine Yankee nor in Northern States addresses the argument that, pursuant to Article IX.A of the Standard Contract, the Government is excused from liability for delays in meeting its contractual obligations because of events beyond the control of DOE.

"Unavoidable Delays" issue in that court: "in issuing the subject mandamus, the D.C. Circuit operated in excess of its jurisdiction and, specifically, without an appropriate waiver of sovereign immunity." Id. The Court in Nebraska has ordered briefing upon the substantive merits of the Government's "Unavoidable Delays" defense, and the plaintiff in that case has filed a motion to certify the Court's October 31, 2006 decision for interlocutory appeal. By order dated November 1, 2006, this Court ordered supplemental briefing regarding whether the United States has waived the "Unavoidable Delays" defense in this particular case.

## DISCUSSION

### I. THE DOCTRINE OF WAIVER HAS NO APPLICATION HERE BECAUSE THE GOVERNMENT'S VOLUNTARY RELINQUISHMENT OF A KNOWN RIGHT CANNOT BE COMPELLED BY WRIT OF MANDAMUS

It is "a well established rule of law that '[w]aivers of rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" Reliance Ins. Co. v. United States, 20 Cl. Ct. 715, 723 (1990), aff'd, 931 F.2d 863 (Fed. Cir. 1991). Accordingly, waivers require (1) an intention to relinquish a right, privilege, advantage or benefit; (2) the existence at the time of the waiver of such right, privilege, advantage, or benefit at issue; and (3) actual or constructive knowledge thereof. See Youngdale & Sons Contr. Co. v. United States, 22 Cl. Ct. 345, 346 (1991) (citing Matter of Garfinkle, 672 F.2d 1340, 1347 (11th Cir. 1982)). Here, none of these three requirements is satisfied.

#### A. The Government Did Not Abandon Voluntarily The Right To Assert The "Unavoidable Delays" Defense Or To Challenge The Validity Of The Mandamus Order In *Northern States*

Central to the doctrine of waiver is that a party voluntarily "foregoes the benefits of one course of action in favor of the benefits of another." Illinois RSA No. 3, Inc. v. County of

Peoria, 963 F. Supp. 732, 742 (C.D. Ill. 1997). Although a "party may waive any provision, either of a contract or a statute, intended for his benefit," this rule is "subject to the well-known conditions that the waiver must be a voluntary relinquishment of a known right." Rush v. United States, 33 Ct. Cl. 417 (1898); see Cherokee Nation v. United States, 355 F.2d 945, 950 (Ct. Cl. 1966) ("[w]aiver consists of a *voluntary* and intentional relinquishment of a known right") (italics in original)). Hence, "[t]rue waiver must be based on a free option." Hamilton v. Watkins, 436 F.2d 1323, 1326 (5th Cir. 1970). Accordingly, a waiver must be the "product of a free and deliberate choice" rather than an order to coerce or compel. A.M. v. Butler, 360 F.3d 787, 799 (7th Cir 2004).

Waiver is not applicable in this context because the Government lacked the ability to make a "free and deliberate choice" concerning the availability of the "Unavoidable Delays" as a defense to the claims filed by Southern Nuclear Operating Company, Alabama Power Company, Georgia Power Company, and the other plaintiffs participating in the SNF litigation, since the issuance of the Northern States writ of mandamus in 1997. In contrast to the voluntary nature of the waiver concept, "[t]he office of a mandamus is to compel the performance of a plain and positive duty." Ex parte Cutting, 94 U.S. 14, 20 (1876). In this regard, the effect of the Northern States writ, like all mandamus orders, is "to coerce the performance of single acts of specific and imperative duty," City of Mobile v. Marx & Co., 75 F.2d 569, 575 (5th Cir. 1935), and disobedience of the command constitutes a violation of the writ that puts the respondent in contempt of court. See United States v. City of West Palm Beach, 94 F.2d 320, 321-22 (5th Cir. 1938).

