**No. 98-614C**
**(Senior Judge Merow)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Electronically Filed on December 5, 2006)**

---

**SOUTHERN NUCLEAR OPERATING COMPANY,**
**ALABAMA POWER COMPANY AND GEORGIA POWER COMPANY,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING WHETHER THE GOVERNMENT WAIVED THE ISSUE OF THE VALIDITY OF THE D.C. CIRCUIT'S WRIT OF MANDAMUS IN *NORTHERN STATES I*

---

**M. Stanford Blanton**
**BALCH & BINGHAM LLP**
**1710 Sixth Avenue North**
**Birmingham, AL 35203**
**Telephone: (205) 226-3417**
**Facsimile: (205) 226-8798**

***Of Counsel*:**

**Ed R. Haden**
**K. C. Hairston**
**BALCH & BINGHAM LLP**
**1710 Sixth Avenue North**
**Birmingham, AL 35203**
**Telephone: (205) 251-8100**
**Facsimile: (205) 226-8798**

**Ronald A. Schechter**
**Jeffrey L. Handwerker**
**Matthew M. Shultz**
**ARNOLD & PORTER LLP**
**555 Twelfth Street, N.W.**
**Washington, D.C. 20004-1202**
**Telephone: (202) 942-5000**
**Facsimile: (202) 942-5999**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................ ii

BACKGROUND ........................................ 2

SUMMARY OF THE ARGUMENT ........................................ 7

ARGUMENT ........................................ 8

I. BECAUSE THE UNAVOIDABLE DELAYS ARGUMENT IS AN AFFIRMATIVE DEFENSE THAT THE GOVERNMENT WAIVED BY FAILING TO RAISE IT IN ITS ANSWER OR BEFORE TRIAL, THE VALIDITY OF THE *NORTHERN STATES I* ORDER IS A MOOT ISSUE. ........................................ 9

II. THE GOVERNMENT WAIVED ANY CHALLENGE TO THE VALIDITY OF THE *NORTHERN STATES I* ORDER BY NOT RAISING IT IN ITS STATEMENT OF ISSUES OR ITS PRE-TRIAL BRIEF. ........................................ 12

A. Under the RCFC, Failure to Raise an Issue in the Joint Preliminary Status Report and in the Pre-Trial Brief Constitutes a Waiver of that Issue.................. 12

B. Raising the Validity of the *Northern States I*/Unavoidable Delays Clause, After the Conclusion of Trial Would Prejudice Southern. ........................................ 14

CONCLUSION ........................................ 15

CERTIFICATE OF SERVICE ........................................ 17

# TABLE OF AUTHORITIES

## CASES

*Aptus Co. v. United States*, 61 Fed. Cl. 638, 647 (2004), *aff'd sub nom. Lin v. United States,* 159 Fed. Appx. 186 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1921 (2006)........................... 11

*B-E-C-K Constructors v. United States*, 215 Ct. Cl. 793, 571 F.2d 25 (1978)........................ 7, 8, 9

*Bennett Constr. Co. v. United States*, 178 Ct. Cl. 61, 371 F.2d 859 (1967)............................ 7, 8, 9

*Blanken v. Bechtel Properties, Inc.*, 194 F. Supp. 638 (D.D.C. 1961), *aff'd*, 299 F.2d 928 (D.C. Cir. 1962)........................................................................................................ 13

*Boston Edison Co. v. United States*, 64 Fed.Cl. 167 (2005).......................................................... 5

*Cinergy Corp v. United States*, 55 Fed. Cl. 489 (2003) ............................................................ 12

*Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350 (Fed. Cir. 1999) ......................................... 11

*Envirocare of Utah, Inc. v. United States*, 44 Fed. Cl. 474 (1999).............................................. 10

*First Fed. Savings Bank of Hegewisch v. United States*, 52 Fed. Cl. 774 (2002).......................... 10

*Hazelwood School Dist. v. United States*, 433 U.S. 299 (1977) ................................................. 15

*Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272 (D.C. Cir. 1996)...................................... 2, 3

*Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000)....................... 4

*Maintenance Engineers, Inc. v. United States*, 21 Cl. Ct. 553 (1990) ................................8, 12, 14

*Nager Elec. Co. v. United States*, 396 F.2d 977 (Ct. Cl. 1968) .................................................. 15

