No. 98-614C
(Senior Judge Merow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN NUCLEAR OPERATING COMPANY,
ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S MOTION FOR RECONSIDERATION

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

July 24, 2007

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(S)**


ARGUMENT .......... 1

I. STANDARD OF REVIEW .......... 1

II. THE COURT'S FINDING THAT PLAINTIFFS WOULD HAVE IMPINGED UPON THEIR FULL CORE RESERVE REQUIREMENTS IN THE "BUT FOR" WORLD IS UNSUPPORTED BY THE RECORD .......... 2

III. THE COURT INCORRECTLY ANALYZED THE RATE OF ACCEPTANCE .......... 4

A. The Court Did Not Address The Rate At Which DOE Was Contractually Obligated To Accept SNF .......... 4

B. In Considering The Government's Obligations, The Court Properly Should Allocate The Burden Of Proving The "But For" World To Plaintiffs .......... 6

C. The Court's Erroneous Determination Of The Expectations Of The Parties Results In The Government's Inability To Satisfy Its Obligations .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

Bluebonnet Savs. Bank, FSB v. United States,
67 Fed. Cl. 231 (2005), aff'd, 466 F.3d 1349 (Fed. Cir. 2006) ........................................ 8

California Fed. Bank v. United States,
395 F.3d 1263 (Fed. Cir. 2005) ........................................................................................ 6

Caroline Hunt Trust Co. v United States,
470 F.3d 1044 (Fed. Cir. 2006) ........................................................................................ 6

Coast Fed. Bank, FSB v. United States,
48 Fed. Cl. 402 (2000), rev'd on other grounds, 309 F.3d 1353 (Fed. Cir. 2002),
vacated, 320 F.3d 1338 (Fed. Cir. 2003) ........................................................................ 8

Coconut Grove Entertainment, Inc. v. United States,
46 Fed. Cl. 249 (2000) ..................................................................................................... 2

Fru-Con Construction Corp. v. United States,
44 Fed. Cl. 298 (1999) ..................................................................................................... 2

Glendale Fed. Bank, FSB v. United States,
239 F.3d 1374 (Fed. Cir. 2001) ........................................................................................ 8

Granite Mgt. Corp. v. United States,
74 Fed. Cl. 155 (2006) ................................................................................................. 8, 9

Harvey v. District of Columbia,
949 F. Supp. 878 (D.D.C. 1996) ...................................................................................... 1

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) ................................................................................. 6, 7, 9

PSEG Nuclear, L.L.C. v. United States,
465 F.3d 1343 (Fed. Cir. 2006) ........................................................................................ 5

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006),
appeal pending, No. 2007-5046 (Fed. Cir. docketed Jan. 24, 2007) ...................... *passim*

Southern Cal. Fed. Sav. & Loan Ass'n v. United States,
57 Fed. Cl. 598 (2003) .......... 9

## MISCELLANEOUS

11 A. Corbin, Corbin on Contracts, § 53.3 (rev. ed. 2005) .......... 9

11 Wright, Miller & Kane, Federal Practice & Procedure § 2810.1 (2d ed. 1995) .......... 1

Restatement (Second) of Contracts § 344(a) (1981) .......... 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY, AND GEORGIA POWER COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 98-614C<br>(Senior Judge Merow) |

DEFENDANT'S MOTION FOR RECONSIDERATION

Pursuant to Rules 52(b) and 59(a)(1) of the Rules of the Court of Federal Claims, defendant, the United States, respectfully requests reconsideration of certain portions of this Court's final order dated July 9, 2007, and final judgment dated July 10, 2007. Specifically, we request reconsideration of the Court's findings regarding the actions that plaintiffs ("Southern") would have taken, had DOE performed, at the Plant Hatch facility under the rates of acceptance contained in the 1991 Annual Capacity Report ("ACR"), and the rate of acceptance at which the Department of Energy ("DOE") would have performed the Standard Contract for the acceptance of spent nuclear fuel ("SNF") from utilities absent delay in acceptance. We also seek reconsideration of the Court's assignment to the Government of the burden of establishing DOE's contractual obligations.

