# In the United States Court of Federal Claims

No. 98-614C
(Filed August 21, 2007)

******************************
SOUTHERN NUCLEAR OPERATING COMPANY, ALABAMA POWER COMPANY, GEORGIA POWER COMPANY,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.
******************************

**ORDER**

On July 23, 2007, the clerk's office received a Motion to Intervene in this action from Mr. William Peterson. The clerk's office did not file the proffered submission because it did not comport with the court's rules, but forwarded the submission to chambers for disposition. A prior, somewhat similar submission was tendered by Mr. Peterson in April of this year and ordered to be returned to him, unfiled. *See* Order of April 27, 2007.

Following review, the court concludes Mr. Peterson's Motion to Intervene should not be filed, but should be returned to him. His request for intervention is untimely. RCFC 24. Following a lengthy trial and extensive post-trial briefing, this case was concluded by an Opinion filed on July 9, 2007, and resulting Judgment entered on July 10, 2007. A recent timely motion for reconsideration is pending. Accordingly, intervention would delay the final resolution of this matter. *Honeywell Intern., Inc. v. United States*, 71 Fed. Cl. 759, 761-64 (2006) (discussing timeliness requirement of RCFC 24(a) – intervention as a matter of right; and 24(b) – permissive intervention).

In addition to being untimely, the relief Mr. Peterson seeks does not satisfy the requisites for intervention. Mr. Peterson "moves that the Court see the Peterson 300-year SNF disposal solution and issue a ruling for its application," that "the Court move the NWDF [Nuclear Waste Deposit Fund ] back from the General Treasury and put it back to fund the work, even to apply it with Peterson to immediately build

Pigeon Spur.[1/]" (William D. Peterson's *Pro Se* Motion to Intervene 12.) Also, he "moves the Court for a stipulation supporting the 300-year SNF disposal solution for doing SNF disposal." He asks that the NWDF be used to pay for his "300-year SNF disposal solution" in order to "get the nuclear utilities relieved of their SNF and so unencumbered they can build and operate the nuclear plants projected needed by the nation." (*Id.* at 14.)

Even liberally construed, Mr. Peterson's submission fails to implicate a money-mandating constitution provision, or federal statute or regulation necessary for this court's jurisdiction. Indeed, Mr. Peterson distances himself from the underlying breach of contract and request for monetary damages in this case. "At this point a 'breach of contract' or 'monetary damages' are not the real underlining issues." (William D. Peterson's Response to Defendant's Response to Mr. William D. Peterson's *Pro* Se Motion to Intervene and Complaint, attached to the Motion to Intervene 16.) "The real issues are getting the SNF off the utility sites, the U.S. Government providing an SNF disposal solutions, i.e., the Peterson 300-year SNF disposal solution and Peterson's doing the solution [paid for with the NWDF]." (*Id.*) "True, the defendant applicant does not seek monetary damages from either the United States or the nuclear utilities." (*Id*.)

Furthermore, this court has no power to grant the "relief" he seeks – the federal government's use of his spent nuclear fuel storage solution.[2/] The court cannot grant

---

[1/] Mr. Peterson states that he, with the Southern Pacific Railroad, offered the Pigeon Spur area on the Transcontinental Main Line in Utah as a location for SNF storage, and in 1986, he submitted an NRC license application for Pigeon Spur.

[2/] Mr. Peterson's submission includes an August 6, 2003 letter from Birdie V. Hamilton-Ray, Contracting Officer, DOE, Office of Civilian Radioactive Waste Management. Responding to Mr. Peterson's unsolicited proposals regarding a 300-year solution for dealing with spent nuclear fuel or reprocessed spent nuclear fuel, the Contracting Officer wrote to Mr. Peterson:

> The U.S. Department of Energy (DOE) takes its direction from the U.S. Congress in matters relating to the disposition of spent nuclear fuel and high-level radioactive waste. The [NWPA], as amended, directs the DOE to seek permanent disposal for such waste. The Act further directed the U.S. Environmental Protection Agency to develop standards for permanent disposal, and the U.S. Nuclear Regulatory Commission to license a permanent disposal site.

(continued...)

equitable or injunctive relief, except in limited circumstances not applicable here. 28 U.S.C. § 1491(b)(2); *Kanemoto v. Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994) ("The remedies available in [the Court of Federal Claims] extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances[.]").

Not only does this court lack jurisdiction over Mr. Peterson's claims and could not grant the relief he seeks in any event, there are no grounds for intervention. Intervention requires a timely application and either (1) a statute that "confers an unconditional right to intervene; or (2) . . . an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." RCFC 24(a). No statutory right to intervene is stated, and Mr. Peterson does not have an "interest" in the plaintiffs' underlying partial breach of contract claims against the United States such as to permit intervention under RCFC 24(a) as a matter of right. *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007) (construing RCFC 19(a)(2), a counterpart to RCFC 24(a)(2) as requiring a direct and immediate interest); *Am. Mar. Transp., Inc. v. United* States, 870 F.2d 1559, 1561 (Fed. Cir. 1989) ("Intervention is proper only to protect those interests which are of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." (internal quotation, citations and emphasis omitted)); *Preseault v. United States,* 100 F.3d 1525, 1529 (Fed. Cir. 1996) (intervening party had an interest in the real estate); *Rolls-Royce, Ltd., Derby, England v. United States*, 176 Ct. Cl. 694, 696, 364 F.2d 415, 416 (1966) (affirming intervention because of indemnity agreement wherein intervenor could be liable for a judgment rendered against the United States).

Similarly, the submission does not warrant permissive intervention under RCFC 24(b). No statute creates a conditional right to intervene. No common issue of fact or law is cited. Intervention would delay the final resolution of this matter.

---

2/ (...continued)
Consequently, the DOE must design a permanent disposal system that meets this regulatory framework. Your proposal for a 300-year storage period would not fulfill the Congressional directives contained in the Act.

*Honeywell Intern., Inc. v. United States*, 71 Fed. Cl. 759, 768 (2006) (RCFC 24(b)(2) requires common questions of law or fact and intervention must not unduly delay or prejudice resolution of the litigation); *John R. Sand & Gravel Co. v. United States*, 59 Fed. Cl. 645, 657-58 (2004), *aff'd* 143 Fed. Appx. 317 (Fed. Cir. 2005) (denying permissive intervention where there were no common issues of fact or law, allowing intervention would burden the proceedings and the proposed intervenor did not have a claim against the United States, a prerequisite for jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491(a)(1)(2000)).

Accordingly, it is **ORDERED** that no valid basis for seeking intervention has been shown, and the request is untimely. The Clerk of the Court shall return the Submission to Mr. Peterson together with a paper copy of this Order.

s/ James F. Merow
James F. Merow
Senior Judge