Here, the Government's inability to raise the defense of Unavoidable Delays at trial was not based upon a "free and deliberate choice." Butler, 360 F.3d at 799. To the contrary, the Government did not have the option of pursuing "the benefits of one course of action in favor of the benefits of another." County of Peoria, 963 F. Supp. at 742. Although we believe that the D.C. Circuit lacked jurisdiction to issue its writ of mandamus, the Government, to the extent that it affirmatively asserted the defense of unavoidable delays, risked punishment by the D.C. Circuit for violating the Northern States writ of mandamus. Even now, although Judge Allegra has held the writ to be void, it is unclear what action the D.C. Circuit would or could take in response to an effort by the United States to pursue that defense. Thus, the Government's choice of action in this instance was in no sense voluntary, and it may not operate as a "voluntary" waiver of the Government's right to challenge the validity of the Northern States mandamus order.

B. The "Unavoidable Delays" Defense Was Not An Available "Right" That The Government Could Waive

The writ of mandamus in Northern States was issued in 1997. Since that time, neither the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Federal Circuit, nor any other appellate court has vacated the Northern States writ or otherwise limited its effect. During the trial in this matter, the Department of Justice and counsel for plaintiffs indicated their belief that the writ precluded the Government from invoking the "Unavoidable Delays" provision of the Standard Contract. For example, when the Government called Mr. Christopher Kouts as a witness to testify at trial concerning the causes of DOE's delay in accepting spent nuclear fuel ("SNF"), Mr. Blanton, counsel for plaintiffs, objected based upon the D.C. Circuit's writ of mandamus:

> I'm sorry to interrupt. But we object. Liability has been found in this case. The Court's issued an order. The D.C. Circuit has ordered the Justice Department not to raise excusable delay as a defense. I can't think of any other reason this testimony would be relevant other than that, and we object to it.

Trial Transcript, October 28, 2005 ("Transcript"), at 1795:9-15. In response to Mr. Blanton's objection, counsel for the Government stated that, "[a]s we noted in our pretrial brief, Your Honor, we are seeking to preserve the record by having Mr. Kouts present this evidence. What arguments we may make in the future is still a matter to be decided, but while Mr. Kouts is here, we would ask he be allowed to testify about this so that the information is in the record." Transcript, at 1795:16-22.

In ruling upon Mr. Blanton's objection, the Court permitted Mr. Kouts's testimony, although, like the parties, the Court recognized that the Government was not entitled to assert the "Unavoidable Delays" clause as a defense or otherwise to limit its liability, given the existing state of law:

> Well, I can see some possible relevance, not necessarily on the liability aspect of this, but just to complete the historical part of the matter, may not be directly related to the Southern case, but I think it gives a full picture of the program involved. And to that extent, I'll overrule the objection. [The Government] can present the evidence, but of course, [plaintiffs] can object to any findings . . . that are proposed based on it in the nature of any limitation of liability or something like that that is attempted.

See Transcript, at 1795:23-25; 1796:1-9.

Simply put, at the time of trial, the Government, the plaintiffs, and, indeed, the Court recognized that, in light of the D.C. Circuit's writ of mandamus in Northern States, the Government was not free to raise a defense to its delay in performing the Standard Contract based upon the "Unavoidable Delays" clause. The Government here cannot be deemed to waive

a right that the parties agree could come into existence only after the close of trial because of a change of law – that is, a lifting of the writ or some type of invalidation of the writ. Indeed, in analogous situations involving an intervening change in law, courts recognize that a party cannot waive a claim or defense that the party reasonably believed would be futile because of the preexisting state of law. See, e.g., United States v. Washington, 12 F.3d 1128, 1139 (D.C. Cir. 1994) ("[W]e may consider issues not raised at trial where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared futile."); Philips v. Cameron Tool Corp., 950 F.2d 488, 491 (7th Cir. 1991) (holding that "parties need not state numerous objections at trial to settled law in hopes that something may change while an appeal is pending," as a failure to object to an instruction "waives the objection if it could have led to a correction of error"); Cordis Corp. v. Medtronic Ave., Inc., No. Civ. 97-550SLR, 2005 WL 283525, at *1 (D. Del. Jan. 27, 2005) (no waiver where it is unrealistic to have expected a party to present certain arguments if such arguments were futile) (citing Exxon Chem. Patents, Inc. v. Lubrizol Corp., 137 F.3d 1475, 1479 (Fed. Cir. 1998)).