*Nebraska Public Power District v. United States*, No. 01-116C (Fed. Cl. October 31, 2006)..........................................................................2, 5, 7, 14

*Northern States Power Co. v. DOE*, Nos. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581 (D.C. Cir. May 5, 1998), *cert. denied*, 525 U.S. 1015 & 1016 (1998)............................................................................................................................ 7

*Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), *cert. denied*, 525 U.S. 1015 & 1016 (1998)....................................... passim

*Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ................................ 4

*PSEG Nuclear, L.L.C. v. United States*, No. 05-5162, 465 F.3d 1343, 2006 WL 2801877 (Fed. Cir. Sept. 29, 2006)......................................................................................... 4

*Rutledge v. United States*, 72 Fed. Cl. 396 (2006)......................................................................... 9

*Stockton E. Water Dist. v. United States*, 70 Fed. Cl. 515 (2006)......................................9, 10, 11

*T.E.A.M. Entm't., Inc. v. Douglas*, 361 F. Supp. 2d 362 (S.D.N.Y. 2005)................................... 10

*Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369 (Fed. Cir. 2005) .................................. 11

*United States v. Hitachi America, Ltd.*, 172 F.3d 1319 (Fed. Cir. 1999) ....................................... 9

**STATUTES**

5 U.S.C. § 702 .......................................................................................................... 3

5 U.S.C. § 703 .......................................................................................................... 3

28 U.S.C. § 1491 ....................................................................................................... 4

42 U.S.C. § 10139 ..................................................................................................... 3

42 U.S.C. § 10222 ..................................................................................................... 3

**REGULATIONS**

10 C.F.R. § 961.11, Art. IX.A. ................................................................................. 4

60 Fed. Reg. 21,793 (1995).............................................................................2, 3, 4, 10

**RULES**

Rules of the Court of Federal Claims, Appendix A ..........................................................8, 13, 14

Rules of the Court of Federal Claims, Rule 8 ..................................................................... 7, 9, 10

**OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1271 (2004)............ 10

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**(Electronically Filed on December 5,2006)**

| | | |
|---|---|---|
| **SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY AND GEORGIA POWER COMPANY,** | ) | |
| **Plaintiffs,** | ) | **No. 98-614C** |
| | ) | **(Senior Judge Merow)** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING WHETHER THE GOVERNMENT WAIVED THE ISSUE OF THE VALIDITY OF THE D.C. CIRCUIT'S WRIT OF MANDAMUS IN *NORTHERN STATES I***

Plaintiffs Alabama Power Company, Georgia Power Company, and Southern Nuclear Operating Company, Inc. (collectively, "Southern") respectfully submit this Supplemental Brief in response to this Court's November 1, 2006 Order. This case began on July 29, 1998, when Southern filed its Complaint. (Compl., Dkt. 1.) The Court entered summary judgment on liability for Southern on April 7, 2004. (Order at 8, Dkt. 234.) On October 17, 2005, trial began. (Trial Tr. 1, Oct. 17, 2005.) After a recess, trial was completed on January 31, 2006. (Trial Tr. 2416-18, Jan. 31, 2006.) Only after the trial was over and the record closed did the Government mention in its post-trial brief, without making any argument, that if another court concluded that the *Northern States I* order was invalid, the Government would at that time argue in this case that its non-performance was excusable as an unavoidable delay. (Def.'s Post-Trial Br. 2 n.1, Dkt. 343.) On November 1, 2006, this Court issued an Order stating:

> [A]fter the conclusion of trial, in its Post-Trial Brief defendant stated that "[t]o the extent that the writ of mandamus [of *Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), *cert. denied*, 525 U.S. 1015 & 1016 (1998)] were lifted or found ineffective, we would be able to assert

> [certain arguments that the delay in commencement of performance was "unavoidable" under the terms of the Standard Contract].["] (Def.'s Post-Trial Br. 2 n.1.) *Nebraska Public Power District v. United States*, No. 01-116C (Fed. Cl. October 31, 2006) (J. Allegra) held that the D.C. Circuit's mandamus order in *Northern States* "is void and does not preclude defendant from arguing [in *Nebraska Public Power District*], *inter alia*, that it did not breach the Standard Contract based upon the unavoidable delays clause therein." *Nebraska Public Power District*, slip op. at 32.