ARGUMENT

I. STANDARD OF REVIEW

Motions for reconsideration or alteration of a Court's decision are not routinely granted. E.g., Harvey v. District of Columbia, 949 F. Supp. 878, 879 (D.D.C. 1996); see also 11 Wright,

Miller & Kane, Federal Practice & Procedure § 2810.1 (2d ed. 1995). To prevail on such a motion in this Court, a litigant must show "extraordinary circumstances" that justify relief. Fru-Con Construction Corp. v. United States, 44 Fed. Cl. 298, 300-01 (1999). A litigant must make this showing by either (1) establishing a clearly apparent or obvious error of law or mistake of fact in the Court's ruling that renders the decision manifestly unjust; (2) establishing a change in controlling law that might alter the Court's decision; or (3) proffering new evidence that was not available at the time of trial. Id.; Coconut Grove Entertainment, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000). If a party can show an error of law or a mistake of fact material to the Court's decision, reconsideration of a Court's judgment is warranted. See Fru-Con Construction, 44 Fed. Cl. at 300-01; Coconut Grove Entertainment, 46 Fed. Cl. at 255. As we explain in detail below, the Court's July 7, 2007 decision includes mistakes of fact and errors of law that warrant reconsideration of the Court's judgment in this case.

## II. THE COURT'S FINDING THAT PLAINTIFFS WOULD HAVE IMPINGED UPON THEIR FULL CORE RESERVE REQUIREMENTS IN THE "BUT FOR" WORLD IS UNSUPPORTED BY THE RECORD

We respectfully request that the Court reconsider its finding that, under the acceptance rates contained in the 1991 ACR, plaintiffs would not have needed dry storage and would have tolerated impinging upon its full core reserve requirements. Slip Op. at 56. In its opinion, the Court stated as follows:

> Even at the rates under the December 1991 ACR, absent DOE's announced failure to commence performance during the time frame relevant here, storage shortfalls would likely have been accommodated. The court credits testimony and evidence that these plants would not have built dry storage, but plaintiff would have installed a second bathtub rack (at Plant Hatch) and/or would have lived with, or tolerated less than FCR for a time pending pickups from DOE.

Slip Op. at 56. Further, the Court concluded that, "[r]ather than build expensive dry storage, any loss of FCR would have been tolerated because DOE's continuing performance in the nonbreach world would have restored FCR in a relatively short time under the 1991 ACR rate." Slip Op. at 41.

We respectfully request that the Court reconsider its finding with respect to plaintiffs' hypothetical actions under the 1991 ACR rate for several reasons. First, the Court properly found that, absent any delay by DOE, plaintiffs still would have needed to install a second bathtub rack had DOE accepted SNF at rates greater than those contained in the 1991 ACR. Slip Op. at 72 ("The court concludes that the costs of installing the second bathtub rack at Plant Hatch that would have been incurred if DOE had performed should be offset from mitigation damages"). The Court's finding that the second bathtub rack was needed under a steady-state acceptance rate ranging from 2,000 MTU to 3,000 MTU is inconsistent with the Court's finding that the second bathtub rack would have provided sufficient storage space under the lower acceptance rates contained in the 1991 ACR.

Second, there is no record evidence to support the conclusion that plaintiffs would have been willing to impinge upon full core reserve at Plant Hatch, let alone for three full years.[1] In fact, as the Court acknowledged in its opinion, Mr. Bland described his "mandate" as "not allow[ing] single-core offload capacity to disappear. We need to ensure availability of these assets to make electricity." Slip Op. at 35 (citing trial testimony of Mr. Bland at Tr.1163). As

---

[1] Although Mr. Wade testified that plaintiffs impinged upon two full core reserves at Plant Hatch in the actual world, Tr.980:22-982:5 (Wade), there was no testimony that plaintiffs ever had, or were willing to, dip below one full core reserve had DOE begun accepting SNF on an industry-wide basis in 1998.