### C. The Government Did Not Possess Actual Or Constructive Knowledge At The Time Of Trial That The Unavoidable Delays Clause Was An Available Defense

For similar reasons, another criterion for waiver, actual or constructive knowledge of the subject right's existence, is not met in this case. Where a party adopts, at the time of trial, a "reasonable legal position under the existing legal climate opinion," that party cannot be "charged with knowledge of what its rights were." Lincoln Nat'l Life Ins. Co., v. United States, 217 Ct. Cl. 515, 521, 582 F.2d 579, 582 (1978). Indeed, as the Court noted in Lincoln, to find a

waiver in such a case would, in effect, cause future litigants to "avoid adopting what seems to be a reasonable position at trial for fear of being subsequently charged with a wavier of their rights." Id. As stated above, during trial, neither the Government, plaintiffs, nor the Court believed that the Government possessed the right to assert a defense to liability pursuant to the "Unavoidable Delays" clause of the Standard Contract, based upon the D.C. Circuit's pending writ of mandamus. Further, there is no evidence in the record to indicate that the Government possessed actual or constructive notice that the Government indeed possessed such a right. In this case, the Government operated under the reasonable assumption that the Northern States writ of mandamus precluded the Government "from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim" or from "implemen[ting] any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity,'" subject to the risk of contempt sanctions if it argued to the contrary. Defendant's Post-Trial Brief, at 2 n.1 (citing Northern States, 128 F.3d at 760). Hence, because the Government lacked knowledge at the time of trial of any right it might have had to assert the "Unavoidable Delays" as a defense, the Government cannot be deemed to have waived the right to invoke Article IX.A of the Standard Contract or to challenge the validity of the Northern States mandamus writ.

## II. EVEN IF WAIVER WERE AN APPLICABLE CONCEPT IN THIS INSTANCE, THE GOVERNMENT'S COURSE OF CONDUCT IN THIS LITIGATION DOES NOT GIVE RAISE TO A WAIVER

Even if the Government could, in fact, waive a right that it was compelled not to assert by writ of mandamus – which, as a matter of law, we dispute – the Government's conduct in these

proceedings does not otherwise demonstrate an intent to waive the right to challenge the validity of the mandamus order or otherwise to assert the applicability of the "Unavoidable Delays" defense in light of the Court's decision in Nebraska Public Power.

A waiver, where otherwise applicable, may be either expressed or implied from conduct. See In re Spats Rest.& Saloon, 64 B.R. 442, 446 (Bankr. D. Nev. 1986). However, if proof of waiver rests upon a party's acts, "the conduct must be so manifestly consistent with and indicative of an intent to relinquish voluntarily a particular right that no other reasonable explanation of [one's] conduct is possible." Bechtel v. Liberty National Bank, 534 F.2d 1335, 1340 (9th Cir. 1976). Indeed, in Federal courts, "[w]aivers of rights are inherently suspect." In re Shady Grove Tech Ctr. Assoc. Ltd. P'Ship, 227 B.R. 422, 425 (Bankr. D. Md. 1998). Therefore, "doubtful situations will not support waiver," and the burden of proof thus falls upon the party alleging the applicability of the waiver doctrine. Buder v. Fiske, 174 F.2d 260, 268 (8th Cir. 1949).

During the course of this litigation, the Government expressly indicated its intention to preserve the right to argue the "Unavoidable Delays" defense in the event that the Northern States mandamus order were ever lifted. The Government introduced evidence relevant to an "Unavoidable Delays" defense and otherwise consistently asserted that the Government would seek to invoke Article IX.A. of the Standard Contract as a defense if the Northern States writ of mandamus were lifted. For example, in our pre-trial brief, filed on September 28, 2005, we stated that Mr. Kouts and perhaps other witnesses would testify at trial regarding "the reasons for DOE's delay in beginning SNF acceptance and its excusability." Defendant's Memorandum Of Contentions Of Fact And Law, at 14 n.7.