(Order, at 1, Dkt. 349.) The above Order then requested the parties to brief "whether, at this stage of the proceeding, the issue of the validity of the D.C. Circuit's writ of mandamus may be raised for consideration by the court, or whether the issue has been waived." (*Id.* at 1-2.) The Government has waived this issue by not raising it before the conclusion of trial., and Southern would be prejudiced by allowing the Government to raise the issue now and further delay resolution of this case which was filed in 1998.

## BACKGROUND

In 1995, the Department of Energy ("DOE") issued its Final Interpretation of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21,793, 21,797 (1995), concluding that the Unavoidable Delays Clause would exempt it from liability for breach of the Standard Contracts if it had no operational repository on January 31, 1998.

In 1996, a group of nuclear utilities challenged the DOE's Final Interpretation that the NWPA did not require the Standard Contract to provide for the acceptance of spent nuclear fuel in the absence of a repository. In *Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272, 1274, 1276 (D.C. Cir. 1996), the D.C. Circuit accepted the utilities' (including Southern's) argument that the NWPA imposed an unconditional obligation on DOE:

> **DOE's duty under subsection [302](B) [of the NWPA] to dispose of the SNF** is conditioned on the payment of fees by the owner and is triggered, at the latest, by the arrival of January 31, 1998. **Nowhere, however, does the statute indicate**

> **that the obligation established in subsection (B) is somehow tied to the commencement of repository operations** referred to in subsection (A).
>
> . . . .
>
> **[W]e hold that section 302(a)(5)(B) creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998**. The decision of the Secretary is vacated . . . .

(Emphasis added.)[1]

Nonetheless, in 1997, DOE's contracting officer concluded that the Government's own delay due to "regulatory delays; roadblocks to implementation of interim or monitored retrievable storage; funding restrictions; litigation delays; and consultation requirements" would constitute an "unavoidable delay" under the Standard Contract that would excuse DOE from paying any money damages if a breach occurred. *Northern States Power Co. v. DOE*, 128 F.3d 754 (D.C. Cir. 1997) (*Northern States I*), *cert. denied*, 525 U.S. 1015 & 1016 (1998). The D.C. Circuit responded by issuing a writ of mandamus, to enforce the mandate in *Indiana Michigan*. The D.C. Circuit stated:

> As we explained in *Indiana Michigan*, **the NWPA requires DOE, "in return for the payment of fees," to begin disposing of the materials "not later than January 31, 1998." 42 U.S.C. § 10222(a)(5)(B).** We specifically noted that the payment of fees into the Nuclear Waste Fund is the "only limitation placed on the Secretary's duties" found in the text of the statute. 88 F.3d at 1276.
>
> . . . .
>
> As we pointed out in *Indiana Michigan*, **the NWPA directs DOE to undertake the duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility.** DOE cannot now render its obligation

[1] *See generally* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof."); 5 U.S.C. § 703 ("The form of proceeding for judicial review is . . . any applicable form of legal action . . . in a court of competent jurisdiction."); 42 U.S.C. § 10139 (2000) [NWPA § 119] ("[T]he United States courts of appeals shall have original and exclusive jurisdiction over any civil action -- (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part; (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part . . .").

> contingent, and free itself of the costs caused by its delay, by advancing the same failed position that we rejected before.
>
> . . . .
>
> Accordingly, we order DOE to proceed with contractual remedies in a manner consistent with **NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998.** More specifically, we **preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository** or that it has no authority to provide storage in the interim. This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity." 10 C.F.R. § 961.11, Art. IX.A. . . . We therefore issue a writ of mandamus precluding DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility.

*Northern States I*, 128 F.3d at 760-61 (emphasis added).[2]

On January 31, 1998, DOE breached the Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, including Southern's contracts (the "Contracts"). *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000); *Northern States Power Co. v. United States*, 224 F.3d 1361, 1367 (Fed. Cir. 2000); *Southern*, No. 98-614, Order, pp. 4-5 (Apr. 7, 2004).