the Court noted in its opinion, with the use of the second bathtub rack, Plant Hatch extended the time that it would begin impinging upon full core reserve from the Fall of 2000 to the end of the Fall 2001. Slip Op. at 41. In fact, as Dr. Neuberger explained in his modeling of plaintiffs' acceptance needs under the 1991 ACR, plaintiffs would have needed to have loaded six casks through 2004 at Plant Hatch assuming that plaintiffs utilized both bathtub racks and one full core reserve. Tr.2072:20-2073:24 (Neuberger). Because Plant Hatch's full core reserve was 560 spaces, Tr.663:7-10 (Hunt), and each cask contained 68 assemblies, Tr.312:6-10 (Cocherell), if the Court were to assume that plaintiffs decided to forego dry storage at Plant Hatch and impinge upon full core reserve, plaintiffs would impinge upon full core reserve every year beginning in 2002 and would completely run out of space by 2005. The record is devoid of any evidence that plaintiffs would have accepted such a risk. Consequently, there is no factual basis for concluding that plaintiffs would have decided not to pursue dry storage at Plant Hatch under the rates contained in the 1991 ACR, and we respectfully request that the Court reconsider this aspect of its opinion.

## III. THE COURT INCORRECTLY ANALYZED THE RATE OF ACCEPTANCE

### A. The Court Did Not Address The Rate At Which DOE Was Contractually Obligated To Accept SNF

In the Court's July 9, 2007, opinion, the Court addressed the issue of the rate of acceptance under the Standard Contract. However, in framing this issue, the Court concluded that the "inquiry is not minimum contract performance, but what DOE would have done." Slip Op. at 53. We respectfully request that the Court reconsider this aspect of its opinion, as it is contrary to the law of the United States Court of Appeals for the Federal Circuit. Specifically, as the Federal Circuit recently held in another SNF case, PSEG Nuclear, L.L.C. v. United States,

465 F.3d 1343 (Fed. Cir. 2006), "[a]ny issues related to the types of damages permitted under the contract, if any, and the extent of those damages can be resolved by solely resolving the DOE's contractual obligations." Id. at 1351 (emphasis added); see Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 375 n.38 (2006), appeal pending, No. 2007-5046 (Fed. Cir. docketed Jan. 24, 2007) ("Only by determining the scope of defendant's performance obligation can the court adequately determine which losses claimed by plaintiff are 'the natural and proximate result' of defendant's failure to begin accepting spent fuel from utilities by January 31, 1998"). Consequently, the proper inquiry with respect to the rate of acceptance is not what DOE would have done had it begun performance in 1998, but, rather, what rate of acceptance would have satisfied DOE's contractual obligations.

Because plaintiffs in this case have alleged a partial breach of contract, the central inquiry is to determine what performance obligations were breached. This, in turn, entails a determination as to what the Government's contractual obligations are with respect to the rate of acceptance. Absent such a determination, the Court cannot properly determine what, if any, damages plaintiffs have suffered. See PSEG, 465 F.3d at 1351; see also PG&E, 73 Fed. Cl. at 404-05 (refusing to award damages for DOE's failure to accept Greater-Than-Class-C low-level radioactive waste in the absence of contractual obligation to accept such materials). In short, by examining how DOE would have performed absent its breach rather than examining what performance would have satisfied DOE's obligations under the Standard Contract, the Court performed the incorrect inquiry regarding damages calculation in this case. Consequently, we respectfully request that the Court reconsider this aspect of its opinion and determine the scope of the Government's contractual obligations in this case.