Subsequently, at trial, we called Mr. Kouts to testify as our first witness. Transcript at 1743:1 – 1861:5. Among other relevant topics, Mr. Kouts testified at trial for over a half-day concerning DOE's appropriations history for the SNF program from its inception in 1983 through 2005. Id. at 1793:1. In this regard, Mr. Kouts testified that DOE historically did not receive the appropriations from Congress that the agency requested – a matter outside of DOE's control – and that such funding shortfalls affected DOE's ability to perform in a timely manner pursuant to the Standard Contract. Id. at 1794:1 – 1797:18. In fact, as mentioned previously, Mr. Kouts's testimony caused Mr. Blanton to object on the grounds that the "D.C. Circuit has ordered the Justice Department not to raise excusable delay as a defense." Id. at 1795: 9-15. Such an objection is wholly inconsistent with the notion that the Government meant to waive its rights to raise an unavoidable delays defense. Again, as Mr. Blanton noted in court, this evidence would be directly relevant to any unavoidable delay defense. Id.

In response to Mr. Blanton's evidentiary objection, which the Court denied, the Government's trial counsel expressly reserved on the record that, notwithstanding the Northern States mandamus order, the Government sought to "preserve the record," as the Government's ability to raise the unavoidable delays defense "is still a matter to be decided." Id. at 1795:16-22. Because the Government asserted this defense during the pre-trial, trial, and post-trial phases of this litigation, the Government's conduct does not demonstrate a voluntary waiver of the right to invoke the Unavoidable Delays clause of the Standard Contract. See, e.g., Consol. Coal Co. v Office of Workers Compensation Programs, 54 F.3d 434, 437 (7th Cir. 1995) (no waiver when party consistently brought issue to Court's attention during trial); cf. Cinergy Corp. v. United

States, 55 Fed. Cl. 489, 499 n.12 (2003) (party waives claim raised in post-trial brief where no supporting evidence introduced at trial).

The cases cited in the Court's November 1, 2006 order, B-E-C-K Constructors v. United States, 215 Ct. Cl. 793, 795 n.3 (1978), and Bennett Constr. Co. v. United States, 178 Ct. Cl. 61 (1967), do not support waiver in this instance, as neither case is applicable to the issue now before the Court. In B-E-C-K, for example, the Court noted that the Government had waived its procedural right to administrative disposition of the parties' dispute by not seeking the administrative remedy first and proceeding directly to trial. B-E-C-K, 215 Ct. Cl. at 795 n.3. Similarly, in Bennett, the Court held that the Government, by waiting until after the close of trial to object, had waived the right to challenge certain new evidence that the plaintiff introduced at trial that had not been introduced first during the administrative tribunal's proceedings. Bennett, 178 Ct. Cl. at 70-71. The Court held that the Government's right to a judicial review limited to the administrative record was a procedural right that could be waived if an objection was not timely asserted. Id.

Here, however, the issue of whether the Government may have waived the right to invoke the "Unavoidable Delays" clause relates to a substantive right for which both parties bargained in the Standard Contract; it is not a procedural device that may be waived. Further, unlike the situations in B-E-C-K and Bennett, the Government has not waited until the close of trial to raise the unavoidable delays issue, as the Government's counsel repeatedly has asserted this position in its pre-trial and post-trial filings, and in open court during the examination of the Government's first witness in this case. Simply put, unlike B-E-C-K and Bennett, the Government here did not idly sit on its rights, but, rather, in light of an existing writ of

mandamus, attempted to preserve the record in the event that it was freed to assert those rights without fear of sanctions. Accordingly, plaintiffs cannot overcome their burden to demonstrate that the Government voluntarily waived its rights. See Buder, 174 F.2d at 268.

## CONCLUSION

For the above reasons, we respectfully request that the Court find that the Government has not somehow waived its rights to invoke the "Unavoidable Delays" clause as a defense.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

OF COUNSEL:

STEPHEN FINN
JOSHUA E. GARDNER
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

s/John C. Ekman by s/ Patrick B. Bryan
JOHN C. EKMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington D.C. 20530
Tele: (202) 307-6288
Fax: (202) 307-2503

Attorneys for Defendant

December 5, 2006

CERTIFICATE OF FILING

I hereby certify that on this 5th day of December, 2006, a copy of foregoing "DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO NOVEMBER 1, 2006 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Patrick B. Bryan