On July 29, 1998, Southern filed its initial Complaint in this Court claiming, among other things, breach of contract and seeking damages.[3] (Compl., Dkt. 1.) On October 4, 2002, Southern filed its First Amended Complaint. (First Amended Compl., Dkt. 175.) On September

[2] The Court of Appeals for the Federal Circuit has recently concluded that "judicial review as to whether the DOE properly incorporated the[] obligations [of the NWPA] within its contracts may fall within the jurisdiction conferred to the courts of appeals in section 119" of the NWPA. *PSEG Nuclear, L.L.C. v. United States*, No. 05-5162, 465 F.3d 1343, 2006 WL 2801877, at *7 (Fed. Cir. Sept. 29, 2006). *See id.* at *5; ("We agree with the parties, the Court of Federal Claims in this case, and the D.C. Circuit that agency actions mandated under Title III which relate to the creation of repositories for spent nuclear fuel fall within the class of actions subject to review by the courts of appeals under section 119.").

23, 2005, Southern filed its Amended and Supplemental Complaint. (Amended and Supplemental Compl., Dkt. 308.)

On May 7, 2004, the Government filed its Answer to the First Amended Complaint and on November 10, 2005, it filed an Answer to the Amended and Supplemental Complaint. (Answer, Dkt. 239; Answer to Amended and Supplemental Compl., Dkt. 318.) In its answers, the Government did not question the validity of the *Northern States I* mandamus order or contend that, but for that order, it would argue that the Unavoidable Delays Clause barred any recovery for its breach of the Contracts.

On or about November 28, 2001, the Government filed its motion for partial summary judgment. (Def.'s Mot. for Partial Summ. J., Dkt. 100.) The Government did not raise any argument regarding the validity of the *Northern States I* mandamus order regarding the Unavoidable Delays Clause.

On March 14, 2005, in *Nebraska Public Power District v. United States,* No. 01-116 (*NPPD*), the Government filed its response to the plaintiff's motion for reconsideration of Judge Sypolt's jurisdictional order. (Def.'s Response to Pls.' Mot. for Recons., Dkt. 168.) In that response, the Government argued that the D.C. Circuit had lacked jurisdiction to issue its *Northern States I* order in 1997. (*Id.* at 5-7.)[4]

On May 4, 2005, in the *NPPD* case (Order, Dkt. 173), Judge Allegra ordered the Government and the plaintiff to brief the issue of whether the *Northern States I* order, which barred the unavoidable delays argument, was valid.

---

[3] *See* 28 U.S.C. § 1491 (granting this Court jurisdiction over a claim "founded . . . upon any express or implied contract with the United States").

[4] On February 15, 2005, Judge Lettow noted that the Government had raised the absence of a repository as a defense in *Boston Edison Co. v. United States*, 64 Fed.Cl. 167, 187 n.21 (2005).

On September 15, 2005, in this case, this Court held a pre-trial hearing. The Government did not raise any argument concerning the validity of the *Northern States I* mandamus order regarding the Unavoidable Delays Clause.

On September 23, 2005, in this case, Southern moved to amend and supplement its Complaint to include evidence of events since the original Complaint was filed. (Pls.' Mot. to Amend and Suppl. its Compl., Dkt. 308.)

On September 28, 2005, the Government filed its pre-trial brief. (Def.'s Mem. of Contentions of Fact and Law, Dkt. 309.) Again, the Government did not raise any argument regarding the validity of the *Northern States I* mandamus order regarding the Unavoidable Delays Clause.

On October 17, 2005, trial began. (Trial Tr. 1, Oct. 17, 2005.) During trial, the Government did not raise any argument concerning the validity of the *Northern States I* mandamus order regarding the Unavoidable Delays Clause.

On January 31, 2006, this Court closed the record, except for certain deposition designations. (Trial Tr. 2416-18, Jan. 31, 2006.)

On May 24, 2006, the Government filed its post-trial brief. (Def.'s Post-Trial Br., Dkt. 343.) In that brief, for the first time, the Government stated: "To the extent that the writ of mandamus [of *Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), *cert. denied*, 525 U.S. 1015 & 1016 (1998)] were lifted or found ineffective, we would be able to assert [certain arguments that the delay in commencement of performance was 'unavoidable' under the terms of the Standard Contract]." (*Id.* at 2 n.1.) The Government, however, did not argue in that brief, and has at no time argued in this case, that the *Northern States I* order was invalid or should be held to be invalid in this case.