B. In Considering The Government's Obligations, The Court Properly Should Allocate The Burden Of Proving The "But For" World To Plaintiffs

In analyzing damages in this case, the Court analogized plaintiffs' damages claim to a claim for reliance damages. See Slip Op. at 50 ("[a]nalogously, in awarding foreseeable costs incurred in reliance on a contract, the breaching party has the burden of establishing any loss that would have been incurred in the nonbreach or "but for" world - if the contract had been performed"). Although we agree that, in the context of claims for reliance damages and restitution, the breaching party has the burden to demonstrate the "but for" world, see, e.g., Caroline Hunt Trust Co. v United States, 470 F.3d 1044, 1052 (Fed. Cir. 2006), the opposite is true when a plaintiff is claiming expectation damages. Expectancy damages are "the benefits the nonbreaching party expected to receive in the absence of a breach." California Fed. Bank v. United States, 395 F.3d 1263, 1267 (Fed. Cir. 2005). There is no dispute that, in this case, the plaintiffs are making a claim for expectation damages. Indeed, plaintiffs have not incurred any costs "in reliance" upon contract performance, but, rather, are claiming that, as a result of non-performance, they have had to expend costs they otherwise would not have had to expend. Consequently, the analogy to reliance damages is misplaced and is unsupported by the law.

In Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), the Federal Circuit unequivocally defined the scope of an SNF plaintiff's burden with respect to expectation damages. In Indiana Michigan, as in this case, the plaintiff sought damages for its efforts to expand its storage capabilities and, specifically, the costs that it incurred for a rerack and expansion of its SNF pool. Id. at 1372. In addressing these costs, which (like Southern in

this case) the plaintiff characterized as "mitigation damages,"[2] the Federal Circuit explained that "[t]he presence of a duty to mitigate does not perforce make the pre-breach costs incurred by Indiana Michigan to store its SNF recompensable; appellant must prove foreseeability, causation, and reasonableness." Id. at 1376.

This requirement is apparent from Indiana Michigan itself, where the plaintiff sought to recover the cost of a rerack that it allegedly performed because of the breach, but failed to make the requisite showing with respect to causation. The Federal Circuit affirmed the trial court's determination that the utility failed to meet its burden, noting that the utility's "decision to perform a full, instead of a partial, rerack in 1995 was purely a business judgment which it would have had to pursue irrespective of DOE's partial breach." Id. (emphasis added). Stated differently, the Federal Circuit affirmed the trial court's finding that the utility had failed to meet its burden of proof because the utility would have made the same business judgment to rerack its spent fuel pool even had DOE timely commenced performance.

This Court's recent decision in PG&E recognizes the controlling nature of the Federal Circuit's decision in Indiana Michigan and the general principle that, when seeking expectancy damages, a plaintiff must establish a plausible "but for" world. In PG&E, the Court addressed the applicable legal standard by recognizing at the outset that "[t]he goal of awarding damages for breach of contract – that of placing the injured party in as good a position as it would have

---

2 The amount necessary to restore a party to the position that it would have occupied had a breach not occurred is typically referred to as the restoration of the party's "expectation interest." See Restatement (Second) of Contracts § 344(a) (1981). Although Southern referred repeatedly to "mitigation damages" at trial and in its post-trial brief, it is the damage to Southern's expectation interest (as opposed to its reliance or restitution interest) for which Southern seeks recovery.

been had the breaching party fully performed under the contract – is well settled." Id. at 378. Significantly, in reaching that conclusion, the Court cited to, among other authorities, the Federal Circuit's decision in Indiana Michigan. Id. Further, in addressing the issue of the DOE's contractual obligation regarding a rate of acceptance under the Standard Contract, the Court acknowledged that "[p]laintiff bears the burden of 'establishing what might have been' with reasonable certainty had defendant performed the Standard Contract." Id. at 386, 406 ("To derive the proper amount for the damages award, the cost resulting from the breach must be reduced by the costs, if any, that the plaintiff[] would have experienced absent a breach."). The Court further clarified that the plaintiff's alleged expectancy damages could only be measured by reference to a world where DOE performed, and that without reference to a performance world, the measure of plaintiff's damages would be "irrelevant." Id. at 375 n.38.