**SUMMARY OF THE ARGUMENT**

For reasons known only to the Government, it consciously decided not to challenge the validity of the *Northern States I* order in this case and to litigate the issue only in *NPPD*, No. 01-116. The Government first challenged the validity of the *Northern States I* order in 1997 in its petition for rehearing of the *Northern States I* opinion. *See Northern States Power Co. v. DOE*, Nos. 97-1064, 98-1069, 98-1070, 97-1065, 97-13170, 97-1398, 1998 WL 276581, at *1-*2 (D.C. Cir. May 5, 1998) (*Northern States II*), *cert. denied*, 525 U.S. 1015 & 1016 (1998). The Government again challenged to the validity of the *Northern States I* order on March 14, 2005, in the *NPPD* case (Def.'s Response to Pls.' Mot. for Recons. at 5-7, Dkt. 168) – more than seven months before the trial of this case began on October 17, 2005. On May 4, 2005, more than five months before the trial of this case began, Judge Allegra directed the parties to brief the *Northern States I* issue. (Sch. Order, at 1, Dkt. 173.) Still, the Government did not raise the issue in this case before the conclusion of trial on January 31, 2006.

The Government's failure to challenge the *Northern States I* bar to raising its unavoidable delays defense resulted in waiver of the argument. *B-E-C-K Constructors v. United States*, 215 Ct. Cl. 793, 795 n.3, 571 F.2d 25, 28 n.3 (1978), and *Bennett v. United States*, 178 Ct. Cl. 61, 70-71, 371 F.2d 859, 864 (1967), establish the general principle that the failure to raise an argument prior to the closure of proof constitutes a waiver of that argument. Because the Government did not, prior to the close of proof, seek to challenge the *Northern States I* bar to raising its unavoidable delays defense, it has waived that issue. This general principle is reflected in the Rules of the Court of Federal Claims ("RCFC").

First, under RCFC 8, the Government's underlying unavoidable delays defense, like the defense of impossibility of performance, is an affirmative defense. Because the Government did not challenge the *Northern States I* bar to raising this affirmative defense in its answer, its

summary judgment motion, or in its pre-trial brief, that affirmative defense is waived and the argument that *Northern States I* order is invalid is now moot.

Second, under RCFC Appendix A, the failure of a party to raise an issue in the joint statement of issues or the memorandum of contentions of fact and law constitutes a waiver of that issue. *See Maintenance Engineers, Inc. v. United States*, 21 Cl. Ct. 553, 565 n.10 (1990). Because the Government did not raise the validity of the *Northern States I* bar to raising the unavoidable delays defense in either the statement of issues in its Joint Preliminary Status Report or its Memorandum of Contentions of Fact and Law, it waived the issue.

## ARGUMENT

The *Northern States I* order precluded the Government from concluding that the Unavoidable Delays Clause in the Standard Contract exempted it from paying any damages for breach in the absence of an operational repository. *Northern States I*, 128 F.3d at 760-61. While the Government could have challenged the validity of the *Northern States I* order at any time from 1998 up to the completion of trial in January 2006, it chose not to do so. That failure constituted waiver of the argument.

In its November 1, 2006 Order, this Court stated:

> [S]upplemental briefing is requested on the issue of whether at this stage of the proceedings, the issue of the validity of the D.C. Circuit's writ of mandamus may be raised for consideration by the court. *See B-E-C-K Constructors v. United States*, 215 Ct. Cl. 793, 795, n.3, 571 F.2d 25, 28 n.3 (1978); *Bennett Constr. Co. v. United States*, 178 Ct. Cl. 61, 70-71, 371 F.2d 859, 864 (1967).

(Order at 1-2, Dkt. 349.)

In *B-E-C-K*, 571 F.2d at 28 n.3, and *Bennett*, 178 Ct. Cl. at 85-86, 371 F.2d at 865, this Court recognized the well -settled principle that where a party fails to raise an issue until after the trial is over, that party has waived its right to have that issue decided at trial or at any pre-trial

stage.[5] The Government never argued prior to the close of proof, or thereafter, that the *Northern States I* order lacked validity.[6] Thus, under the general principle recognized in *B-E-C-K* and *Bennett*, the Government waived the issue.