The well-established principle that plaintiffs have an obligation to prove a "but for" world is not limited to SNF cases. See, e.g., Granite Mgt. Corp. v. United States, 74 Fed. Cl. 155, 169 (2006) (plaintiffs bear burden of propounding realistic "but for" scenario); Bluebonnet Savs. Bank, FSB v. United States, 67 Fed. Cl. 231, 238-39 (2005), aff'd, 466 F.3d 1349 (Fed. Cir. 2006); Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 403 n.25 (2000), rev'd on other grounds, 309 F.3d 1353 (Fed. Cir. 2002), vacated, 320 F.3d 1338 (Fed. Cir. 2003); see also Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001) (plaintiffs bear burden of demonstrating "what might have been . . . ."). Indeed, courts routinely must resolve what would have happened had a breaching party satisfied its contractual obligations. As Professor Corbin has explained, in language that this Court endorsed in PG&E, "[t]he position that one would have occupied if history had been different is purely hypothetical. And yet that is

the problem that the trial court . . . [is] required to solve . . . The working rules of law by which court[s] are directed are never capable of exact and perfect application." 11 A. Corbin, Corbin on Contracts, § 53.3 (rev. ed. 2005) (emphasis added), cited in PG&E, 73 Fed. Cl. at 397.

In Granite, the Court described the well-established rule that the plaintiff bears the burden of establishing a plausible "but for" world in the context of expectation damages:

> Although the court does not seek to place under emphasis on a technical damages title, it does conclude that the type of damages sought in this case varies the burden of proof. This court has held that "[w]ith respect to explaining its expectancy damage . . . plaintiff bears the burden of propounding a realistic but-for scenario . . ." Coast Fed. Bank, FSB, v. United States, 48 Fed. Cl. 402, 430 n.25 (2000); see also Southern Cal. Fed. Sav. & Loan Ass'n v. United States, 57 Fed. Cl. 598, 633 (2003) (explaining that "establish[ing] a 'but-for' world . . . is ordinarily required to state a valid claim for expectancy damages"). In other words, plaintiff bears the burden of demonstrating "what might have been . . ." Glendale, 239 F.3d at 1380. Accordingly, because plaintiff in this case is seeking expectancy damages, it is incumbent upon it to establish a plausible "but-for" world. See also, Bluebonnet Savings Bank FSB v. United States, 67 Fed. Cl. 231, 237-38 (2005) aff'd Bluebonnet Savings Bank FSB v. United States, 466 F.3d 1349 (Fed. Cir. 2006).

74 Fed. Cl. at 169 (citation omitted).

In this case, the Court appears to have carved out an exception to this well-established rule in the case of a plaintiff claiming that its expectation interests have been injured by having to expend money as the result of a breach. However, we are unaware of any case that draws a distinction between expectation damages in the form of lost profits, on the one hand, and expectation damages in the form of increased out-of-pocket expenses, on the other. Indeed, this Court's opinion conflicts with the Federal Circuit's decision in Indiana Michigan, 422 F.3d at 1376, as well as this Court's opinion in PG&E, 73 Fed. Cl. at 386, 406, both of which recognized

that, in the context of a claim for increased costs as an alleged result of the Government's breach, the plaintiff bore the burden of demonstrating the actions that it would have taken had the Government timely performed its contractual obligations.

Further, the Court's distinction between expectation damages in the form of lost profits and expectation damages in the form of incurred costs is unworkable in practice. A brief hypothetical illustrates the problem. Assume a plaintiff in an SNF case who has sold its power plant to another utility asserts a claim for lost profits as a consequence of DOE's delay in SNF acceptance (in other words, that the plant sold for less than it otherwise would have as a result of DOE's delay), and that the plaintiff also asserts pre-sale increased storage costs as a result of that same delay.[3] The establishment of the "but for" world is essential for the establishment of both of these forms of expectation damages. Indeed, the "but for" world necessarily would be based upon the same operative facts for both of these expectation damages theories. However, under the Court's ruling in this case, the plaintiff would have the burden of proving the "but for" world for its lost profits theory, while the Government would have the burden of proving that same "but for" world in connection with the plaintiff's increased storage costs claim. Such a result demonstrates precisely why drawing a distinction between different types of expectation damages is not simply unsupported by the law, but unsupported by logic. Consequently, in considering the rate of acceptance at which the Government was contractually obligated, we respectfully request that the Court reconsider its allocation of the burden of demonstrating the "but for" world to the Government.