This general principle of waiver is also reinforced by this Court's Rules regarding what must be raised as an affirmative defense and what must be raised in a pre-trial brief..

## I. BECAUSE THE UNAVOIDABLE DELAYS ARGUMENT IS AN AFFIRMATIVE DEFENSE THAT THE GOVERNMENT WAIVED BY FAILING TO RAISE IT IN ITS ANSWER OR BEFORE TRIAL, THE VALIDITY OF THE *NORTHERN STATES I* ORDER IS A MOOT ISSUE.

"It is well settled that parties can waive such an affirmative defense either by not raising it or by agreeing before trial not to assert it." *United States v. Hitachi America, Ltd.*, 172 F.3d 1319, 1334 (Fed. Cir. 1999). "[T]he purpose of the rule is to 'guarantee that the opposing party has notice of any additional issue that may be raised at trial so that [a party] is prepared to properly litigate it.'" *Stockton East Water Dist. v. United States*, 70 Fed. Cl. 515, 528 (2006). RCFC 8 requires that a party "set forth affirmatively" defenses such as "laches, license, payment, release, res judicata . . . and any other matter constituting an avoidance of affirmative defense."[7] Professors Wright and Miller have explained:

---

[5] While challenges to the subject matter jurisdiction of this Court can be raised at any time, *see Rutledge v. United States*, 72 Fed. Cl. 396, 399 (2006) ("subject matter jurisdiction may be challenged at any time by the parties"), the Government's collateral attack on the *Northern States I* order is a challenge the jurisdiction of the D.C. Circuit over that court's order, not the jurisdiction of this Court. Thus, the general rules of waiver apply.

[6] Instead, the Government merely mentioned in its post-trial brief that if such a holding was reached in some other case that it would be able to make an argument in this case. (Def.'s Post-Trial Br. 2 n.1, Dkt. 348.)

[7] *See First Fed. Savings Bank of Hegewisch v. United States*, 52 Fed. Cl. 774, 789 (2002) ("[RCFC 8] is identical to its counterpart under the federal rules, which is equally applicable to the pleading of affirmative defenses.")

> Generally speaking, the rule's reference to "an avoidance or affirmative defense" encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in an answer.

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1271 (2004).

The substantive goal of the Government's procedural challenge to the validity of the *Northern States I* order is to admit the allegations of non-performance on January 31, 1998, but to assert that Southern cannot recover under the Unavoidable Delays Clause because without a repository DOE's performance was impossible.[8] "[The] defense of impossibility is an affirmative defense." *T.E.A.M. Entm't, Inc. v. Douglas*, 361 F. Supp. 2d 362, 367 (S.D.N.Y. 2005) (holding defendant waived defense of impossibility by not raising it affirmatively in the answer).

More specifically, this Court has recently noted that the defense of impossibility of performance arising from the Government's own sovereign acts (*e.g.*, passage of a law) is an affirmative defense. *Stockton*, 70 Fed. Cl. at 528. In *Stockton*, *id.*, the Government moved for summary judgment arguing, among other things, that it was relieved of liability for a breach of contract on account of the sovereign acts doctrine. This Court concluded that such a defense was an affirmative defense in part because "as a precondition to excusing liability for breach under the sovereign acts doctrine, **defendant bears the burden of showing that performance was impossible**." *Id.* at 529 (emphasis added).

---

[8] Clearly, evidence that the United States, through action or inaction by the Congress or the President, obstructed the development of the repository or alternative storage facilities would not constitute unavoidable delay since the United States is the obligor under the Contracts. Suggesting that by such action or inaction the United States can excuse its own performance would make the contract illusory and violate the NWPA. *See Envirocare of Utah, Inc. v. United States*, 44 Fed. Cl. 474, 481 (1999) ("[C]ourts must construe contracts so as to avoid rendering them illusory.").

Similarly, the Government bears the burden of proof that Congress' passage of inadequate appropriations laws and other events unavoidably delayed its performance past January 31, 1998. *See Northern States I*, 128 F.3d at 760 ("The Contracting Officer isolated six factors that, taken together, supposedly support the conclusion that DOE experienced an unavoidable delay in this case: technical problems; regulatory delays; roadblocks to implementation of interim or monitored retrievable storage; funding restrictions; litigation delays; and consultation requirements"); *Aptus Co. v. United States*, 61 Fed. Cl. 638, 647 (2004) (noting that a party to government contract "must establish his affirmative defense of excusable delay by a preponderance of the evidence"), *aff'd sub nom. Lin v. United States*, 159 Fed. Appx. 186 (Fed. Cir. 2005), *cert. denied*, 126 S. Ct. 1921 (2006). The Government bears the burden of proving the unavoidable delays defense -- an affirmative defense.

Because the Government did not raise this affirmative defense in its answers, in opposition to Southern's motion for summary judgment, in its pre-trial briefs, or prior to the end of trial, it is waived. *Compare Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) ("an affirmative defense must be raised in response to a summary judgment motion, or it is waived"), *with Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369, 1376-77 (Fed. Cir. 2005) ("[A] preemption defense was not waived if raised anytime **before the pretrial order**, even if not pled as an affirmative defense . . . .") (Emphasis added.) Thus, the validity of the *Northern States I* order is now moot.

The Government may argue that it did not waive the unavoidable delays argument because it was barred by court order from raising it. The only bar to its raising of the challenge validity of the D.C. Circuit's *Northern States I* order, however, was the Government's own

failure to raise that argument in its answer, at summary judgment, at the pre-trial conference, in its pre-trial brief, or at trial while the underlying affirmative defense was still viable.

## II. THE GOVERNMENT WAIVED ANY CHALLENGE TO THE VALIDITY OF THE *NORTHERN STATES I* ORDER BY NOT RAISING IT IN ITS STATEMENT OF ISSUES OR ITS PRE-TRIAL BRIEF.

### A. Under the RCFC, Failure to Raise an Issue in the Joint Preliminary Status Report and in the Pre-Trial Brief Constitutes a Waiver of that Issue.

In general, where a party fails to raise an issue in a timely manner that allows for the proper development of that issue at trial, the party waives the issue. *See Cinergy Corp. v. United States*, 55 Fed. Cl. 489, 499 n.12 (2003) ("In this court's view, by failing to raise this issue earlier so as to allow for its proper development at trial, plaintiff has waived any entitlement to deduct this amount.") Specifically, in *Maintenance Engineers,* 21 Cl. Ct. at 565 n.10, this Court explained that failure of a party to raise an issue in the joint statement of issues or the memorandum of contentions of fact and law constitutes a waiver of that issue:

> The **other theories** for relief in plaintiff's complaint **have been abandoned**. They were **not advanced by plaintiff in its Memorandum of Contentions of Fact and Law** filed before the pretrial conference, plaintiff arguing only that the legal issues were whether the contract was ambiguous and whether plaintiff reasonably relied on NAVFAC's estimate. Pursuant to RUSCC Appendix G, ¶ 15, the parties' **Joint Statement of Issues of Fact and Issues of Law** determines the parameters of admissible evidence. The joint statement identified factual issues relating only to the legal issue of patent ambiguity and reasonable reliance. No evidence was introduced relevant to any other legal issues raised in plaintiff's complaint.

(Emphases added.)[9]

---

[9] *See Blanken v. Bechtel Properties, Inc.*, 194 F. Supp. 638, 641-42 (D.D.C. 1961) (Holtzoff, J.) ("It must be borne in mind that one of the principal purposes of pretrial is to crystallize and formulate the issues to be tried and to present a complete statement of all of the contentions of the parties as to the law and fact. Any contention not presented at pretrial may not be raised at the trial."), *aff'd,* 299 F.2d 928 (D.C. Cir. 1962).

> Pursuant to current RCFC Appendix A:
>
> No later than 49 days after defendant's answer or plaintiff's reply to a counterclaim is served, **the parties shall file with the clerk a Joint Preliminary Status Report**, signed by both parties, **setting forth answers to the following questions** (separate views may be set forth on any point on which the parties cannot agree):
>
> . . . .
>
> (h) **What are the relevant factual and legal issues?**

RCFC, App. A, ¶ 4 (emphases added).

The parties in this case filed their Joint Preliminary Status Report on or about January 10, 2003, but the Government did not list the validity of the *Northern States I* order regarding the Unavoidable Delays Clause as an issue. (Jt. Prel. Status Rep., at pp. 12-13, Dkt. 193.)[10]

> Appendix A to the RCFC also provides:
>
> Memorandum of Contentions of Fact and Law.
>
> (a) Plaintiff's Memorandum. No later than 49 days before the pretrial conference, plaintiff shall file a Memorandum of Contentions of Fact and Law. **The memorandum shall contain** the following:
>
> > (1) a full but concise **statement of the facts plaintiff expects to prove** and a discussion of plaintiff's position with respect to the facts on which defendant is expected to rely;
> >
> > (2) **a statement of the issues of fact and law** to be resolved by the court. The issues should be set forth in sufficient detail to enable the court to resolve the case in its entirety by addressing each of the issues listed;
>
> . . . .
>
> (b) Defendant's Memorandum. No later than 21 days before the pretrial conference, **defendant shall file its responsive memorandum** in the **same form and content** as plaintiff's.

---

[10] In its Statement of Genuine Issues filed on or about December 18, 1998, the Government stated that it disputed Southern's characterization of *Northern States I*, and quoted portions of that opinion. (Def.'s Stmt. of Genuine Issues, at p. 4, Dkt. 17.) The Government did not, however, challenge in any way the validity of the *Northern States I* order or propose that it might do so at some time in the future. *Id.*

RCFC, App. A, ¶ 14 (emphases added).

The Government filed its Memorandum of Contentions of Fact and Law on September 28, 2005, but did not raise any issue regarding the validity of the *Northern States I* order regarding the Unavoidable Delays Clause. (Def.'s Mem. of Contentions of Fact and Law, Dkt. 309.)

By not arguing that the *Northern States I* order regarding the Unavoidable Delay Clause was invalid in its Joint Preliminary Status Report or in its pre-trial Memorandum of Contentions of Fact and Law, the Government waived the argument under the Rules and settled precedent of this Court. *See Maintenance Engineers*, 21 Cl. Ct. at 565 n.10.

### B. Raising the Validity of the *Northern States I* /Unavoidable Delays Clause, After the Conclusion of Trial Would Prejudice Southern.

By not raising the validity of the *Northern States I* order until after the end of trial, the Government prejudiced Southern's ability to present evidence and to argue facts regarding whether the Government's delay was indeed unavoidable. For reasons known only to the Government, it consciously decided not to challenge the validity of the *Northern States I* order in this case and to litigate the issue only in the *NPPD* case.

To the extent the record remains closed, the *Northern States I* issue is moot because no evidence can be presented on whether the delays were or were not unavoidable. To the extent the record is re-opened, Southern would be prejudiced by being forced to incur substantial costs in litigating the unavoidable delays issue and by having its remedy delayed even further. Southern has been litigating this case since 1998 -- over eight years -- and additional delays based on an unraised argument would cost Southern even more time and money. "It is always possible to imagine more evidence which could have been offered, but at some point litigation

must come to an end." *Hazelwood School Dist. v. United States*, 433 U.S. 299, 319 (1977) (Brennan, J., concurring). Every day that this Court waits to grant a remedy prejudices Southern. This prejudice weighs in favor of finding that the Government has waived the issue. *See Nager Elec. Co. v. United States*, 396 F.2d 977, 982 (Ct. Cl. 1968) (finding waiver where "[t]he delay has prejudiced both the plaintiffs and the adjudicatory process").

## CONCLUSION

For the foregoing reasons, the Government has waived the issue of the validity of the *Northern States I* order regarding the Unavoidable Delays Clause.

Respectfully submitted,

Dated: December 5, 2006

s/ M. Stanford Blanton
M. Stanford Blanton
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 226-3417
Facsimile: (205) 226-8798

*COUNSEL OF RECORD FOR PLAINTIFFS*

***Of Counsel*:**

Ed R. Haden
K. C. Hairston
BALCH & BINGHAM LLP
1710 Sixth Avenue North
Birmingham, AL 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

Ronald A. Schechter
Jeffrey L. Handwerker
Matthew M. Shultz
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2006, a copy of the foregoing "PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING WHETHER THE GOVERNMENT WAIVED THE ISSUE OF THE VALIDITY OF THE D.C. CIRCUIT'S WRIT OF MANDAMUS IN *NORTHERN STATES I*" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ M. Stanford Blanton