[3] Several utilities have, in fact, brought claims against the Government under a "diminution in value" theory.

C. The Court's Erroneous Determination Of The Expectations Of The Parties Results In The Government's Inability To Satisfy Its Obligations

In the Court's opinion, it referred to the program "goals of generally preventing additional at-reactor storage after 1998 and reducing backlogs of SNF inventory to allow timely decommissioning." Slip Op. at 55. However, it held that it did not accept either the Government's proffered 1991 ACR acceptance rate or the 3,000 MTU rate advocated by plaintiffs. Slip Op. at 52. Instead, the Court found that "the record evidence demonstrates that a reasonable annual removal rate in most circumstances would fall between 2000 MTU annual industry SNF discharges as the floor and the annual 3000 MTU design capacity of the planned repository as the ceiling." Slip Op. at 56 n.38. The Court further held that

> the decision to build the ISFSI at Plant Hatch was caused in substantial part by DOE's delay, and that but for the partial breach – in the nonbreach world, plaintiff would not have built it. . . . If DOE had timely commenced performance, a second bathtub rack would have been installed to accommodate discharges for the relatively short time until DOE's accepted SNF from this plant. The cost of the second bathtub rack was deducted from damages. Rather than build expensive dry storage, any loss of FCR would have been tolerated because DOE's continuing performance in the nonbreach world would have restored FCR in a relatively short time.

Slip Op. at 41 (emphasis added).

We respectfully request that the Court reconsider these findings. To the extent that the Court held that Government was obligated to accept SNF in such a manner as to preclude all additional at-reactor storage after 1998, recognition of the need for the second bathtub rack after 1998, which plaintiffs conceded constitutes additional at-reactor storage after 1998, Tr. 630:14-21 (Hunt); Tr.818:12-820:18 (Supko), conflicts with that obligation. Indeed, as Ms. Supko's analysis demonstrated, the rate would have to be significantly greater than 3,000 MTU to

preclude all additional at-reactor storage after 1998. Slip Op. at 54 (indicating that, even under a 6,000 MTU acceptance rate, Ms. Supko's analysis indicates post-1998 storage requirements). Simply put, if, as the Court holds that (1), a 3,000 MTU steady-state rate is the ceiling for performance, (2) the Government's obligation is to preclude all additional at-reactor storage after 1998, and (3) 3,000 MTUs does not preclude all additional at-reactor storage for either plaintiffs (because of the second bathtub rack) or the industry as a whole (over 1,000 MTUs), the Government would never be able to satisfy its performance obligations.[4] Consequently, we respectfully request that the Court reconsider the scope of the Government's contractual obligations regarding the rate and schedule of SNF acceptance.

CONCLUSION

Based upon the arguments presented above, we respectfully request that the Court reconsider and amend its final judgment with respect to the issues addressed in this motion.

[4] In its opinion, the Court stated that, at the time of the 1983 draft Mission Plan, "approximately 2000 MTU of SNF were being produced annually on a utility-wide basis." Slip Op. at 22 (citing testimony of Tom Pollog, at Tr.1894). However, this finding is factually incorrect. Mr. Pollog testified that the projected annual discharge rate in the 1983 time frame was approximately 3,000 MTUs per year, but that the annual utility generation rate currently is approximately 2,000 MTUs per year. Tr.1893:3-10 (Pollog). Of course, if the generation rate is 3,000 MTUs per year, the acceptance rate would have to be significantly greater than 3,000 MTUs per year to preclude all additional at-reactor storage after 1998 and facilitate timely decommissioning.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-0365
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

July 24, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner